## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO. 15-CV-01297-BJD-MCR

---------------------------------------------------x

| | | |
|---|---|---|
| **In the Matter of the Complaint** | : | **ANSWER, AFFIRMATIVE DEFENSES,** |
| | : | **COUNTERCLAIM, AND THIRD** |
| **Of** | : | **PARTY COMPLAINT OF:** |
| | : | |
| **Sea Star Lines, LLC, d/b/a TOTE** | : | **ANNA KRAUSE, as Personal** |
| **Maritime Puerto Rico, as Owners; and** | : | **Representative of the Estate of PIOTR** |
| **TOTE Services, Inc., as Owner pro hac** | : | **KRAUSE, deceased;** |
| **vice of the S.S. EL FARO for** | : | |
| **Exoneration from or Limitation of** | : | **AGNIESZKA NITA, as Personal** |
| **Liability** | : | **Representative of the Estate of MARCIN** |
| | : | **NITA, deceased;** |
| | : | |
| | : | **MALGORZATA PODGORSKA, as** |
| | : | **Personal Representative of the Estate of** |
| | : | **JAN PODGORSKI, deceased;** |
| | : | |
| | : | **BOZENA TRUSZKOWSKA, as Personal** |
| | : | **Representative of the Estate of** |
| | : | **ANDRZEJ TRUSZKOWSKI, deceased;** |
| | : | **and** |
| | : | |
| | : | **AGNIESZKA ZDOBYCH, as Personal** |
| | : | **Representative of the Estate of RAFAL** |
| | : | **ZDOBYCH, deceased,** |
| | : | |
| | : | **Claimants/Third Party Plaintiffs** |
| | : | |
| | : | **v.** |
| | : | |
| | : | **INTEC MARITIME OFFSHORE** |
| | : | **SERVICE CORP.; SHIP OR LAND** |
| | : | **OPERATIONS AGENCY, INC.; and** |
| | : | **MICHAEL DAVIDSON and/or the** |
| | : | **ESTATE OF MICHAEL DAVIDSON,** |
| | : | |
| | : | **Third Party Defendants.** |

---------------------------------------------------x

## ANSWER TO COMPLAINT

**COMES NOW,** Claimants, ANNA KRAUSE, as Personal Representatie of the Estate of PIOTR KRAUSE, deceased ("KRAUSE"); AGNIESZKA NITA, as Personal Representative of the Estate of MARCIN NITA, deceased ("NITA"); MALGORZATA PODGORSKA, as Personal Representative of the Estate of JAN PODGORSKI, deceased ("PODGORSKI"); BOZENA TRUSZKOWSKA, as Personal Representative of the Estate of ANDRZEJ TRUSZKOWSKI, deceased ("TRUSZKOWSKI"); and AGNIESZKA ZDOBYCH, as Personal Representative of the Estate of RAFAL ZDOBYCH, deceased ("ZDOBYCH") (collectively "Claimants"), who answer Petitioner's Complaint for Exoneration from or Limitation of Liability [D.E. 1] as follows:

1.      Admitted that this is a case under the Court's Admiralty Jurisdiction.

2.      Admitted that venue is proper, otherwise denied.

3.      Without knowledge and therefore denied.

4.      Without knowledge and therefore denied.

5.      Denied.

6.      Admitted.

7.      Admitted.

8.      Denied.

9.      Denied as phrased.

10.     Denied.

11.     Denied.

12.     Denied.

13.    Without knowledge and therefore denied.

14.    Without knowledge and therefore denied.

15.    Admitted.

16.    Denied.

17.    Denied.

18.    Denied.

     a.  Denied.

     b.  Denied.

     c.  Denied.

     d.  Denied.

     e.  Denied.

## <u>AFFIRMATIVE DEFENSES</u>

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Prior to and at all times relevant to the Complaint, Petitioners, as owner and/or operator of the Vessel, failed to exercise due diligence to maintain the vessel in seaworthy condition in all respects; and the Vessel was not in fact tight, staunch, strong, and properly or competently manned, equipped, and supplied, and was not seaworthy and fit and proper for the service in which she was engaged.

