UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

IN ADMIRALTY

---

In the Matter of The Complaint

of

Sea Star Line, LLC, d/b/a TOTE Maritime
Puerto Rico, as Owners; and TOTE Services,
Inc., as Owner *pro hac vice* of the S.S. EL FARO
for Exoneration from or Limitation of Liability

Case No. 3:15-cv-1297-HES-MCR

---

## ANSWER, AFFIRMATIVE DEFENSES AND CLAIMS OF PATRICK JOHN SMITH

Claimant PATRICK JOHN SMITH files this Answer, Affirmative Defenses and Claims in response to Plaintiffs/Petitioners Sea Star Line, LLC, d/b/a TOTE Maritime Puerto Rico and TOTE Services, Inc.'s ("Petitioners") Verified Complaint for exoneration from or limitation of liability and upon information and belief, states as follows:

### ANSWER

1. The allegations contained in Paragraph 1 are admitted.

2. The allegations contained in Paragraph 2 of the Complaint are denied for lack of sufficient information to justify a belief therein.

3. The allegations contained in Paragraph 3 of the Complaint are denied for lack of sufficient information to justify a belief therein.

4. The allegations contained in Paragraph 4 of the Complaint are denied for lack of sufficient information to justify a belief therein.

5. The allegations contained in Paragraph 5 of the Complaint are denied for lack of sufficient information to justify a belief therein.

6. The allegations contained in Paragraph 6 of the Complaint are admitted.

7. The allegations contained in Paragraph 7 of the Complaint are admitted.

8. The allegations contained in Paragraph 8 of the Complaint are denied for lack of sufficient information to justify a belief therein.

9. The allegations contained in Paragraph 9 of the Complaint are denied for lack of sufficient information to justify a belief therein.

10. The allegations contained in Paragraph 10 of the Complaint are denied.

11. The allegations contained in Paragraph 11 of the Complaint are denied.

12. The allegations contained in Paragraph 12 of the Complaint are denied.

13. The allegations contained in Paragraph 13 of the Complaint are denied for lack of sufficient information to justify a belief therein.

14. The allegations contained in Paragraph 14 of the Complaint are denied for lack of sufficient information to justify a belief therein.

15. The allegations contained in Paragraph 15 of the Complaint are admitted.

16. The allegations contained Paragraph 16 of the Complaint are not statements of fact, but conclusions of law, from which no response is necessary from this Claimant. However, if response be deemed necessary, said allegations are denied.

17. The allegations contained Paragraph 17 of the Complaint are not statements of fact, but conclusions of law, from which no response is necessary from this Claimant. However, if response be deemed necessary, said allegations are denied.

18. The allegations contained Paragraph 18 of the Complaint are not statements of fact, but conclusions of law, from which no response is necessary from this Claimant. However, if response be deemed necessary, said allegations are denied.

19. The allegations contained in the prayer for relief are not statements of fact, but conclusions of law, from which no response is necessary from these claimants. However, if response be deemed necessary, said allegations are denied. Claimant further specifically denies the adequacy of the valuation of THE S.S. EL FARO and/or the other vessels in its flotilla as asserted by Petitioners. Claimant further re-urges his prior objection to Petitioners failing to include the value of all vessels in the flotilla which were under the common operational control, supervision and enterprise in the limitation fund, together with any insurance proceeds, and any sums received or which may be received by Petitioners from any third party as a result of the fault or alleged fault of said third party having caused damage to the property interests of Petitioners. Claimant further denies the adequacy of Petitioners' *Ad Interim* Stipulation for an amount equal to the value of its interest in THE S.S. EL FARO and/or other vessels in its flotilla and their appurtenances and hereby makes demand for Petitioners to either deposit cash proceeds into the registry of the Court in the amount of the stated value of the vessel(s) and/or provide a bond for the value of the vessel(s), issued by a reputable surety company to be approved by the Court. In so doing, Claimant specifically reserves the right to contest the stated value of the vessel and the limitation fund as aforesaid.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The allegations of the Complaint fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### SECOND DEFENSE

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, this Honorable Court lacks personal jurisdiction over Claimant.

### THIRD DEFENSE

The Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, is unconstitutional in that it deprives the Claimant of property rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and does not provide for equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

### FOURTH DEFENSE

Claimant asserts the flotilla doctrine. The limitation fund is inadequate and the Complaint should be dismissed because Petitioners have failed to deposit adequate security for the Vessel and for the additional vessels within the flotilla, which were under a common operational control, supervision, and enterprise.

