UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN ADMIRALTY

In the Matter of the Complaint

Of

Sea Star Line, LLC, d/b/a TOTE Maritime
Puerto Rico, as Owners; and TOTE
Services, Inc., as Owner *pro hac vice* of
the S.S. EL FARO for Exoneration from
or Limitation of Liability

CASE NO.:
3:15-cv-1297-HES-MCR

_____/

## ANSWER, AFFIRMATIVE DEFENSES, AND CLAIM OF TINA RIEHM, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF, JEREMIE H. RIEHM, DECEASED

Defendant/Claimant, Tina Riehm, as Personal Representative of the Estate of Jeremie H. Riehm, deceased, files this Answer, Affirmative Defenses, and Claim in response to the Petitioners' Verified Complaint for Exoneration from or Limitation of Liability, as follows:

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted that Tote Services, Inc. was and now is a Delaware corporation with its principal place of business in Jacksonville, Florida.

The Claimant is without knowledge and therefore denies the balance of the allegations in this paragraph.

5.   Denied.

6.   Admitted.

7.   Admitted.

8.   Denied.

9.   Admitted that the master monitored a tropical storm, which later developed into Hurricane Joaquin. Denied that the master altered the planned course and denied that that the chosen route accounted for the hurricane's expected track. The Claimant admits that on the morning of October 1, 2015 the master of the *El Faro* reported the ship was experiencing a list and had lost propulsion and thereafter, while the ship was enveloped within Hurricane Joaquin, the master sent emergency messages which were received by the United States Coast Guard and that despite search and rescue efforts, the *El Faro* was not found and no further contact was made with her master or crew.

10.   Denied.

11.   Denied.

12.   Denied.

13.     Without knowledge and therefore denied.

14.     Admitted that claims have been instituted against the Plaintiffs in the Circuit Court, Fourth Judicial Circuit in and for Duval County, Florida as a result of the sinking of the *El Faro*.  The Claimant is without knowledge and therefore denies the remaining allegations of this paragraph.

15.     Admitted.

16.     Admitted that the Plaintiffs claim exoneration from liability for any and all losses and damages sustained in the *El Faro's* final voyage and from all claims or damages that may have been or may hereafter be made. However, it is denied that the Plaintiffs are entitled to or have any valid defenses on the facts or the law with respect to the claimed exoneration.

17.     Admitted that the Plaintiffs claim the benefits of limitation of liability provided by 46 U.S.C. §§ 30505-30511 and the various statutes supplementary thereto and amendatory thereof.  The remaining allegations of this paragraph are denied and the Claimant denies the Plaintiffs are entitled to any limitation for any deaths or losses from the sinking of the El Faro.

18.     Admitted that the Plaintiffs claim the benefit of an injunction under Rule F(3) of the Supplemental Rules for Certain Admiralty and

3

Maritime Claims of the Federal Rules of Civil Procedure. The remaining allegations of this paragraph are denied and the Claimant denies the Plaintiffs are entitled to any injunction resulting from the sinking of the El Faro.

19.    Denied. The Plaintiffs are not entitled to any of the relief sought in paragraphs 18 (a),(b),(c),(d) and (e) or for any other relief not requested.

## AFFIRMATIVE DEFENSES

1.    In filing this Answer and Claim, Claimant specifically reserves all rights to pursue all available claims in the forum of her choosing for resolution of any and all issues beyond the exclusive jurisdiction of this Admiralty Court pursuant to the "Savings to Suitors" clause, 28 U.S.C. § 1333, the Jones Act, and all state law remedies, specifically including the right to jury trial. The filing of this Answer and Claim is in no way a waiver of this right and Claimant is not agreeing to join all issues in this proceeding or to abandon her previously filed (and currently stayed) state court action by filing this Claim and Answer.

2.    Claimant specifically reserves all rights to pursue all available claims in the forum of her choice for resolution of any and all issues beyond

4

the exclusive jurisdiction of this admiralty court pursuant to the "Savings to Suitors" clause, 28 U.S.C. § 1333, the Jones Act, and all remedies, and no part of this Claim and Answer is a waiver of those rights. As soon as permitted by this Court through the lifting of the stay or dismissal of this action, Claimant respectfully asserts and claims her right to have these claims tried to a jury in the court of her choosing.

