UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN ADMIRALTY

In the Matter of The Complaint

Of

Sea Star Line, LLC, d/b/a TOTE Maritime Puerto Rico, as Owners; and TOTE Services, Inc., as Owner *pro hac vice* of the S.S. EL FARO for Exoneration from or Limitation of Liability

CASE NO.:
3:15-cv-1297-J-20MCR

_____/

## AFFIDAVIT OF JOHN BECKER

Comes now John Becker, upon being first duly sworn, deposes and says:

1. I am over the age of 21.

2. I have personal knowledge of the facts set forth below.

3. I am qualified and licensed by the US Coast Guard as an unlimited Master and Chief Engineer in the Merchant Marine, and as a First Class Pilot State of Hawaii, and have actively sailed and have received USCG Discharges at all license levels obtained, and I have 35 years of shipboard and marine operations experience.

4. I served on board ships in various capacities during my career and have been involved in nearly every aspect of ocean going ship operations.

5. I served on and am familiar with three of the El Faro sister ships and I have sailed on multiple classes of vessels spanning a 35 year period on the Jacksonville to San Juan route utilizing similar general voyage plans to the one that the El Faro was scheduled to follow, and was apparently following, on the date it was lost.

6. I am a graduate of the United States Merchant Marine Academy, graduated in the Top 10 % of the Class, with Honors, in the Dual major of Nautical Science and Marine Engineering.

7. Included in my duties during my career has been the overriding duty and responsibility to protect life, property, and the environment: i.e. all souls on board my ships, and the ships themselves, from harm, including harm from natural elements such as the wind, weather and sea, and as far as possible, consistent with the safe stewardship of the environment.

8. I am making this affidavit limiting my comments and opinions so that they are based on matters of record, specifically the known locations of the El Faro and known locations of the storm. I am not expressing

opinions on other matters that are not yet of record or are disputed. I reserve the right to express additional opinions once further information is known.

9. I have reviewed data from the National Hurricane Center and from MMSI Tracking data of the El Faro from the time the El Faro left port in Jacksonville until data from the ship ceased.

10. I have also carefully followed and have read the transcript from news conference given by Tote executives that followed the initial report that the El Faro had sunk and all hands were missing.

11. The essential elements of this data, the real time location of the El Faro and the real time location and projected path of the storm were known, or should have been known to both the Captain of the El Faro and the owners of the El Faro. This is due to the fact that the National Hurricane Center promulgates frequently updated information on the location of tropical storms and hurricanes available to anyone with access to the internet. Ship locations are made available to anyone with internet access, real time, as well, by way of websites such as marinetraffic.com.

12. In addition to the internet, publically broadcast Marine Radiofax Chart and VHF radio transmissions are routinely made at regular intervals by the US Coast Guard and National Oceanographic and

Atmospheric Administration and other jurisdictions. These transmissions increase in frequency as required whenever severe weather and/or storm activity is predicted and/or expected over the forecast and jurisdictional areas.

13. This information shows that the El Faro and the storm continued toward each other without significant deviation until the ship entered the area of the hurricane and its high winds and seas.

14. As a mariner familiar with the route from Jacksonville to San Juan, it is my opinion that there were many opportunities for the vessel to deviate from the voyage plan away from the storm or toward safer waters that could have been directed by either the Captain or the owners, that were missed or ignored.

15. It is my opinion that the decision to continue the voyage into the area of the storm, under all circumstances, including the fact that the El Faro was a loaded container ship as should have been known to the Captain and the owners of the El Faro, was unreasonable and constitutes negligence which directly resulted in the sinking and loss of the El Faro and its entire crew.

16.   It was unreasonable and therefore negligent for the captain and the owners to continue on a course taking them directly into the storm where the vessel and its crew were placed at unreasonable risk and peril.

17.   The apparent "plan" as described by the owners during a news conference after the disaster, to maneuver around the storm, given the known path of the vessel and the predicted path of the storm had the vessel travelling directly into the predicted path of the storm. This plan was, on its face, dangerous, reckless and negligent and apparently failed to take into account the lack of available sea room, relative proximity to a lee shore, and that following the plan without significant deviation was a proximate cause of the loss of the vessel and of the crew.

18.   Further affiant sayeth not.

_____
John Becker

The foregoing instrument was sworn to and subscribed before me this 9th day of December, 2015. Such person did/did not take an oath and: *(notary must check applicable box)*

___   is personally known to me.
 ✓    produced current FL driver's license as ID - DL# B260-461-57-326-0
___   produced as identification.

[Notary Seal must be affixed] _____/s/ Ashlee Manila_____
                              Signature of Notary Public



Ashlee Manila
_____
Print Name of Notary Public
Commission Number: 14-363
Date Commission Expires:
10-12-2018

Doc. Date: Undated          # Pages: 6
Notary Name: Ashlee Manila          3rd Circuit
Doc. Description: Affidavit of          (Stamp or Seal)
John Becker
/s/ Ashlee Manila  12-9-2015
Notary Signature   Date

6