UNITED STATES DISTRICT COURT
MIDDLE DISTRICT, FLORIDA
JACKSONVILLE DIVISION

"IN ADMIRALTY"

In the Matter of the Complaint

     of

Sea Star Lines, LLC, d/b/a TOTE Maritime
Puerto Rico, as Owners; and TOTE
Services, Inc., as Owner pro hac vice of the     CASE NO: 3:15-cv-01297-HES-MCR
S. S. El Faro for Exoneration from or
Limitation of Liability.

_____/

### CLAIMANTS, DONNA GRIFFIN AND GREGORY KUFLIK'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, THIRD PARTY COMPLAINT AND DEMAND FOR JURY TRIAL

### ANSWER TO COMPLAINT

Claimant, Donna Griffin, duly appointed as personal representative of the Estate of MITCHELL KUFLIK, Decedent, and in Donna Griffin's (parent) and Gregory Kuflik's (parent) individual capacities (collectively, Claimants/Third Party Plaintiffs) answer Plaintiffs' Complaint for Exoneration from or Limitation of Liability as follows:

1.    Admit this is a case of admiralty jurisdiction.

2.    Admit that venue is proper, but are without sufficient knowledge as to the balance of said allegation, leave plaintiffs to their proof and deny same.

3.    Are without sufficient knowledge of the allegations set forth, leave Plaintiffs to their proof and deny same.

4.    Are without sufficient knowledge of the allegations set forth, leave Plaintiffs to their proof and deny same.

5.      Are without sufficient knowledge of the allegations set forth, leave Plaintiffs to their proof and deny same.

6.      Admit.

7.      Admit.

8.      Deny.

9.      Are without sufficient knowledge of the specific allegations set forth, leave Plaintiffs to their proof and deny same.

10.     Deny.

11.     Deny.

12.     Deny.

13.     Are without sufficient knowledge of the specific allegations set forth, leave Plaintiffs to their proof and deny same.

14.     Are without sufficient knowledge of the specific allegations set forth, leave Plaintiffs to their proof and deny same.

15.     Admit.

16.     Deny.

17.     Are without sufficient knowledge of the specific allegations set forth, leave Plaintiffs to their proof and deny same.

18.     (a-e). Deny.

## AFFIRMATIVE DEFENSES

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      At all material times relevant to the Complaint, Plaintiffs failed to maintain the S.S. EL FARO ("Vessel") in a seaworthy condition.

3.      At all material times relevant to the Complaint, Plaintiffs failed to maintain the Vessel such that it was fit for its intended purpose relative to the voyage on which it commenced on September 29, 2015.

4.      Plaintiffs do not qualify for any protection afforded under and/or provided by 46 U.S.C. §§ 30505-30511 and the various statutes supplementary thereto and amendatory thereof, including exoneration and/or limitation of liability in any respects, because the unseaworthy condition of their Vessel was within Plaintiffs' privity and knowledge as owners and/or operators of said Vessel.

5.      Plaintiffs do not qualify for any protection afforded under and/or provided by 46 U.S.C. §§ 30505-30511 and the various statutes supplementary thereto and amendatory thereof, including exoneration and/or limitation of liability in any respects, because said Vessel was unfit for its intended purpose relative to the voyage on which it commenced on September 29, 2015 and said unfit status was within Plaintiffs' privity and knowledge as owners and/or operators of said Vessel.

6.      The sinking of their Vessel and the resulting losses, damages and/or injuries were caused by Plaintiffs' carelessness and negligence, acting as owner and/or operator of said Vessel, and/or by the carelessness and negligence of the master, executive officer, superintendent, and or management agent, all of whom were acting on behalf of Plaintiffs as servants, actual agents, apparent agents and/or representatives, with said carelessness and negligence to include violations of applicable safety regulations and/or statutes.

7.     The security amount posted by Plaintiffs is inadequate to cover all claims likely to be brought against Plaintiffs in this action, and Claimants/Third Party Plaintiffs request this court to reevaluate Plaintiffs' interests in their Vessel and other property, including freight.