3.    Petitoners, as owner and/or operator of the Vessel, are not entitled to either exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 30501, et seq., for any and all loss, damage, and/or injury caused by the alleged incident, or done, occasioned, or incurred on the relevant voyage on which the alleged incident occurred, because the unseaworthy condition of the vessel was within the privity and

knowledge of Petitioners; including the privity and knowledge of the master, executive officer, superintendent, and/or management agent which are imputed to Petitioners.

4.    The alleged occurrence, loss, damages, and/or injuries referred to in the Complaint were caused or contributed to by the negligence of Petitioners in their capacity as owner and/or operator of the Vessel, and/or as a result of the Petitioners' violations of applicable federal safety and operating regulations and/or statutes.

5.    The amount of security posted by the Petitioners or on their behalf in this limitation proceeding is neither sufficient nor adequate to properly discharge Petitioners' liabilities and obligations, nor does it reflect the correct values required by law.  This Court should, therefore, strike the Complaint, or failing that, order Petitioners to submit their interests in the Vessel and other property for re-evalutation and thereafter direct that Petitioners file security in an increased amount to cover the claims herein.

6.    The amount of security sought in the Complaint is insufficient and must be increased because, inter alia, such amount does not adequately reflect the value of the vessel together with pending freight.

7.    Petitioners, as owner and/or operator of the Vessel, are not entitled to either exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 30501, et seq., for wages due to Claimant.

8.    Petitioners are not entitled to exoneration or limitation of liability because the accident and any and all damages, injuries and losses resulting from the incident were caused or contributed to by the fault, design, neglect, negligence, or want of due care

by Petitioner and/or its agents and/or employees and/or servants and/or apparent agents.

9. Petitioners are jointly and severally liable for the negligent acts of third parties who are not entitled to exoneration and/or limitation of liability.

**CLAIMANTS COUNTERCLAIM AGAINST PETITIONERS AND THIRD PARTY COMPLAINT AGAINST THIRD PARTY PETITIONERS/COUNTER DEFENDANTS AND THIRD PARTY DEFENDANTS: INTEC MARITIME OFFSHORE SERVICE CORP.; SHIP OR LAND OPERATIONS AGENCY, INC.; and MICHAEL DAVIDSON and/or the ESTATE OF MICHAEL DAVIDSON**

**COMES NOW,** Claimants/Third Party Plaintiffs, ANNA KRAUSE, as Personal Representative of the Estate of PIOTR KRAUSE, deceased ("KRAUSE"); AGNIESZKA NITA, as Personal Representative of the Estate of MARCIN NITA, deceased ("NITA"); MALGORZATA PODGORSKA, as Personal Representative of the Estate of JAN PODGORSKI, deceased ("PODGORSKI"); BOZENA TRUSZKOWSKA, as Personal Representative of the Estate of ANDRZEJ TRUSZKOWSKI, deceased ("TRUSZKOWSKI"); and AGNIESZKA ZDOBYCH, as Personal Representative of the Estate of RAFAL ZDOBYCH, deceased ("ZDOBYCH") (hereinafter, "Claimants/Third Party Plaintiffs"), who files this Counterclaim against Petitioners/Counter Defendants: SEA STAR LINE, LLC ("SEA  STAR") and TOTE SERVICES, INC. ("TOTE") (collectively "Petitioners/Counter Defendants"); and Thi Third Party Defendants: MICHAEL DAVIDSON and/or the ESTATE OF MICHAEL DAVIDSON ("DAVIDSON"); INTEC MARITIME OFFSHORE SERVICE CORP. ("INTEC"); and SHIP OR LAND OPERATIONS AGENCY, INC. ("SHIP OR LAND") (Collectively "Third Party Defendants"), and makes the following allegations:

**JURISDICTION AND PARTIES**

1. Claimants/Third Party Plaintiffs are citizens of Poland and are the widows of the decedent seamen.  Claimants/Third Party Plaintiffs have been appointed and/or are in the process of being appointed the Personal Representatives of the estates of their deceased husbands.

2. Defendant SEA STAR is a Foreign Limited Liability Company organized under the jurisdiction of Delaware with its principal place of business in Florida.