### FIFTH DEFENSE

The limitation fund is inadequate and the Complaint should be dismissed because Petitioners have failed to deposit adequate security for the vessel identified in the Complaint for Exoneration From or Limitation of Liability and for the additional vessels within the flotilla which were under common operational control, supervision and enterprise. Pursuant to Rule

F(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the proper limitation fund must be deposited at the time of filing. Petitioners' deposit, at the time of filing, did not meet federal standards. As such, this limitation action must be dismissed.

### SIXTH DEFENSE

The limitation fund is inadequate and the Complaint should be dismissed because Petitioners have failed to accurately identify all of the vessels in the flotilla which should be included in the limitation fund.

### SEVENTH DEFENSE

The Limitation of Liability Act is not applicable to the instant case because at all times pertinent herein, the S.S. EL FARO and/or other vessels contained within the flotilla were operated in a willful, wanton, and reckless manner or, in the alternative, the conduct and actions which lead to Claimants' injuries took place with the privity and knowledge of the owners, managing owners, owners *pro hac vice*, and/or operators of the vessels involved.

### EIGHTH DEFENSE

The Limitation of Liability Act is not applicable in the instant case because at all relevant times, the S.S. EL FARO and/or the other vessels contained within the flotilla were known by the owner and/or owner *pro hac vice* to be unseaworthy.

### NINTH DEFENSE

To the extent Petitioners' insurers attempt to avail themselves of the limitation/exoneration defense, Claimants assert that the Limitation of Liability Act is unavailable to insurers of vessel owners under the circumstances. In the alternative, no *prima facie* case has been made establishing they are entitled to avail themselves of the Limitation of Liability Act.

## TENTH DEFENSE

The Complaint for Exoneration From or Limitation of Liability contains vague and ambiguous statements which are objectionable under Federal Rule of Civil Procedure 12(e), and Claimant seeks more definitive statements of the allegations, regardless of the nature, manner and extent of their Claim and Answer herein.

## ELEVENTH DEFENSE

The events culminating in the injuries of Claimant and/or Decedent Howard Schoenly were the result of the negligence, fault, or want of due care on the part of Petitioners and/or those for whom Petitioners are responsible, and/or the unseaworthiness of THE S.S. EL FARO and/or other vessels within the flotilla under common operational control, supervision and enterprise, all of which was within the privity and knowledge of Petitioners, for which the Complaint for Exoneration From of Limitation of Liability should be denied.

## TWELFTH DEFENSE

The events culminating in the injuries of Claimant and/or Decedent Howard Schoenly were not the result of any negligence, fault, or want of due care on his part or those for whom he may be responsible.

## THIRTEENTH DEFENSE

Claimant further alleges that there was insurance coverage on THE S.S. EL FARO insuring Petitioners in the event of an occurrence such as that which is the subject of Claimant's claims, and the proceeds of said insurance policy should be included in this limitation proceeding (in the event the Court determines these limitation proceedings are appropriate).

## FOURTEENTH DEFENSE

Claimant states that the proceeds of any judgment, award, or settlement which may be received by Petitioners from any third party in recompense of any losses or damages sustained herein to the property or interests of Petitioners, as a result of the fault or alleged fault of said third party, must be included in the limitation fund.

## FIFTEENTH DEFENSE

In filing this Answer and Claim, Claimant specifically reserves all rights to pursue all available claims in state court for resolution of any and all issues beyond the exclusive jurisdiction of this Admiralty Court pursuant to the "Savings to Suitors" clause, 28 U.S.C. §1333, the Jones Act, and all state law remedies. The filing of this Claim and Answer is in no way a waiver of this right and defense and Claimant is not agreeing to join all issues in this proceeding by filing this Claim and Answer.

## SIXTEENTH DEFENSE

Claimant specifically reserves all rights to pursue all available claims in the forum of his choice for resolution of any and all issues beyond the exclusive jurisdiction of this admiralty court pursuant to the "Savings to Suitors" clause, 28 U.S.C. §1333, the Jones Act, and all remedies, and no part of this Claim and Answer is a waiver of this defense or these rights. Claimant will move the Court to lift the injunction and stay of proceedings in other forums. *See In re Tetra Applied Tech., L.P.*, 362 F.3d 388 (5th Cir. 2004). Further, pursuant to the holdings of *In re Liverpool, etc. Nav. Co. (Vestris)*, 57 F.2d 176, 179 (2d Cir. 1932) and *The Silver Palm*, 94 F.2d 776, 780 (9th Cir. 1937), upon Petitioners' failure to obtain relief in this limitation action (should resolution of this action precede judgment in other actions), Claimant hereby asserts and claims his right to have his claims and damages tried to a jury in the court of their choosing.