3. The allegations of the Complaint fail to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

4. The Complaint for Exoneration From or Limitation of Liability contains vague and ambiguous statements which are objectionable under Federal Rule of Civil Procedure 12(e), and Claimant seeks more definite statements of the allegations, particularly how the Claimants contend that they were without privity and knowledge of the plan to sail directly towards the eye of the hurricane, despite holding a press conference on October 6, 2015, whereat TOTE leadership acknowledged that: (i) the captain informed TOTE of the plan to sail the El Faro directly towards the approaching storm; (ii) TOTE "absolutely" had the ability and authority to stop the ship or direct it to turn around, if TOTE disagreed with the risky plan to skirt the edge of the hurricane with the 40 year old ship; (iii) the ultimate responsibility for

the decision to sail into the hurricane rested with TOTE leadership: "I'm the president and the CEO of TOTE.  So the responsibility ends with me."

5.     The Limitation of Liability Act is not applicable to the instant case because at all times pertinent herein, the El Faro was operated in a willful, wanton, and reckless manner or, in the alternative, the conduct and actions which lead to Claimants' injuries took place with the privity and knowledge of the owners, managing owners, owners *pro hac vice,* and/or operators of the vessel.

6.     The occurrence, loss, damages, and/or injuries referred to in the Complaint were caused or contributed to by the negligence of Petitioners in their capacity as owner and/or owner *pro hac vice* of the Vessel, and/or as a result of the Petitioners' violations of applicable federal safety and operating regulations and/or statutes.

7.     Prior to and at all times relevant to the Complaint, Petitioners, as owner and/or owner *pro hac vice* of the Vessel, failed to exercise due diligence to maintain the vessel in seaworthy condition in all respects; and the Vessel was not in fact tight, staunch, strong, and properly or competently manned, equipped, and supplied, and was not seaworthy and fit and proper for sailing near, much less directly into, a major hurricane.

8.     Petitioners, as owner and/or owner *pro hac vice* of the Vessel, are not entitled to either exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 30501, *et seq.*, for any and all loss, damage, and/or injury caused by the alleged incident, or done, occasioned, or incurred on the relevant voyage on which the alleged incident occurred, because the unseaworthy condition of the vessel was within the privity and knowledge of Petitioners; including the privity and knowledge of the master, executive officer, superintendent, designated person, and/or management agent which are imputed to Petitioners.

9.     The Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.,* is unconstitutional in that it deprives the Claimant of property rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and does not provide for equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

10.     Claimant further alleges that there was insurance coverage on *El Faro* insuring Petitioners in the event of an occurrence such as that which is the subject of Claimant's claims, and the proceeds of said insurance policy

should be included in this limitation proceeding (in the event the Court determines these limitation proceedings are even appropriate).

11.    The amount of security posted by the Petitioners or on their behalf in this limitation proceeding is neither sufficient nor adequate to properly discharge Petitioners' liabilities and obligations, nor does it reflect the correct values required by law.  This Court should, therefore, strike the Complaint, or failing that, order Petitioners to submit their interests in the Vessel and other property for re-evaluation and thereafter direct that Petitioners file security in an increased amount to cover the claims herein.


AND NOW, specifically reserving all defenses asserted herein, including, without limitation, Claimant's right to pursue her claims in state court pursuant to the Savings to Suitors clause, 28 U.S.C. § 1333, and all state law remedies, Claimant, files this Claim, and states that:

### CLAIM OF TINA RIEHM, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JEREMIE H. RIEHM, DECEASED

Claimant, TINA RIEHM, as Personal Representative of the Estate of JEREMIE H. RIEHM, deceased, sues SEA STAR LINE, LLC d/b/a "TOTE Maritime" and also d/b/a "TOTE Maritime Puerto Rico", a foreign limited

liability company, and TOTE SERVICES, INC., a foreign for profit corporation, and in support thereof alleges:

### Preliminary Statement

1.     This is an action for the wrongful death of Jeremie Riehm, a seaman killed while working as the third mate of the El Faro, a cargo ship owned and/or operated and/or managed by both Petitioners at all relevant times and seeks damages in excess of $15,000, excluding interest, attorney's fees and costs.