8.     Plaintiffs are jointly and severally liable for the negligent and careless acts of third parties not protected by exoneration and/or liability limitation under 46 U.S.C. §§ 30505-30511 and the various statutes supplementary thereto and amendatory thereof.

<u>**CLAIMANTS DONNA GRIFFIN AND GREGORY KUFLIK'S COUNTERCLAIM AGAINST PETITIONERS AND THIRD PARTY COMPLAINT AGAINST THE ESTATE OF MICHAEL DAVIDSON AND MICHAEL DAVIDSON AND DEMAND FOR JURY TRIAL**</u>

Claimant, Donna Griffin, as personal representative of the Estate of MITCHELL KUFLIK, Decedent, and in Donna Griffin's (parent) and Gregory Kuflik's (parent) individual capacities (collectively, "Claimants/Third Party Plaintiffs") sue Plaintiffs and Third Party Defendants, Estate of Michael Davidson and Michael Davidson, and make the below allegations:

1.     Claimants/Third Party Plaintiffs are residents of New London County, Connecticut and the surviving parents of Mitchell Kuflik ("Decedent").

2.     Donna Griffin, pursuant to lawful authority, is the personal representative of the Estate of Mitchell Kuflik.

3.     Claimants/Third Party Plaintiffs, as parents of the decedent, are statutory beneficiaries permitted to bring this wrongful death action on behalf of Mitchell Kuflik's estate and themselves as individuals under the Jones Act, 46 U.S.C. § 688, the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 761-768 and pursuant to General Maritime Law.

4.      Decedent was a resident of Kings County, New York.

5.      Plaintiff Sea Star Line LLC ("Sea Star") is a limited liability company organized in Delaware with a principal place of business in Florida.

6.      Sea Star is the registered owner of the Vessel.

7.      Plaintiff Tote Services, Inc. ("Tote") is incorporated in Delaware with a principal place of business in Florida.

8.      Tote was the owner pro hac vice of the Vessel.

9.      Upon information and belief, Michael Davidson (Davidson), was a resident of Duval County, Florida, and/or resided in the State of Maine.

10.     Davidson was the Captain of the Vessel.

11.     Decedent's death at sea on October 1, 2015 while on board the sinking Vessel resulted from the Plaintiffs' and/or Davidson's:

       a.     Negligence in maintaining, operating, managing and/or equipping the Vessel;

       b.     Failure to provide a seaworthy Vessel; and

       c.     Collective decision to navigate the Vessel into hazardous, dangerous and lethal weather and sea conditions.

12.     Subject matter jurisdiction exists pursuant to:

       a.     28 U.S.C. § 1331, as certain causes of action brought are based on the Jones Act, 46 U.S.C. § 688 and the DOHSA, 46 U.S.C. §§ 761-768;

b.      28 U.S.C. § 1332, as the amount in dispute is greater than seventy-five thousand dollars ($75,000), exclusive of interest, attorney's fees and costs, and diversity of citizenship exists; and

c.      Article III admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333, assuming no diversity of citizenship amongst relevant parties exists.

13.    Venue is proper in this Court under 28 U.S.C. § 1391(a)-(c).

14.    The Vessel, identified by IMO # 7395351 and Official Number 561732, was built in 1975, weighed 31515 gross ton and spanned 736.8 feet.

15.    The Vessel transported cargo between ports of the United States, including Puerto Rico.

16.    At all material times, Decedent was employed by and/or was a borrowed servant of the Plaintiffs, Sea Star and/or Tote, serving as a seaman acting within the scope of his employment for the Plaintiffs.

17.    The Vessel was overdue for deferred repair work and had not been well repaired in the past; former crewmembers noted the work done by Sea Star and/or Tote was below industry standard.