3.  Defendant TOTE is a Foreign Corporation incorporated under the law of Delaware with its principal place of business in Florida.

4.  Defendant DAVIDSON was a United States citizen and, upon information and belief, resided in the State of Maine.

5.  Defendant INTEC is a foreign corporation with a principal place of business in Florida.

6.  Defendant SHIP OR LAND is a Florida Corporation with its principal place of business in Florida.

7.  The matter in controversy exceeds, exclusive of interest, attorneys fees and costs, the sum of seventy-five thousand dollars, specified by 28 U.S.C. § 1332, and thus, in the event that Petitioners claim of exoneration and limitation of liability is defeated, is brought pursuant to this Court's diversity jurisdiction, and a jury trial is demanded.

8.  In the event diversity jurisdiction does not apply, this court has subject matter jurisdiction as this matter falls under the Article III admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333.

9.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

10. The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. § 30104; the Doctrine of Unseaworthiness under the General Maritime Law of the United States; the Death on the High Seas Act, 46 U.S.C.§ 30301 et seq., and any other applicable wrongful death or survival act.

11. The Claimants/Third Party Plaintiffs are the Personal Representatives of the Estates of five deceased seamen who died while in the service of the vessel "El Faro," a cargo vessel which was:

     a.  Owned, Operated and/or Managed by Petitioners/Counter Defendants: SEA STAR and/or TOTE; and

     b.  Captained by Defendant DAVIDSON.

12. The "El Faro," was a 736.8 foot, 31515 gross ton, cargo vessel built in 1975 and identified by the IMO number 7395351 and official number 561732, and, at all material times, was transporting cargo between ports of the United States; specifically, from Jacksonville, Florida to San Juan, Puerto Rico.

13. At all times material, Claimants/Third Party Plaintiffs were Jones Act seamen and were directly employed by and/or were borrowed servants of SEA STAR and/or TOTE and/or INTEC and/or SEA OR LAND to act as professional seamen aboard the El Faro.

14. This complaint asserts a cause of action for the wrongful death of PIOTR KRAUSE, a citizen of Poland at the time of his death, for his beneficiaries, who are:

     a.  Anna Krause, his wife;

     b.  Wiktor Krause, his minor child; and

     c.  Czeslaw and Bozena Krause, his parents.

15. This complaint asserts a cause of action for the wrongful death of MARCIN NITA, a citizen of Poland at the time of his death, for his beneficiaries, who are:

     a.  Agnieszka Nita, his wife;

     b.  Sandra and Oskar Nita, his minor children; and

     c.  Lech and Jadwiga Nita, his parents.

16. This complaint asserts a cause of action for the wrongful death of JAN PODGORSKI, a citizen of Poland at the time of his death, for his beneficiaries, who are:

     a.  Malgorzata Podgorska, his wife;

    b.   Karol Podgorski, his minor child; and

    c.   Tomasz Podgorski and Maria Barkowska, his parents.

17. This complaint asserts a cause of action for the wrongful death of ROMAN TRUSZKOWSKI, a citizen of Poland at the time of his death, for his beneficiaries, who are:

    a.   Bozena Truszkowska, his wife; and

    b.   Antoni and Kazimiera Truszkowski, his parents.

18. This complaint asserts a cause of action for the wrongful death of RAFAL ZDOBYCH, a citizen of Poland at the time of his death, for his beneficiaries, who are:

    a.   Agnieszka Zdobych, his wife;

    b.   Marta Kalisiak his dependent minor step-child; and

    c.   Stanislaw and Wieslaawa Zdobych, his parents.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

19. The El Faro was overdue for deferred repair work and had not been well repaired in the past; former crewmembers noted the work done by SEA STAR and TOTE was below industry standard.

20. Upon information and belief there were known issues with the steel of the El Faro, including electrolysis and resulting corrosion, electrical issues, and its machinery including the boilers needed service; these issues related to the condition of the El Faro which put the safety of the vessel and its crew in danger, especially in heavy weather situations where the El Faro could foreseeably lose power and/or break apart.