7

## SEVENTEENTH DEFENSE

The purpose of a limitation action is to provide a single forum for determining whether the vessel and its owner are liable at all, whether the owner may in fact limit liability to the value of the vessel and pending freight, and how the funds are to be distributed to the claimants. *See* 46 U.S.C. § 30501, *et seq.*; see also THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 2nd Ed. § 13-5 (1994). Because of the nature and circumstances of this action, a limitations proceeding is inappropriate and unjustified.

## EIGHTEENTH DEFENSE

Claimant reserves the right to contest the appraisal value of THE S.S. EL FARO and/or for any additional vessels in the flotilla, their engines, apparel, appurtenances, pending freight, etc., and the adequacy of the security.

## NINETEENTH DEFENSE

Petitioners' Complaint does not affect Claimant's right to maintenance and cure. Thus, Petitioners' liability to Claimant, if any, for their intentional, willful, arbitrary, and capricious refusal to provide Claimant maintenance and cure is not limited to the value of any of its vessels.

## TWENTIETH DEFENSE

The limitation fund is inadequate and should be increased and/or this action should be dismissed because the limitation fund does not properly account for the value of the minerals and other appurtenances, attachments, freight and/or cargo aboard the vessel, subject to the control of the vessel, and/or owned by the Petitioners.

## TWENTY-FIRST DEFENSE

Petitioners are not "vessel owners" entitled to seek exoneration from or limitation of liability under 46 U.S.C. § 30501, *et seq.*

## TWENTY-SECOND DEFENSE

Claimant reserves the right to move for bifurcation of this action so the only issues of fact decided by this Court are whether Petitioners were negligent, whether the vessel was unseaworthy, and whether such negligence/unseaworthiness were within the privity and/or knowledge of Petitioners. All other fact issues shall be decided in a court and/or forum of Claimant's choosing as is Claimant's rights under the Saving to Suitors clause and the Jones Act.

**AND NOW,** specifically reserving all defenses asserted herein, including, without limitation, Claimant's right to pursue his claims in state court pursuant to the Savings to Suitors clause, 28 U.S.C. §1333, and all state law remedies, Claimant, files his Claim in the Complaint for exoneration from or limitation of liability of, and states that:

## CLAIM

1. Claimant re-urges each and every defense and objection set forth above as if the same were stated herein verbatim. Moreover, Decedent and/or Claimant suffered severe injuries as a result of the senseless sinking of the S.S. EL FARO. At the time, Decedent was a Jones Act seaman of Petitioners. While THE S.S. EL FARO was deployed on navigable waters, and while Decedent was contributing to and aiding such vessel to accomplish its mission, Decedent sustained serious physical and mental injuries during the events leading up to the sinking of the S.S. EL Faro while still in the zone of danger. Claimant has suffered significant loss to the death of Claimant's loved one.

### A. The Voyage Made the Basis of this Lawsuit

2. On or about September 30, 2015, the S.S. EL FARO sailed near the eye of Joaquin, which at that time was a Category One hurricane with seventy-five mph winds. The

vessel was roughly thirty-six nautical miles northeast of the Acklins and Crooked Islands in the Bahamas and in route from Jacksonville, Florida to San Juan Puerto Rico.

3. The National Weather Service issued several warnings of the storm's strength. In the face of these warnings, the Tote Petitioners allowed the S.S. EL FARO to leave its safety in the port and begin its voyage. Captain Davidson filed a noon report indicating that he was monitoring the storm and that he believed the weather conditions looked favorable. Captain Davidson conferred with S.S. EL FARO's sister ship, M/V EL YUNQUE, as it was returning to Jacksonville, Florida. Again, the Tote Petitioners determined that the weather was good enough to continue into Joaquin's path.