2.     Petitioners' negligence in maintaining and/or operating and/or managing the El Faro, as well as failure to provide a seaworthy vessel, were the direct cause of Jeremie Riehm's death at sea on or about October 1, 2015, when the El Faro sank in the Atlantic Ocean northeast of Crooked Island, Bahamas.

3.     This claim is brought by Jeremie Riehm's widow TINA RIEHM, as the duly appointed, qualified and acting Personal Representative of the Estate of Jeremie H. Riehm, deceased, by Letters of Administration dated October 15, 2015 (Lee County Florida Probate Division Case Number 15-CP-002309), on behalf of her deceased husband, herself, and their two children.  Tina Riehm is the statutory beneficiary entitled to bring this suit

on behalf of the decedent's estate and the aforementioned beneficiaries pursuant to the Jones Act, 46 U.S.C. § 688, and the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30301 *et seq.* and the General Maritime Law.

4.      Venue is proper in this Court as the Defendants SEA STAR LINE, LLC d/b/a TOTE Maritime and also d/b/a TOTE Maritime Puerto Rico, a foreign limited liability company, and TOTE SERVICES, INC., had, or usually kept an office for transaction of their customary business in Jacksonville, Duval County, Florida.

5.      This claim asserts a cause of action for the wrongful death of Jeremie Riehm, a citizen of the United States and a resident of Florida, at the time of his death, the beneficiaries of which are:

   a.   Tina Riehm, a resident of Florida, and the surviving spouse of the decedent Jeremie Riehm;

   b.   Carlo Riehm, a resident of Florida, and the minor son of decedent Jeremie Riehm who qualifies as a dependent relative of the Deceased;

   c.   Clancy Riehm, a resident of Florida, and the child of decedent Jeremie Riehm who qualifies as a dependent relative of the Deceased;

d.     The decedent's Estate.

6.     The El Faro (the "Vessel") (IMO number 7395351) was a 790-foot-long ship built in 1975, which sank in the North Atlantic Ocean on or about October 1, 2015.

7.     Sea Star Line, LLC d/b/a "TOTE Maritime" and also d/b/a "TOTE Maritime Puerto Rico" (hereinafter "Sea Star Line") is a foreign limited liability company incorporated under the laws of Delaware with its principle place of business in Jacksonville, Florida, and was the record owner of the El Faro during Jeremie Riehm's employment, and at the time of the sinking of the vessel and Jeremie Riehm's death.

8.     Tote Services, Inc. is a foreign for profit corporation existing under the laws of Delaware with its principle place of business in Jacksonville, Florida, and was the employer of Jeremie Riehm during his service on the Vessel, and at the time of the sinking of the Vessel and Jeremie Riehm's death.

9.     Jeremie Riehm, the deceased, was the Third Mate and was acting within the course and scope of his employment with Tote Services and was on the El Faro with the permission of its owner Sea Star Line at all times material hereto.

10.     Tina Riehm, the personal representative of the Estate of Jeremie Riehm and as an individual, is a citizen of the United States and resident of Florida and is otherwise *sui juris.*

## Relevant Facts Applicable to All Counts

11.     The El Faro left from Jacksonville, Florida on September 29, 2015 at approximately 8:10 p.m. EDT, loaded with approximately 391 containers topside and 294 cars, trucks and trailers below deck intending to sail approximately 1,300 miles over the course of four days to San Juan, Puerto Rico.

12.     Prior to leaving the Jacksonville Port, the Captain of the El Faro, Michael Davidson, contacted his employers at Tote Services, Inc. and/or the ship owner Sea Star Line and advised that he was aware of the developing storm in the area.

13.     At approximately 6:16 a.m. EDT on September 30, 2015, the El Faro began deviating from its usual straight-line route to San Juan, Puerto Rico, instead shifting closer to the Bahamas, but still headed towards the storm at or near full speed.

14.     At approximately 8 a.m. EDT on September 30, 2015, the National Weather Service upgraded Tropical Storm Joaquin to Hurricane

Joaquin, and predicted that the storm would approach the El Faro's path near the Bahamas.

15. At approximately 10 a.m. EDT, Captain Davidson sent an email to TOTE indicating that he understood the weather conditions in his intended path and suggesting that he had a plan to try outrun the approaching hurricane by heading directly towards the approaching storm.