18.    Upon information and belief, the Vessel suffered from substandard conditions, including, but not limited to, degraded steel suffering from electrolysis and resulting corrosion, electrical issues, and substandard machinery, including boilers, requiring service; all of which jeopardized the safety of the Vessel and its crew, particularly in hazardous

weather conditions where the Vessel could reasonably foreseeably lose power and/or break apart.

19.     Upon information and belief, the Vessel was overloaded with cargo, including vehicles, creating hazardous conditions, particularly dangerous in poor weather conditions, thereby impairing the Vessel's stability, i.e., the ability to right itself after listing.

20.     For its final, fateful voyage, commenced on September 30, 2015, the Vessel, loaded with approximately 391 containers topside and 294 cars, trucks and trailers below deck, intended to sail about 1,300 miles over the next four days from Jacksonville, Florida to San Juan, Puerto Rico.

21.     Former crew members noted that even during benign weather conditions, the Vessel took on excess water in spaces normally impervious to water accumulation, a condition known to Plaintiffs and Davidson.

22.     Before the Vessel commenced its final voyage on September 29, 2015, Plaintiffs and Davidson were aware of and ultimately ignored the existing and impending dangerous weather patterns and sea conditions, including the fact that the National Hurricane Center predicted then Tropical Storm Joaquin would likely become a hurricane.

23.     Despite having knowledge of the dangerous weather patterns likely to occupy the Vessel's intended route from Jacksonville, Florida to San Juan, Puerto Rico, Plaintiffs and Davidson decided to set sail at or about 8:15PM on September 29, 2015.

24.     At about 8:00 AM on September 30, 2015, the National Weather Service upgraded Tropical Storm Joaquin to hurricane status, with the hurricane likely to approach the Vessel's path near the Bahamas.

25.    At about 10:00 AM on September 30, 2015, Davidson delivered an email to Plaintiffs, acknowledging the upgraded status of Joaquin and that said hurricane was headed towards his intended route.

26.    Despite acknowledging the increased danger associated with Hurricane Joaquin, Davidson and Plaintiffs decided to attempt to outrun the approaching hurricane.

27.    At the time this fateful decision was made, Plaintiffs and Davidson reasonably could have chosen the safer options of slowing down to assess the weather, change course and head away from the storm to a safe harbor and/or change course and head towards Florida.

28.    Opting not to choose any of the aforementioned reasonable and safe options, Davidson and Plaintiffs navigated the Vessel directly into the worsening hurricane.

29.    Throughout this final voyage, Plaintiffs and Davidson ignored and/or rejected navigation options that would have permitted the Vessel to avoid the lethal impact of Hurricane Joaquin.

30.    Plaintiffs and Davidson ultimately chose attempting to deliver the cargo to San Juan, Puerto Rico on or before schedule rather than exercising any of the aforementioned navigation options that would have saved the Vessel and crew, including Decedent.

31.    The substandard physical condition of the Vessel, its advanced age, the overloading of the Vessel with cargo, and the decision to navigate the Vessel directly into the path of a lethal hurricane, conditions known and ignored by Sea Star, Tote and/or Davidson, all contributed to the sinking of the Vessel and death of the crew, including Decedent.

32.    Sea Star, Tote and/or Davidson could have prevented this disaster by maintaining the Vessel in proper working condition, by not overloading the Vessel with cargo in light of the dangerous weather likely to be encountered, and by using reasonable care to prevent the Vessel from sailing into known extremely lethal weather and sea conditions, to wit: altering the Vessel's navigational course towards a safer route and/or to find safe harbor.

33.    Each of these aforementioned conditions were known to Sea Star, Tote and/or Davidson before the Vessel's last clear chance to alter its course, including finding safe harbor.

34.    The Vessel and Hurricane Joaquin collided, the Vessel lost power, the Vessel started taking on water and the Vessel ultimately sank, with most of the topside structure separated from the hull.

35.    Although the hull was eventually found, there were no survivors and all crew members, including Decedent, are presumed dead.