21. Further, upon information and belief, the El Faro was overloaded with cargo, including vehicles, that created hazardous conditions, which was especially dangerous in poor weather

conditions thereby affecting the vessel's stability, to wit: its availability to right itself after listing.

22. Even in unremarkable weather, former crewmembers noted that the El Faro would take on excess water into spaces not designed to do so, a fact known to all Petitioners/Counter Defendants and Third Party Defendants.

23. The El Faro left port in Jacksonville, Florida at or about 8:15PM on September 29, 2015, it was loaded with approximately 391 containers topside and 294 cars, trucks and trailers below deck, and was intending to sail approximately 1,300 miles over the course of four days to San Juan, Puerto Rico.

24. Dangerous weather patterns and conditions were known, considered and ultimately ignored by the Petitioners/Counter Defendants and Third Party Defendants prior to the El Faro leaving port in Jacksonville, Florida at or about 8:15PM on September 29, 2015.

25. Specifically, before the El Faro left port in Jacksonville, Florida, Tropical Storm Joaquin was predicted to become a hurricane and a marine hurricane warning was issued by the National Hurricane Center's Advisory #8 at or about 5:00 PM on September, 29, 2015.  This was over three hours before the El Faro left port in Jacksonville, Florida.

26. Prior to leaving port in Jacksonville, Florida, DAVIDSON, contacted TOTE and/or SEA STAR and advised that he was aware of the developing storm in the area.

27. After dangerous weather patterns and weather conditions were known, and before the El Faro left port in Jacksonville, Florida, Petitioners/Counter Defendants and Third Party Defendants, including INTEC and/or SHIP OR LAND failed to discharge the Claimants/Third Party Plaintiffs from the El Faro in light of the impending dangers of the voyage.

28. At approximately 6:16AM on September 30, 2015, the El Faro began deviating from its usual straight-line route to San Juan, Puerto Rico, instead shifting closer to the Bahamas, but still headed towards the storm at or near full speed.

29. At approximately 8:00AM on September 30, 2015, the National Weather Service upgraded Tropical Storm Joaquin to Hurricane Joaquin, and predicted that the storm would approach the El Faro's path near the Bahamas.

30. At approximately 10:00AM, DAVIDSON sent an email to TOTE and/or SEA STAR indicating that he understood the weather conditions in his intended path and suggesting that he had a plan to try to outrun the approaching hurricane.

31. At approximately 10:00AM, the El Faro was still north of the Bahamas and hundreds of miles from the approaching storm, and DAVIDSON and TOTE and/or SEA STAR had at least three safe alternatives:

   a. Slow down to assess the weather;

   b. Turn around and head away from the storm; or

   c. Change course and head towards Florida;

32. Instead of reasonably altering the El Faro's route, DAVIDSON and TOTE and/or SEA STAR continued operating the El Faro straight towards the intensifying hurricane.

33. Over the next 21 hours the National Weather Service issued seven more hurricane advisories, each warning of the storm's increasing strength.

34. At approximately 1:12PM on September 30, 2015, DAVIDSON emailed TOTE and/or SEA STAR that he intended to take a route which would bring him about 65 miles from the center of the hurricane.

35. The continued warnings and the clear opportunities to reasonably alter the vessels route, including diverting to safe harbor, were disregarded by Petitioners/Counter Defendants and Third Party Defendants.

36. At about 5:00PM on September 30, 2015, DAVIDSON and TOTE and/or SEA STAR continued operating the El Faro past "Hole in the Wall," a gap in the Bahamas archipelago, another escape route, which would have allowed the El Faro to travel west, away from the hurricane.

37. Sailing at approximately 20 knots, near the top speed of the 40-year-old-ship, DAVIDSON took the shorter route east of the Bahamas towards the hurricane rather than the longer route close to the Florida coast that would have avoided the storm.

38. Instead of delaying the voyage until it was safe or taking a longer more expensive trip around the storm which would have used more fuel and resulted in a late delivery, the course of action suggested and/or approved by DAVIDSON and/or TOTE and/or SEA STAR was to try and outrun the storm by sending the antiquated cargo ship into extreme weather.