4. The tracking data for S.S. EL FARO shows that it was moving at near full speed on September 30, 2015. At approximately 5:00 p.m. the S.S. EL FARO continued to move westward through a gap in the Bahama Islands known as the "hole in the wall" in order to move away from the storm. This attempt was unsuccessful. The following report stated that S.S. EL FARO was on a "collision course" with Hurricane Joaquin. By 11:00 p.m., Hurricane Joaquin exploded into a Category Three hurricane with winds exceeding 115 mph. During this time, the Tote Petitioners allowed the S.S. EL FARO to continue its voyage in to the Hurricane.

5. At some point on or about October 1, 2015, S.S. EL FARO experienced complete engine failure. Around approximately 7:00 a.m., Captain Davidson called the Tote Petitioners to tell them about the vessel's mechanical failures and loss of propulsion. He left a message stating that the engines were disabled, the ship was listing at fifteen (15) degrees, and that water was coming into the ship through a hatch that had burst open, but that the crew had managed to pump it out. The Captain also stated that the vessel had lost power.

Without power, the S.S. EL FARO was merely a cork in the sea as the Hurricane neared. At that time, S.S. EL FARO drifted near Crooked Island in the Bahamas—close to the center of the storm. Around 7:15 a.m., the United States Coast Guard received distress alerts from S.S. EL FARO. These are the last-known transmissions from the S.S. EL FARO. The crew of thirty-three were never heard from again.

6. On or about 2:00 p.m. on October 1, 2015, Hurricane Joaquin grew yet again into a Category Four hurricane with at least 130 mph winds. On October 2, 2015, the storm's severity made any rescue efforts especially difficult.

7. On October 3, 2015, the USCG deployed helicopters to the vessel's last known position. Rescue searchers found a lift ring approximately seventy miles from the vessel's last known location. On or about October 4, 2015, Hurricane Joaquin moved away from the S.S. EL FARO's last known location and rescuers found traces of wreckage, including one damaged lifeboat, two damaged life rafts, and a deceased crewmember wearing a survival suit. This was the first day that the United States Coast Guard could safely fly into the area because of the dangerous hurricane-force winds. The following day, searchers found more debris and an oil slick. On or about October 7, 2015, the United States Coast Guard suspended its search for survivors.

    **B.    History of the Petitioners' Operations and Fleet**

        *i.    The S.S. EL FARO*

8. The S.S. EL FARO is a U.S.-flagged freight ship owned by Defendant Sea Star Line, LLC and operated by Defendant TOTE Services. The vessel was manufactured in 1975 and is over 700 feet in length. Since 2003, the United States Coast Guard recorded at least twenty-three documented deficiencies with the S.S. EL FARO. Additionally, the S.S.

EL FARO had a history of losing power while under voyage and during hurricanes. On April 12, 2011, the S.S. EL FARO reportedly lost power and propulsion while under voyage. This event was reported to the U.S. Coast Guard. After an investigation, it was found that faulty equipment caused the S.S. EL FARO's complete loss of power and propulsion that left the vessel disabled in open water. Moreover, on August 28, 2011, the S.S. EL FARO was involved in a U.S. Coast Guard reportable incident during Hurricane Irene where the vessel broke free from its mooring, causing damage to the vessel. Tellingly, during Hurricane Irene, unlike during this tragic incident, Petitioners decided to keep the S.S. EL FARO secured at a U.S. Port.

9. Further, immediately prior to leaving port, the S.S. EL FARO was undergoing significant maintenance, repair and alteration to the S.S. EL FARO's boilers. Additionally, Petitioners had hired Intec to perform vessel maintenance, repairs and alterations to the S.S. EL FARO. These activities occurred prior to and during the final voyage. In fact, Intec had 5 employees, who were machinists and welders, aboard the S.S. EL FARO performing maintenance, repair and alteration work in the course and scope of their employment of Intec during the final voyage.

### ii. The M/V EL YUNQUE (sister vessel of the S.S. EL FARO)

10. The M/V EL YUNQUE is a U.S.-flagged freight ship that is also owned, operated and maintained by Petitioners. The M/V EL YUNQUE is the sister ship of the S.S. EL FARO. Similar to the S.S. EL FARO the M/V EL YUNQUE was built in 1976 and is over 700 feet in length. Like its sister ship, the M/V EL YUNQUE has a history of safety deficiencies. There are at least fifteen documented deficiencies with this vessel since 2011 according to the U.S. Coast Guard, many of which include serious violations related to the

12

proper functioning of lifesaving equipment, including lifeboats. These safety deficiencies shed light into the Petitioners' failure to maintain their fleet.