16. At that time, Captain Davidson, still north of the Bahamas and more than 300 nautical miles from the approaching storm, had at least three safe alternatives: slow down to assess the weather; turn around and head away from the storm; or change course and head towards Florida. Instead, the El Faro continued straight towards the intensifying hurricane.

17. Over the next 21 hours the National Weather Service issued seven more hurricane advisories, each warning of the storm's increasing strength.

18. Despite the warnings, the El Faro's Captain did not adjust his course and the ship continued to travel to towards Hurricane Joaquin as the storm continued to strengthen.

19. At about 5 p.m. EDT on September 30, 2015, nine hours after the National Weather Service first declared Joaquin a hurricane, the El Faro

continued past "Hole in the Wall," a gap in the Bahamas archipelago, another escape route, which would have allowed the ship to travel west, away from the hurricane.

20.    Sailing at approximately 20 knots, near the top speed of the 40-year-old ship, Captain Davidson took the shorter route east of the Bahamas towards the hurricane rather than the longer route closer to the Florida coast that would have avoided the storm.

21.    Instead of delaying the voyage until it was safe or taking a longer more expensive trip around the storm which would have used more fuel and resulted in a late delivery, the course of action suggested and/or approved by the Defendants was to try and outrun the storm by sending the antiquated cargo ship into extreme weather.

22.    Some crew members appreciated the danger, were concerned about their safety, and contacted loved ones.  One such message sent by crew member Danielle Randolph to her mother explained: "Not sure if you've been following the weather at all, but there is a hurricane out here and we are heading straight into it."

23.    At approximately 9:09 p.m. EDT on September 30, 2015, the El Faro still traveling at 20 knots (at or approaching the vessel's maximum

speed given the conditions), was approximately 150 nautical miles northeast of the hurricane, and continued to head into the projected path of the storm.

24. At approximately 2:09 a.m. EDT on October 1, 2015, the El Faro was only about 50 nautical miles from the eye of Joaquin, and still heading towards the center of the storm at nearly 20 knots.

25. At approximately 3:56 a.m. EDT, El Faro's last logged location, the ship --apparently unable to maintain its speed due to the waves- was traveling at 10.7 knots and was slightly less than 50 miles from the eye of the hurricane.

26. At approximately 7:00 a.m. EDT the master called Tote and upon no answer from his employers left a voice mail message indicating that the El Faro had lost propulsion, was taking on water in hold number three, and that the ship was listing 15 degrees, but that the situation was still "manageable."

27. At approximately 7:15 a.m. EDT the Coast Guard received an electronic distress signal from the El Faro, but all attempts to communicate with the ship were unsuccessful and no further communications were ever received from the El Faro.

28.    At the time of the distress signal, the El Faro was without functioning engines, was approximately 36 nautical miles northeast of Acklins and Crooked Islands, Bahamas, very close to the eye of now category three Hurricane Joaquin, and was taking on water from a hatch that had opened up while the crew was attempting to pump out the water.

29.    Without propulsion the El Faro and its crew were at the mercy of the sea and were being battered by hurricane force waves and winds.

30.    A comprehensive search and rescue operation was undertaken almost immediately by the United States Coast Guard with assistance from the United States Navy.   However, rescue efforts were hampered by the extreme weather and the Coast Guard was not even able to fly into the last known position of the El Faro for several days due to the scope of the hurricane.

31.    There were no survivors and all 33 people on the El Faro were lost at sea.

**COUNT I:   SURVIVAL ACTION FOR NEGLIGENCE FOR PRE-DEATH PAIN AND SUFFERING UNDER THE JONES ACT AGAINST TOTE SERVICES, INC.**

32.     Claimant, TINA RIEHM, Personal Representative of the Estate of JEREMIE RIEHM, deceased, re-adopts and re-alleges paragraphs 1 through 31 as if fully set forth herein, and further alleges as follows:

33.     As the employer of seamen such as Jeremie Riehm Defendant Tote Services, Inc. had a duty to exercise reasonable care to provide Jeremie Riehm with a safe place to work.