36.    Sea Star, Tote and/or Davidson knew or should have known of the aforementioned conditions.

37.    Sea Star, Tote and/or Davidson could have prevented the sinking of the Vessel by taking the reasonable and available precautions noted above.

### COUNT I: SURVIVAL ACTION FOR NEGLIGENCE FOR PRE-DEATH PAIN AND SUFFERING UNDER THE JONES ACT AGAINST PLAINTIFFS SEA STAR AND/OR TOTE

38.    Claimants/Third Party Plaintiffs re-allege, adopt and incorporate by reference the allegations contained in paragraphs one through thirty-seven as if fully set forth herein.

39.    Sea Star and/or Tote at all material times were the Jones Act Employers of Decedent.

40.    Plaintiffs owed Mitchell Kuflik a duty of reasonable care for his safety; including care to maintain the Vessel in a reasonably safe condition and to operate said Vessel safely.

41.    Plaintiffs breached this duty and were careless and negligent by providing a Vessel that was unsafe and unfit due to conditions created by Plaintiffs' conduct, including, but not limited to:

a.    Failure to perform reasonably necessary repairs on their Vessel;

b.    Accepting improper, below industry standard repairs on their Vessel;

c.    Overloading or improperly loading their Vessel;

d.    Ordering their Vessel to sail on the predetermined route despite knowing the Vessel would be and was headed into a Hurricane and/or treacherous weather and sea conditions;

e.    Failure to navigate the Vessel around and/or away from the Hurricane when the opportunity to do so still existed;

f.    Failure to navigate the Vessel into a safe harbor when the opportunity to do so still existed and after receiving notice that weather and sea conditions were worsening and had been upgraded to hurricane status;

g. Failure to navigate their Vessel on a safe route in light of the known worsening and dangerous weather and sea conditions when the opportunity to do so still existed;

h. Exposing their Vessel to treacherous weather and sea conditions that said Vessel, in light of its age and substandard conditions, was unfit to navigate safely;

i. Failure to use reasonable care to provide Decedent with a safe place to work;

j. Failure to use reasonable care to inspect their Vessel, including the equipment and cargo on board;

k. Failure to use reasonable care to maintain their Vessel, including equipment on board;

l. Failure to warn crew members, including Decedent, of the dangers associated with the intended voyage from Jacksonville, Florida to San Juan, Puerto Rico in light of the anticipated worsening, dangerous and lethal weather and sea conditions;

m. Failure to provide adequate training, instruction and supervision to Davidson and crew relative to navigating safely the dangerous weather and sea conditions their Vessel was likely to encounter on this last voyage;

n. Failure to promulgate and/or enforce safety policies, procedures and/or rules to ensure that the safety of the crew and

integrity of their Vessel would not be subordinated to Plaintiffs'

unreasonable adherence to avoiding costs associated with a

delayed cargo delivery.

42.   Plaintiffs' knew or should have known of the above conditions causing the death of the El Faro crew members, including Mitchell Kuflik, but chose not to correct them, despite having sufficient time to do so before the Vessel sank and crew perished at sea.

43.   Plaintiffs' breach of their duties as described above caused Mitchell Kuflik to suffer bodily injury, physical pain, emotional distress and mental anguish before he perished at sea.

44.   The Jones Act, 46 U.S.C. § 688, provides the remedy of a survival action for the decedent's pre-death pain and suffering.

Wherefore the Claimants/Third Party Plaintiffs demand judgment against the Plaintiffs for the decedent's pre-death pain and suffering, including any and all compensatory damages, and as permitted, statutory interest, pre-judgment interest, attorney's fees, and costs, as well as trial by jury for all issues so triable, and any other relief that this Court deems proper.

## COUNT II: UNSEAWORTHINESS UNDER GENERAL MARITIME LAW AGAINST PLAINTIFFS SEA STAR AND/OR TOTE

45.   Claimants/Third Party Plaintiffs re-allege, adopt and incorporate by reference the allegations contained in paragraphs one through thirty-seven as if fully set forth herein.