39. Some crew of the El Faro appreciated the danger and were concerned about their safety and contacted loved ones.  One such message sent by crewmember Danielle Randolph to her mother explained: "Not sure if you've been following the weather at all, but there is a hurricane out her and we are heading straight into it."

40. At approximately 9:09PM on September 30, 2015, the El Faro was still traveling at 20 knots (at or approaching the vessel's maximum speed given the conditions), and was approximately 200 miles northeast of the hurricane, and continued to head into the projected path of the storm.

Lipcon, Margulies, Alsina & Winkleman, P.A.

41. In an advisory issued at 2:00AM on October 1, 2015, the National Hurricane Center predicted seas of 30 feet with sustained winds of 64 knots (74 mph), increasing to 105 knots (121 mph) as the El Faro approached the wall of the eye of the hurricane.

42. At approximately 2:09AM on October 1, 2015, the El Faro was only about 50 miles from the eye of hurricane Joaquin, and still heading towards the center of the storm at nearly 17 knots.

43. At approximately 3:56AM, El Faro's last logged location, the vessel – apparently unable to maintain its speed due to the waves – was slightly less than 50 miles from the eye of the hurricane and was traveling at 10.7 knots.

44. At approximately 7:00AM, DAVIDSON called TOTE and/or SEA STAR's emergency call center and told the call center operator that he had a marine emergency.  DAVIDSON reported that there was a hull breach, a scuttle had blown open, and that there was water in hold number 3.  DAVIDSON also said that the El Faro had lost its main propulsion unit and the engineers could not get it going.

45. At 7:17AM, the U.S. Coast Guard received electronic distress alerts from the El Faro and its last reported position was about 20 miles from the edge of the eye of the hurricane.

46. No further communications were received from the El Faro.

47. The El Faro was lost at sea, there were no survivors, and all 33 crew died, including Claimants/Third Party Plaintiffs.

48. Each and all of the foregoing conditions (inadequate physical condition of the El Faro and/or the overloading of the El Faro and/or the impending dangerous weather and sea conditions) were known, and/or should have been known, to the Petitioners/Counter Defendants and Third Party Defendants prior to the time Petitioners/Counter Defendants and Third Party Defendants ultimately decided to have the El Faro leave port in Jacksonville, Florida on

September 29, 2015, with the Claimants/Third Party Plaintiffs aboard, and continue course into dangerous weather and sea conditions, causing and/or contributing to the sinking of the El Faro and the death of the crew, including Claimants/Third Party Plaintiffs, on or about October 1, 2015.

49. Each and all of the foregoing conditions were known to the Petitioners/Counter Defendants and Third Party Defendants prior to the El Faro's last clear chance to alter the El Faro's course, including finding safe harbor.

50. The Petitioners/Counter Defendants and Third Party Defendants could have prevented this disaster had they used reasonable care.  Further, Petitioners/Counter Defendants and Third Party Defendants acted with such reckless disregard of the impending hazards that it amounted to gross negligence.

### COUNT I – SURVIVAL ACTION FOR NEGLIGENCE FOR PRE-DEATH PAIN AND SUFFERING UNDER THE JONES ACT AGAINST TOTE AND/OR SEA STAR AND/OR INTEC AND/OR SHIP OR LAND

51. Claimants/Third Party Plaintiffs re-allege, adopt, and incorporate by reference the allegations contained within paragraphs one through fifty as though set forth fully herein.

52. At all times material, Claimants/Third Party Plaintiffs were employed by TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND as seamen aboard the vessel.  Alternatively, Claimants/Third Party Plaintiffs were controlled by TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND as borrowed-servants so that the Claimants/Third Party Plaintiffs were effectively employed by TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND.

53. TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND owed Claimants/Third Party Plaintiffs a duty of reasonable care for their safety, including care to maintain the vessel in a reasonably safe condition and to operate the vessel safely.