### *iii. Activities putting profits above rules and regulations*

11. In addition to a history of cutting corners and inadequately maintaining and operating their fleet of vessels, which included the S.S. EL FARO, Petitioners SEA STAR LINE, LLC d/b/a TOTE MARITIME and TOTE MARITIME PUERTO RICO were charged and pleaded guilty to price fixing and racketeering in 2011 by the United States Government. These charges stemmed from Petitioners fixing transportation prices associated to sea transport in between the United States and Puerto Rico. These actions shed light into the Petitioners' continuous disregard of rules and regulations for the sole purpose of seeking profits.

### C. Unseaworthiness of the EL FARO

12. Claimant repeats, realleges, and incorporates the paragraphs above, as if stated herein and further alleges:

13. On or about October 1, 2015, Decedent was within course and scope of his employment as a crew member and was performing his normal duties on board the S.S. EL FARO while the S.S. EL FARO was under way.

14. Pursuant to the general maritime law of the United States, Petitioners, as alleged owner/operator of the S.S. EL FARO, owed Decedent an absolute and non-delegable duty to provide the Decedent with a vessel that was seaworthy in all respects. Petitioners breached the duty to the Decedent. A vessel that sinks and kills all of its crew members is unseaworthy as a matter of law. The S.S. EL FARO was also unseaworthy due to one or more of the following reasons:

a. The S.S. EL FARO was not reasonably fit for its intended purpose because it was not properly maintained and created a dangerous condition;

b. The S.S. EL FARO was not reasonably fit for its intended purpose because Petitioners' personnel were aware of and failed to repair the damaged equipment and eliminate the dangerous condition; and

c. The S.S. EL FARO was not reasonably fit for its intended purpose because the Petitioners failed to follow sound management practices necessary to provide Decedent a safe place to work.

d. Prior to Decedent's injury and death, Petitioners failed to investigate the hazards to Decedent and then take the necessary steps to eliminate the hazards, minimize the hazard, or warn Decedent of the danger from the hazards.

e. The unseaworthiness of the vessel occurred within the privity and knowledge of Petitioners.

15. As a direct and proximate result of the S.S. EL FARO's unseaworthiness, Decedent was injured and killed. Petitioners are liable for the following damages:

a. Pre-death physical pain and suffering;

b. Pre-death mental pain, suffering, and anguish;

c. Past physical pain and suffering;

d. Past mental pain, suffering, and anguish;

e. Past lost wages;

f. Loss of future earning capacity;

g. Loss of fringe benefits;

h. Loss of services and support;

  i.  Wrongful death;

  j.  Loss of nurture, guidance, care, and instruction;

  k.  Loss of funeral expenses;

  l.  Loss of inheritance;

  m.  disfigurement, disability, and/or death;

  n.  Loss of enjoyment of life;

  o.  All survival damages recognized under the general maritime law; and

  p.  All other damages recoverable under law.

**D. Negligence of Petitioners**

16. This is an action for negligence under the Jones Act, 46 U.S.C. § 30104 and/or the general maritime law.

17. Claimant repeats, realleges, and readopts the paragraphs above, as if stated herein and further alleges:

18. Petitioners owed an absolute duty to act reasonably in the operation and maintenance of the S.S. EL FARO and to provide a safe working environment to Decedent. Petitioners breached their duties to their crewmembers and are negligent, negligent per se, grossly negligent, and reckless for the following reasons:

  a.  failure to account for serious weather hazards;

  b.  failure to maintain their vessel;

  c.  failure to inspect the vessel;

  d.  failure to adequately maintain, repair and/or alter the S.S. EL FARO;

  e.  failure to adequately maintain, repair and/or alter the S.S. EL FARO in a timely manner before it left port;

  f. failure to supervise their employees, agents and/or contractors;

  g. failure to properly train their employees, agents and/or contractors;

  h. failure to provide adequate safety equipment;

  i. failure to provide a safe working environment;

  j. vicariously liable for their employees' and/or agents' acts and/or omissions;

  k. violating applicable Coast Guard regulations;

  l. requiring Decedent to work in unsafe conditions;

  m. failure to exercise due care and caution;

  n. failure to conduct a proper search and rescue attempt;

  o. failure to avoid this incident;

  p. other acts deemed negligent; and

  q. the negligent acts causing the loss occurred within the privity and knowledge of Petitioners.