34.     The Tote Services, Inc. was itself negligent, in one or more of the following respects:

    a.    Ordering or permitting the fully loaded vessel to sail into extreme weather knowing that there was a tropical storm and later a major hurricane in or near the intended route;

    b.    Failing to instruct the captain to remain in port in light of the extreme weather; or to plot a reasonable course around or away from the storm;

    c.    Failing to repair known problems with the vessel prior to ordering or permitting the vessel to sail;

    d.    Failing to provide a vessel that was reasonably fit for its intended purpose;

    e.    Failing to recognize the danger of sending a 40-year-old fully loaded top-heavy roll-on roll-off cargo ship into a hurricane;

    f.    Failing to procure enclosed life boats suitable for extreme weather;

g.   Fostering an environment where employees, including the captain, were so concerned about retaining their employment, that they were willing to take unreasonable risks to avoid a late delivery which would jeopardize their jobs;

h.   Failing to implement a Safety Management System compliant with the International Safety Management Code;

i.   Failing to equip the Vessel with a working EPIRB with procedures to ensure activation for location information in case of an emergency.

35.   In addition to its active negligence, Tote Services, Inc. is also vicariously liable for the negligence of the El Faro's master in selecting and continuing on a course directly into the path of the hurricane.

36.   Tote Services, Inc.'s breach of these duties as described above caused Jeremie Riehm to suffer bodily injury, physical pain, emotional distress, and mental anguish before he died as he and the other El Faro crew members remained helpless in the middle of a hurricane.

37.   The Jones Act, 46 U.S.C. § 688, provides the remedy of a survival action for the decedent's pre-death pain and suffering.

WHEREFORE the Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, demands judgment against Tote Services, Inc. for the Deceased's pre-death pain and suffering together with

any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

### COUNT II:   NEGLIGENCE CAUSING WRONGFUL DEATH UNDER THE JONES ACT AGAINST TOTE SERVICES, INC.

38.    Claimant, TINA RIEHM, Personal Representative of the Estate of JEREMIE RIEHM, deceased, re-adopts and re-alleges paragraphs 1 through 31 as if fully set forth herein, and further alleges as follows:

39.    The Jones Act permits a claim for wrongful death of a seaman by the seaman's personal representative based upon negligence.

40.    As the employer of seamen such as Jeremie Riehm Tote Services, Inc. had a duty to exercise reasonable care to provide Jeremie Riehm with a safe place to work.

41.    The Tote Services, Inc. was negligent and/or the master of El Faro for whom Tote is vicariously liable, was negligent, in one or more of the following respects:

      a.    Ordering or permitting the fully loaded vessel to sail into extreme weather knowing that there was a tropical storm and later major hurricane in or near the intended route of the ship;

b.    Failing to repair known problems with the vessel prior to ordering or permitting the vessel to sail;

c.    Failing to provide a vessel that was reasonably fit for its intended purpose;

d.    Failing to instruct the captain to remain in port in light of the extreme weather or to plot a reasonable course around the storm;

e.    Failing to recognize the danger of sending a 40-year old fully loaded top-heavy roll-on roll-off cargo ship into a hurricane;

f.    Failing to procure enclosed life boats and/or other measures so as to make the ship survivable in extreme weather;

g.    Fostering an environment where employees, including the captain, were so concerned about retaining their employment, that they were willing to do anything to avoid a late delivery which would jeopardize their jobs;

h.    Failing to implement a Safety Management System compliant with the International Safety Management Code;

i.    Failing to equip the Vessel with a working EPIRB with procedures to ensure activation for location information in case of an emergency.

42.    The Tote Service's breach of one or more of these duties as described above caused the El Faro to sink, resulting in Jeremie Riehm's death.

43.     As a further result, Jeremie Riehm's Estate and dependent relatives, his wife Tina Riehm, son Carlo Riehm and daughter Clancy Riehm, suffered and will suffer in the future: Loss of support; loss of the services of the Deceased; loss of nurture, guidance, care and instruction; and loss of inheritance.    Additionally, the Estate will suffer the loss of the prospective net accumulations of the estate, which might reasonably have been expected but for the wrongful death.

WHEREFORE, Claimant, Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, demands judgment against Tote Services, Inc. for any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief this Court deems proper.