46.   The general maritime law permits claims for the wrongful death of seaman by the seaman's personal representative based on unseaworthiness of the Vessel on which the seaman crewed, if the alleged unseaworthiness occurred in state territorial waters.

47.     On or about September 29, 2015 to on or about October 1, 2015, Decedent was a seaman and crew member of the Vessel which was in navigable waters.

48.     At all material times, Sea Star and/or Tote owned the Vessel and/or were the owners pro hac vice of said Vessel and therefore subject to a non-delegable duty to provide all crew members, including Decedent, with a seaworthy vessel, to wit: properly and competently manned, equipped, supplied and maintained to withstand safely the treacherous weather and seas to which she was to be subjected; fit and proper for the service for which said Vessel was intended; and operating pursuant to sound and safe policies and procedures.

49.     The unseaworthiness of the Vessel existed in whole or in part while said Vessel was in the territorial waters of Florida and/or the United States.

50.     At all material times, the unseaworthiness of the Vessel was a legal cause of injury and damage to Claimants/Third Party Plaintiffs as follows:

      a.     Failure to perform reasonably necessary repairs on their Vessel;

      b.     Accepting improper, below industry standard repairs on their Vessel;

      c.     Overloading or improperly loading their Vessel;

      d.     Ordering their Vessel to sail on the predetermined route despite knowing the Vessel would be and was headed into a Hurricane and/or treacherous weather and sea conditions;

      e.     Failure to navigate the Vessel around and/or away from the Hurricane when the opportunity to do so still existed;

f.   Failure to navigate the Vessel into a safe harbor when the

opportunity to do so still existed and after receiving notice that

weather and sea conditions were worsening and had been upgraded

to hurricane status;

g.   Failure to navigate their Vessel on a safe route in light of the

known worsening and dangerous weather and sea conditions when

the opportunity to do so still existed;

h.   Exposing their Vessel to treacherous weather and sea conditions

that said Vessel, in light of its age and substandard conditions, was

unfit to navigate safely;

i.   Failure to use reasonable care to provide Decedent with a safe

place to work;

j.   Failure to use reasonable care to inspect their Vessel, including the

equipment and cargo on board;

k.   Failure to use reasonable care to maintain their Vessel, including

equipment on board;

l.   Failure to warn crew members, including Decedent, of the dangers

associated with the intended voyage from Jacksonville, Florida to

San Juan, Puerto Rico in light of the anticipated worsening weather

and sea conditions;

m.   Failure to provide adequate training, instruction and supervision to

Davidson and crew relative to navigating safely the dangerous

weather and sea conditions their Vessel was likely to encounter on

this last voyage;

n.    Failure to promulgate and/or enforce safety policies,

procedures and/or rules to ensure that the safety of the crew and

integrity of their Vessel would not be subordinated to Plaintiffs'

unreasonable adherence to avoiding costs associated with a

delayed cargo delivery.

51.    The unseaworthiness of the Vessel played a substantial part in bringing about

or actually causing Decedent harm and then death, and said harm and then death were either

a direct result or a reasonably probable consequence of the unseaworthiness.

52.    As a result, Mitchell Kuflik's Estate and dependent relatives suffered and will

suffer in the future, including: loss of support; loss of services of Decedent; loss of nurture,

guidance, care and instruction; and loss of inheritance.  The Estate has suffered and will

suffer in the future, including loss of earnings of Decedent from the date of injury to the date

of death, less lost support of survivors, and/or loss of the prospective net accumulations of

the estate, which might reasonably have been expected but for the wrongful death.

Wherefore, the Claimants/Third Party Plaintiffs demand judgment against Plaintiffs

Sea Star and/or Tote, for any and all compensatory damages, loss of future earnings, punitive

damages, pain and suffering, and as permitted, statutory interest, pre-judgment interest,

attorney's fees and costs, as well as trial by jury for all issues so triable, and any other relief

this Court deems proper.