54. On or about September 29, 2015 through October 1, 2015, the Claimants/Third Party Plaintiffs suffered severe injuries, pre-death conscious pain and suffering, and ultimately died due to the fault and negligence of the TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND, and/or their agents, servants, and/or employees as follows:

    a.  Failure to use reasonable care to provide and maintain a safe place to work for Claimants/Third Party Plaintiffs, fit with proper and adequate machinery, crew and equipment; and/or

    b.  Failure to use reasonable care to provide Claimants/Third Party Plaintiffs a safe place to work; and/or

    c.  Failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the Claimants/Third Party Plaintiffs, while engaged in the course of his employment on said vessel; and/or

    d.  Failure to use reasonable care to inspect the vessel, its equipment, and its cargo; and/or

    e.  Failure to use reasonable care to maintain the vessel and its equipment; and/or

    f.  Deciding to operate the vessel despite the weather warnings; and/or

    g.  Operating the vessel into a hurricane; and/or

    h.  Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before encountering the hurricane; and/or

i.   Failing to discharge the Claimants/Third Party Plaintiffs  before leaving port in Jacksonville, Florida; and/or

j.   Failing to warn the Claimants/Third Party Plaintiffs  of the dangers of leaving port in Jacksonville, Florida with the vessel in light of the expected weather and sea conditions; and/or

k.   Failing to take a safe route from Jacksonville, Florida to San Juan, Puerto Rico; and/or

l.   Failing to alter route to a safe route while at sea; and/or

m.  Overloading the vessel in light of the expected weather and sea conditions; and/or

n.   Exposing the vessel to weather and sea conditions that the vessel was unfit for in light of its age and/or maintenance and/or equipment issues; and/or

o.   Failing to adequately monitor the vessel; and/or

p.   Failing to adequately monitor the captain of the vessel; and/or

q.   Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from leaving port into an expected storm; and/or

r.   Failing to promulgate and/or enforce adequate policies and procedures to require the vessel to turn around and/or seek safe harbor when encountering an expected storm became likely; and/or

s.   Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a reasonably safe manner; and/or

t.   Failure to use reasonable care to make reasonable and periodic inspections of the vessel and its equipment; and/or

u.  Failure to provide adequate training, instruction, and supervision to the captain and crew; and/or

v.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or delay; and/or

w.  Violating 46 USC §8106(f).

55. TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND knew of the foregoing conditions causing Claimants/Third Party Plaintiffs deaths and did not correct them, or the conditions existed for a sufficient length of time so that TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND in the exercise of reasonable care should have learned of them and corrected them.

56. As a result of the negligence of TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND, their agents and/or employees, the Claimants/Third Party Plaintiffs were injured, suffered, and then died.

57. The Jones Act, 46 USC §30104 provides the remedy of a survival action for the Claimants/Third Party Plaintiffs pre-death pain and suffering.

WHEREFORE, Claimants/Third Party Plaintiffs  demand damages as allowed under the Jones Act, 46 USC §30104, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages.  Claimants/Third Party Plaintiffs demand a trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT II – UNSEAWORTHINESS AGAINST TOTE AND/OR SEA STAR

58. Claimants/Third Party Plaintiffs re-allege, adopt, and incorporate by reference the allegations contained within paragraphs one through fifty as though set forth fully herein.

59. On or about September 29, 2015 through October 1, 2015, the Claimants/Third Party Plaintiffs were seamen and members of the crew of the El Faro, which was in navigable waters.  Alternatively, the Claimants/Third Party Plaintiffs were Sieracki seamen.

60. At all times material hereto, TOTE and/or SEA STAR owned the El Faro and/or were the owners pro hac vice of the El Faro so as to be subject to a non-deligable duty to provide a seaworthy vessel: tight, staunch, strong, and properly or competently manned, equipped, and supplied, and fit and proper for the service in which she was engaged, including adequate policies and procedures.

61. The unseaworthiness of the El Faro occurred in whole or in part while the vessel was in the territorial waters of Florida.