19. As a direct and proximate result of Petitioners' breach, Decedent was injured and wrongfully killed. Petitioners are liable for the following damages:

  a. Pre-death physical pain and suffering;

  b. Pre-death mental pain, suffering, and anguish;

  c. Past physical pain and suffering;

  d. Past mental pain, suffering, and anguish;

  e. Past lost wages;

  f. Loss of future earning capacity;

  g. Loss of fringe benefits;

16

      h.      Wrongful death;

      i.      Loss of services and support;

      j.      Loss of nurture, guidance, care, and instruction;

      k.      Loss of funeral expenses;

      l.      Loss of inheritance;

      m.      Disfigurement, disability, and/or death;

      n.      Loss of enjoyment of life;

      o.      All survival damages recognized under the general maritime law; and

      p.      All other damages recoverable under law.

20.     As a result of said occurrences, Decedent was killed. Claimant has been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which he now sues.

### E.   Punitive damages

21.     Claimant repeats, realleges, and readopts the paragraphs above, as if stated herein and further alleges:

22.     Claimant is also entitled to punitive damages because the aforementioned actions of Petitioners were grossly negligent and reckless. Petitioners' conduct was willful, wanton, arbitrary, and capricious. They acted with flagrant and malicious disregard of Decedent's health and safety and the health and safety of his co-workers. Petitioners were subjectively aware of the extreme risk posed by the conditions which caused Decedent's and Claimant's injuries, but did nothing to rectify them. Instead, Petitioners proceeded despite the dangerous conditions that were posed to Decedent by the reckless navigation of the vessel, the reckless planning of the vessel's voyage, and the vessel's faulty and defective equipment. Petitioners did so knowing that

17

the conditions posed dangerous and grave safety concerns. Petitioners' acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to Decedent and others. Petitioners had actual, subjective awareness of the risk, and consciously disregarded such risk. Moreover, Claimant may recover punitive damages under the general maritime law because of the Vessel's unseaworthiness following the United States Supreme Court's ruling in *Atlantic Sounding* and *Baker*. All of the conduct mentioned in the above paragraphs was within the knowledge and privity of Petitioners.

23. Claimant prays that after due proceedings are had that:

   a. The Complaint seeking Exoneration From or Limitation of Liability be dismissed and the injunction or restraining order granted in this matter be dissolved;

   b. Alternatively, Petitioners be required to deposit additional security in the minimum amount required by law for the full value of all vessels in the flotilla which were under common operational control and supervision and engaged in a common enterprise and that said security be by way of a cash deposit into the registry of the Court or a bond issued by a surety approved by the Court and be based upon an appraisal issued by a commissioner appointed by the Court; in default of which the Complaint seeking Exoneration From or Limitation of Liability be dismissed; and pending such deposit any injunction and/or restraining order be dissolved;

   c. There be judgment rendered herein in favor of Claimant, and against Petitioners, both jointly and severally, for all damages as are reasonable in the premises, together with the maximum legal interest thereon from the date of the accident until paid and for all costs of this proceeding;

   d. Claimant be allowed to proceed and prosecute his Claim without pre-payment of costs; and,

e.  For all such other and further relief to which Claimant may be entitled under law and in equity.

24.  Claimant demands a trial by jury. *See Luera v. M/V Alberta*, 635 F.3d 181 (5th Cir. 2011).

Dated: December 4, 2015.

Respectfully submitted,

**MOMBACH, BOYLE, HARDIN & SIMMONS, P.A.**

*/s/ Michael P. Hamaway*
MICHAEL P. HAMAWAY
Florida Bar No. 081302
mhamaway@mbhlawyer.com
100 N.E. Third Avenue, Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 467-2200
Facsimile: (954) 467-2210

KURT ARNOLD
(to be admitted *Pro Hac Vice*)
Texas State Bar No. 24036150
karnold@arnolditkin.com
JASON ITKIN
(to be admitted *Pro Hac Vice*)
Texas State Bar No. 24032461
jitkin@arnolditkin.com
CORY ITKIN
(to be admitted *Pro Hac Vice*)
Texas State Bar No. 24050808
citkin@arnolditkin.com
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**ATTORNEYS FOR CLAIMANT**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF on December 4, 2015, which will provide a copy of the foregoing document to all counsel of record by CM/ECF and/or another means in accordance with the Federal Rules of Procedure.

*/s/ Michael P. Hamaway*
MICHAEL P. HAMAWAY