**COUNT III:  CLAIM FOR WRONGFUL DEATH UNDER DEATH ON HIGH SEAS ACT AGAINST SEA STAR LINE, LLC D/B/A "TOTE MARITIME" AND ALSO D/B/A "TOTE MARITIME PUERTO RICO"**

44.     Claimant, Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, re-adopts and re-alleges paragraphs 1 through 31 as if fully set forth herein, and further alleges as follows:

45.     The Death on High Seas Act, 46 U.S.C. § 30301 *et seq.*,

permits a claim for wrongful death of a seaman by the seaman's personal representative based upon unseaworthiness of the vessel on which the seaman worked, to the extent the unseaworthiness occurred on the high seas beyond a marine league from the shore of any state of the United States, which is where Jeremie Riehm's death occurred.

46.    Sea Star Line, at all material times, had a non-delegable duty to provide a seaworthy vessel, equipment, and appurtenances including tools, equipment, and crewmembers themselves reasonably fit for their intended use.

47.    During the time period in which the Deceased was on the Vessel, and on the high seas beyond a marine league from the shore of any state or the Territories or dependencies of the United States, the unseaworthiness of Sea Star's vessel was a legal cause of injury and damage to Jeremie Riehm, including, without limitation, by reason of one or more of the following:

> a.    The El Faro was unsafe, unfit, and unseaworthy due to the owner's conduct and the overall condition of the 40-year-old ship,
>
> b.    Failing to repair known problems with the vessel prior to ordering or permitting the vessel to sail;
>
> c.    Not having adequate lifesaving equipment on board;

d.     Failing to procure enclosed life boats and/or other measures so as to make the ship survivable in extreme weather;

e.     Failing to maintain the ship, including the propulsion system, in such a manner as to ensure that it would not completely fail if used at or near full capacity or in rough waters;

f.     Failing to maintain a backup power or propulsion system for emergency use if the ship lost its main propulsion system, including redundant controls, dynamic GPS-guided positioning, and bow and stern thrusters capable of angling the ship into the swells;

g.     Failing to ensure the ship was structurally fit for use in extreme weather before sending it into the path a hurricane;

h.     The El Faro was not reasonably fit for its intended purpose due to its age and overall condition;

i.     Failing to implement a Safety Management System compliant with the International Safety Management Code;

j.     Failing to equip the Vessel with a working EPIRB with procedures to ensure activation for location information in case of an emergency.

48.     The unseaworthiness of the El Faro caused Jeremie Riehm's death.

49.     As a result, Jeremie Riehm's Estate and dependent relatives, his wife Tina Riehm, son Carlo Riehm and daughter Clancy Riehm, suffered

and will suffer in the future: Loss of support; loss of the services of the Deceased; loss of nurture, guidance, care and instruction; loss of inheritance, and funeral expenses.

WHEREFORE, Claimant, Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, demands judgment against Sea Star Line, LLC d/b/a "TOTE Maritime" and also d/b/a "TOTE Maritime Puerto Rico" for any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief this Court deems proper.

### Demand For Jury Trial

50.    Claimant, Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, respectfully demands trial by jury on all issues so triable.

Respectfully submitted,

**PAJCIC & PAJCIC, P.A.**

*/s/ Stephen J. Pajcic, III*
_____
**STEPHEN J. PAJCIC, III**
Florida Bar No.: 143485
**THOMAS F. SLATER**
Florida Bar No.: 614114

24

**BENJAMIN E. RICHARD**
Florida Bar No. 13896
One Independent Drive, Ste. 1900
Jacksonville, FL 32202
Telephone:  (904) 358-8881
Telefax:      (904) 354-1180
Tom@pajcic.com; Ben@pajcic.com
*Attorneys for Claimant Tina Riehm,*
*as Personal Representative of the*
*Estate of Jeremie H. Riehm,*
*deceased*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to all counsel of record via the EM/ECF system this 14th day of December, 2015.

**PAJCIC & PAJCIC, P.A.**

/s/ *Thomas F. Slater*

_____

**THOMAS F. SLATER**
Florida Bar No.: 614114
**BENJAMIN E. RICHARD**
Florida Bar No. 13896
One Independent Drive, Ste. 1900
Jacksonville, FL 32202
Telephone:  (904) 358-8881
Telefax:      (904) 354-1180
Tom@pajcic.com; Ben@pajcic.com
*Attorneys for Tina Riehm, as Personal*
*Representative of the Estate of*
*Jeremie H. Riehm, deceased*

25