## COUNT III: CLAIM FOR WRONGFUL DEATH UNDER DOHSA

**AGAINST THE PLAINTIFFS, SEA STAR AND/OR TOTE, AND AGAINST THIRD PARTY DEFENDANTS, ESTATE OF DAVIDSON**

53.     Claimants/Third Party Plaintiffs re-allege, adopt and incorporate by reference the allegations contained in paragraphs one through thirty-seven as if fully set forth herein.

54.     DOHSA permits a claim for the wrongful death of a seaman by the seaman's personal representative based upon negligence, as well as the unseaworthiness of the Vessel on which the seaman worked, to the extent the negligence and/or unseaworthiness occurred on the high seas beyond a marine league from the shore of any State or the Territories or Dependencies of the United States, which is where Decedent's death occurred.

55.     At all material times, Plaintiffs and Third Party Defendants had the absolute, non-delegable duty to provide a seaworthy vessel reasonably fit for its intended purpose and use.

56.     At all material times, Plaintiffs and Third Party Defendants had the duty to use reasonable care for the safety of the crew, including but not limited to, canceling scheduled voyages and/or finding safe harbor or safe routes to avoid lethal weather and sea conditions then known to them.

57.     During the time frame in which Decedent was on the Plaintiffs' Vessel, and on the high seas beyond a marine league from the shore of any State or the Territories or Dependencies of the United States, Sea Star and/or Tote's negligence and the unseaworthiness of the Vessel were a direct, legal and proximate cause of injury and damage to Claimants/Third Party Plaintiffs as follows:

        a.     Failure to perform reasonably necessary repairs on their Vessel;

b.    Accepting improper, below industry standard repairs on their Vessel;

c.    Overloading or improperly loading their Vessel;

d.    Ordering their Vessel to sail on the predetermined route despite knowing the Vessel would be and was headed into a Hurricane and/or treacherous weather and sea conditions;

e.    Failure to navigate the Vessel around and/or away from the Hurricane when the opportunity to do so still existed;

f.    Failure to navigate the Vessel into a safe harbor when the opportunity to do so still existed and after receiving notice that weather and sea conditions were worsening and had been upgraded to hurricane status;

g.    Failure to navigate their Vessel on a safe route in light of the known worsening and dangerous weather and sea conditions when the opportunity to do so still existed;

h.    Exposing their Vessel to treacherous weather and sea conditions that said Vessel, in light of its age and substandard conditions, was unfit to navigate safely;

i.    Failure to use reasonable care to provide Decedent with a safe place to work;

j.    Failure to use reasonable care to inspect their Vessel, including the equipment and cargo on board;

k.    Failure to use reasonable care to maintain their Vessel, including equipment on board;

l.    Failure to warn crew members, including Decedent, of the dangers associated with the intended voyage from Jacksonville, Florida to San Juan, Puerto Rico in light of the anticipated worsening weather and sea conditions;

m.    Failure to provide adequate training, instruction and supervision to Davidson and crew relative to navigating safely the dangerous weather and sea conditions their Vessel was likely to encounter on this last voyage;

n.    Failure to promulgate and/or enforce safety policies, procedures and/or rules to ensure that the safety of the crew and integrity of their Vessel would not be subordinated to Plaintiffs' unreasonable adherence to avoiding costs associated with a delayed cargo delivery.

58.    The negligence of Plaintiffs and Third Party Defendants and the unseaworthiness of the Vessel caused Decedent's death.

59.    As a result, Mitchell Kuflik's Estate and dependent relatives will suffer in the future as follows:

a.    Loss of support;

b.    Loss of services of Decedent;

c.    Loss of nurture, guidance, care and instruction; and

        d.     Loss of inheritance.

60.     As a result, Mitchell Kuflik's Estate has suffered as follows:

        a.     Loss of earnings of Decedent from the date of injury to the date of death, less lost support of survivors and/or

        b.     Loss of the prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death.