62. On or about September 29, 2015 through October 1, 2015, the unseaworthiness of the El Faro was the legal cause of injury and damage to Claimants/Third Party Plaintiffs  by reason of the following:

   a. Failure to use reasonable care to provide and maintain a safe place to work for Claimants/Third Party Plaintiffs , fit with proper and adequate machinery, crew and equipment; and/or

   b. Failure to use reasonable care to provide Claimants/Third Party Plaintiffs  a safe place to work; and/or

   c. Failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the Claimants/Third Party Plaintiffs, while engaged in the course of his employment on said vessel; and/or

d. Failure to use reasonable care to inspect the vessel, its equipment, and its cargo; and/or

e. Failure to use reasonable care to maintain the vessel and its equipment; and/or

f. Deciding to operate the vessel despite the weather warnings; and/or

g. Operating the vessel into a hurricane; and/or

h. Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before encountering the hurricane; and/or

i. Failing to discharge the Claimants/Third Party Plaintiffs before leaving port in Jacksonville, Florida; and/or

j. Failing to warn the Claimants/Third Party Plaintiffs  of the dangers of leaving port in Jacksonville, Florida with the vessel in light of the expected weather and sea conditions; and/or

k. Failing to take a safe route from Jacksonville, Florida to San Juan, Puerto Rico; and/or

l. Failing to alter route to a safe route while at sea; and/or

m. Overloading the vessel in light of the expected weather and sea conditions; and/or

n. Exposing the vessel to weather and sea conditions that the vessel was unfit for in light of its age and/or maintenance and/or equipment issues; and/or

o. Failing to adequately monitor the vessel; and/or

p. Failing to adequately monitor the captain of the vessel; and/or

q. Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from leaving port into an expected storm; and/or

Lipcon, Margulies, Alsina & Winkleman, P.A.

r.  Failing to promulgate and/or enforce adequate policies and procedures to require the vessel to turn around and/or seek safe harbor when encountering an expected storm became likely; and/or

s.  Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a reasonably safe manner; and/or

t.  Failure to use reasonable care to make reasonable and periodic inspections of the vessel and its equipment; and/or

u.  Failure to provide adequate training, instruction, and supervision to the captain and crew; and/or

v.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or delay; and/or

w.  Violating 46 USC §8106(f).

63. As a result of the unseaworthiness of the El Faro, the Claimants/Third Party Plaintiffs suffered and died.

WHEREFORE, Claimants/Third Party Plaintiffs demand damages as allowed under the General Maritime Law of the United States, including but not limited to compensatory damages, pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages. Claimants/Third Party Plaintiffs demand a trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT III – DEATH ON THE HIGH SEAS ACT (46 USC §30301 et seq.) AGAINST TOTE AND/OR SEA STAR AND/OR INTEC AND/OR SHIP OR LAND

64. Claimants/Third Party Plaintiffs re-allege, adopt, and incorporate by reference the allegations contained within paragraphs one through fifty as though set forth fully herein.

65. At all times material hereto, TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND owed Claimants/Third Party Plaintiffs  a duty of reasonable care under the Death on the High Seas Act, 46 U.S.C.§ 30301 et seq., and to provide Claimants/Third Party Plaintiffs with a seaworthy vessel.

66. On or about October 1, 2015, Claimants/Third Party Plaintiffs  died due to the fault and negligence of TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND, its employees, and agents, and due to the unseaworthiness of the vessel as follows:

    a.  Failure to use reasonable care to provide and maintain a safe place to work for Claimants/Third Party Plaintiffs , fit with proper and adequate machinery, crew and equipment; and/or

    b.  Failure to use reasonable care to provide Claimants/Third Party Plaintiffs  a safe place to work; and/or

    c.  Failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the Claimants/Third Party Plaintiffs , while engaged in the course of his employment on said vessel; and/or

    d.  Failure to use reasonable care to inspect the vessel, its equipment, and its cargo; and/or

    e.  Failure to use reasonable care to maintain the vessel and its equipment; and/or

    f.  Deciding to operate the vessel despite the weather warnings; and/or

g.  Operating the vessel into a hurricane; and/or

h.  Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before encountering the hurricane; and/or

i.  Failing to discharge the Claimants/Third Party Plaintiffs  before leaving port in Jacksonville, Florida; and/or

j.  Failing to warn the Claimants/Third Party Plaintiffs  of the dangers of leaving port in Jacksonville, Florida with the vessel in light of the expected weather and sea conditions; and/or

k.  Failing to take a safe route from Jacksonville, Florida to San Juan, Puerto Rico; and/or