61.     As a result, Claimants/Third Party Plaintiffs' survivors sustained pecuniary losses as allowed by law.

Wherefore, Claimants/Third Party Plaintiffs demand judgment against the Plaintiffs and Third Party Defendants for any and all compensatory damages, and as permitted, prejudgment interest, statutory interest, attorney's fees and costs, as well as trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT IV: NEGLIGENCE CAUSING WRONGFUL DEATH UNDER THE JONES ACT AGAINST SEA STAR AND/OR TOTE

62.     Claimants/Third Party Plaintiffs re-allege, adopt and incorporate by reference the allegations contained in paragraphs one through thirty-seven as if fully set forth herein.

63.     Plaintiffs Sea Star and/or Tote were at all material times the Jones Act Employer of Decedent.

64.     The Jones Act permits a claim for wrongful death of a seaman by the seaman's personal representative based upon negligence.

65.     Plaintiffs breached this duty and were negligent by providing a Vessel that was unsafe and unfit due to conditions created by Plaintiff's conduct, including, but not limited to:

a.    Failure to perform reasonably necessary repairs on their Vessel;

b.    Accepting improper, below industry standard repairs on their
Vessel;

c.    Overloading or improperly loading their Vessel;

d.    Ordering their Vessel to sail on the predetermined route despite
knowing the Vessel would be and was headed into a Hurricane
and/or treacherous weather and sea conditions;

e.    Failure to navigate the Vessel around and/or away from the
Hurricane when the opportunity to do so still existed;

f.    Failure to navigate the Vessel into a safe harbor when the
opportunity to do so still existed and after receiving notice that
weather and sea conditions were worsening and had been upgraded
to hurricane status;

g.    Failure to navigate their Vessel on a safe route in light of the
known worsening and dangerous weather and sea conditions when
the opportunity to do so still existed;

h.    Exposing their Vessel to treacherous weather and sea conditions
that said Vessel, in light of its age and substandard conditions, was
unfit to navigate safely;

i.    Failure to use reasonable care to provide Decedent with a safe
place to work;

j.     Failure to use reasonable care to inspect their Vessel, including the equipment and cargo on board;

k.     Failure to use reasonable care to maintain their Vessel, including equipment on board;

l.     Failure to warn crew members, including Decedent, of the dangers associated with the intended voyage from Jacksonville, Florida to San Juan, Puerto Rico in light of the anticipated worsening weather and sea conditions;

m.     Failure to provide adequate training, instruction and supervision to Davidson and crew relative to navigating safely the dangerous weather and sea conditions their Vessel was likely to encounter on this last voyage;

n.     Failure to promulgate and/or enforce safety policies, procedures and/or rules to ensure that the safety of the crew and integrity of their Vessel would not be subordinated to Plaintiffs' unreasonable adherence to avoiding costs associated with a delayed cargo delivery.

66.     As a result of Plaintiffs' negligence, the Vessel sank and Mitchell Kuflik perished at sea.

67.     As a further result, Mitchell Kuflik's Estate and dependent relatives suffered and will suffer in the future as follows:

a.     Loss of support;

b.  Loss of services of Decedent;

c.  Loss of nurture, guidance, care and instruction; and

d.  Loss of inheritance.

68.  As a result, Mitchell Kuflik's Estate has suffered as follows:

a.  Loss of earnings of Decedent from the date of injury to the date of death, less lost support of survivors and/or

b.  Loss of the prospective net accumulations of the estate which might reasonably have been expected but for the wrongful death.

Wherefore, Claimants/Third Party Plaintiffs demand judgment against the Plaintiffs and Third Party Defendants for any and all compensatory damages, and as permitted, prejudgment interest, statutory interest, attorney's fees and costs, as well as trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT V: NEGLIGENCE AGAINST THIRD PARTY DEFENDANTS

69.  Claimants/Third Party Plaintiffs re-allege, adopt and incorporate by reference the allegations contained in paragraphs one through thirty-seven as if fully set forth herein.