l.  Failing to alter route to a safe route while at sea; and/or

m.  Overloading the vessel in light of the expected weather and sea conditions; and/or

n.  Exposing the vessel to weather and sea conditions that the vessel was unfit for in light of its age and/or maintenance and/or equipment issues; and/or

o.  Failing to adequately monitor the vessel; and/or

p.  Failing to adequately monitor the captain of the vessel; and/or

q.  Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from leaving port into an expected storm; and/or

r.  Failing to promulgate and/or enforce adequate policies and procedures to require the vessel to turn around and/or seek safe harbor when encountering an expected storm became likely; and/or

s.  Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a reasonably safe manner; and/or

    t.   Failure to use reasonable care to make reasonable and periodic inspections of the vessel and its equipment; and/or

    u.   Failure to provide adequate training, instruction, and supervision to the captain and crew; and/or

    v.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or delay; and/or

    w.   Violating 46 USC §8106(f).

As a result of the negligence of TOTE and/or SEA STAR and/or INTEC and/or SHIP OR LAND, its agents and employee and/or the unseaworthiness of the vessel, Claimants/Third Party Plaintiffs were injured, suffered, and died.  Claimants/Third Party Plaintiffs' survivors sustained pecuniary losses as allowed by law.

WHEREFORE, Claimants/Third Party Plaintiffs demand damages as allowed under the Death on the High Seas Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act, including but not limited to pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, funeral expenses, and all other damages allowable by law. Claimants/Third Party Plaintiffs demand a trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT IV – NEGLIGENCE AGAINST DAVIDSON

67. Plaintiffs re-allege, adopt, and incorporate by reference the allegations contained within paragraphs one through fifty as though set forth fully herein.

68. At all times material, DAVIDSON was the Captain of the El Faro.

69. On or about September 29, 2015 through October 1, 2015, DAVIDSON negligently navigated the El Faro out to sea despite warnings of treacherous weather including an impending hurricane.

70. On September 29, 2015, DAVIDSON knew prior to leaving the port of Jacksonville, Florida that there was a tropical storm in the Atlantic that was intensifying to hurricane strength and that a marine hurricane warning had been issued.

71. At all times material, DAVIDSON knew or should have known that the El Faro would directly confront the storm during the subject voyage from Jacksonville, Florida to San Juan, Puerto Rico.

72. On or about September 29, 2015 through October 1, 2015, the Plaintiffs suffered severe injuries, pre-death conscious pain and suffering, and ultimately died due to the fault and negligence of DAVIDSON as follows:

    a.  Deciding to operate the vessel despite the weather warnings; and/or

    b.  Operating the vessel into a hurricane; and/or

    c.  Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before encountering the hurricane; and/or

    d.  Failing to discharge the Plaintiffs before leaving port in Jacksonville, Florida; and/or

    e.  Failing to warn the Plaintiffs of the dangers of leaving port in Jacksonville, Florida with the vessel in light of the expected weather and sea conditions; and/or

    f.  Failing to take a safe route from Jacksonville, Florida to San Juan, Puerto Rico; and/or

    g.  Failing to alter route to a safe route while at sea; and/or

    h.  Overloading the vessel in light of the expected weather and sea conditions; and/or

      i.    Exposing the vessel to weather and sea conditions that the vessel was unfit for in light of its age and/or maintenance and/or equipment issues.

73. The acts and/or omissions of DAVIDSON were a direct, proximate, and legal cause of the incident which occurred on or about October 1, 2015 which resulted in the loss of the El Faro and the deaths of the crew of the El Faro, including the Plaintiffs.

WHEREFORE, Plaintiffs demand damages including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages.  Plaintiffs demand a trial by jury for all issues so triable, and any other relief this Court deems proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to all counsel of record via the EM/ECF system this 2nd day of November, 2015.

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
Attorneys for Plaintiffs
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305)  373-3016


 /s/ *Jason R. Margulies*_____
JASON R. MARGULIES
FL BAR NO. 57916
E-mail: JMargulies@lipcon.com

MICHAEL A. WINKLEMAN
FL BAR NO. 36719
E-mail: MWinkleman@lipcon.com