70.  Michael Davidson was the Captain of the Vessel.

71.  Davidson negligently navigated the Vessel out to sea despite warnings of treacherous weather and sea conditions, including an impending hurricane.

72.  Davidson knew or should have known before commencing the Vessel's final voyage that a tropical storm in the Atlantic Ocean was intensifying to hurricane strength and traveling towards the intended route of the Vessel.

73.     Davidson knew or should have known prior to leaving the Jacksonville port on the voyage to Puerto Rico that his intended course would cause the Vessel and crew to confront the treacherous and lethal storm brewing in the Atlantic.

74.     Decedent suffered severe injuries, pre-death conscious pain and suffering and eventually death due to the fault, carelessness and negligence of Davidson as follows:

a.      Operating the Vessel despite severe, treacherous and potentially lethal weather and/or sea condition warnings;

b.      Navigating the Vessel into a hurricane;

c.      Failing to turn back the Vessel from the impending treacherous weather and sea conditions;

d.      Failing to navigate the Vessel away from the impending treacherous weather and sea conditions and not selecting a safe route to Puerto Rico;

e.      Failing to find safe harbor before encountering the hurricane;

f.      Failing to warn Decedent of the dangers associated with leaving port as scheduled in a vessel of the age and condition of the El Faro, then knowing said Vessel would likely encounter treacherous weather and sea conditions;

g.      Overloading the Vessel in light of the expected treacherous weather and sea conditions; and/or

> h. Navigating the Vessel into treacherous weather and sea conditions
> for which said Vessel was unfit in light of its age, maintenance,
> equipment and structural integrity issues.

75. Davidson negligently failed to comply with the rules and practice of general maritime law to exercise reasonable care under the circumstances for the safety of the crew members, including Decedent, traveling aboard the El Faro.

76. The act or omissions of Davidson as referenced above were a direct, proximate, and legal cause of the sinking of the El Faro which occurred on or about October 1, 2015, resulting in Decedent's death.

77. Davidson, as Captain of the El Faro, owed the crewmen and seaman aboard the Vessel the highest degree of care given the circumstances and risks of navigating the Vessel through high seas and into heavy winds and mammoth waves in the days leading up to and including October 1, 2015.

78. As a result, Claimants/Third Party Plaintiffs have incurred damages.

79. As a direct and proximate cause of Davidson's negligent acts, Claimants/Third Party Plaintiffs seek recovery for the pre-death pain and suffering experienced by Decedent, as well as his extreme emotional distress and mental anguish, and for loss of support and services suffered by the Claimants/Third Party Plaintiffs.

Wherefore, Claimants/Third Party Plaintiffs demand judgment against Plaintiffs and Third Party Defendants for loss of support, past and future earnings, loss of services, pre-death pain and suffering, and all other damages permitted by law, including punitive

damages, as well as trial by jury for all issues so triable, and any other relief this Court deems proper.

By:_____ */s/ Stephen H. Durant*_____
          Stephen H. Durant (Trial Counsel)
          Florida Bar No. 180050
          sdurant@ds-law.net
          C. Popham Decunto
          Florida Bar No. 0650021
          6550 St. Augustine Rd., Suite 105
          Jacksonville, Florida 32217
          (904) 652-2600; (904) 652-2010 Fax
          *Attorneys for Claimant Donna Griffin and Gregory Kuflik*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to all counsel of record via the EM/ECF system this 16th day of December, 2015.

By:_____ */s/ Stephen H. Durant*_____
          Stephen H. Durant (Trial Counsel)
          Florida Bar No. 180050
          sdurant@ds-law.net
          C. Popham Decunto
          Florida Bar No. 0650021
          6550 St. Augustine Rd., Suite 105
          Jacksonville, Florida 32217
          (904) 652-2600; (904) 652-2010 Fax
          *Attorneys for Claimant Donna Griffin and Gregory Kuflik*