UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

IN ADMIRALTY

Case No.: 3:15-cv-1297-DES-MCR

In the Matter of the Complaint of

Sea Star Lines, LLC, d/b/a TOTE
Maritime Puerto Rico, as Owners;
and TOTE Services, Inc., as Owner
*pro hace vice* of the S.S. EL FARO
for Exoneration from or Limitation
of Liability
_____/

**ANSWER, AFFIRMATIVE DEFENSES AND CLAIMS OF CLAUDETTE RILEY AND CARROLL WRIGHT AS PERSONAL REPRESENTATIVES OF THE ESTATE OF MARIETTE WRIGHT, DECEASED**

Claimants Claudette Riley and Carroll Wright as Personal Representatives of the Estate of Mariette Wright, deceased, and on behalf of all heirs and survivors files this Answer, Affirmative Defenses and Claims in response to the Petitioner's Complaint for Exoneration from or Limitation of Liability and alleges as follows:

1. Admitted.

2. Admitted.

3. Without knowledge therefore denied.

4. Denied.

5. Denied.

6. Admitted.

7. Admitted.

8. Denied.

9. Admitted that during its voyage the EL FARO encountered Hurricane Joaquin, that on October 1, 2015, the master reported that the EL FARO was experiencing a list and had lost propulsion, and that the ship sent emergency messages received by the U. S. Coast Guard, otherwise denied.

10. Denied.

11. Denied.

12. Denied.

13. Without knowledge therefore denied.

14. Without knowledge therefore denied.

15. Admitted.

16. Denied.

17. Denied.

18. Denied.

## AFFIRMATIVE DEFENSES

19. The complaint fails to state a claim upon which relief can be granted.

20. Plaintiffs are not entitled to limitation or exoneration of liability because the EL FARO was not tight, staunch, strong, properly equipped, supplied, out fitted or under the command of a competent master, she was unseaworthy and was unfit, and unsuitable to undertake the service in which she was engaged for the voyage in question.  The EL FARO was unseaworthy prior to and during the fateful voyage.  The plaintiffs through their agents and/or employees and/or servants and/or apparent agents negligently, willfully, wantonly and recklessly were in violation of applicable laws and regulations

and were in full privity and knowledge of such negligence, willful and reckless violations and unseaworthy conditions.

21. The amount of the limitation fund is neither sufficient nor adequate to discharge Petitioners' obligations required by law. Claimant requests the Court to require that proper security be posted or dismiss the limitation action.

WHEREFORE having answered, claimants pray for the Court to deny the plaintiff's limitation petition and award claimants their costs in defending the petition.

## CLAIM

22. Claimants Claudette Riley and Carroll Wright have been appointed as the co-personal representatives of the Estate of Mariette Wright, deceased, by a judge of the Circuit Court in Flagler County, Florida (see Exhibit A).

23. Claimants bring this action for themselves, the Estate of Mariette Wright and all heirs, survivors and beneficiaries.

24. The survivors, heirs and beneficiaries are as follows:
    a. Carroll Wright, father of decedent
    b. Mary Shevory, mother of decedent
    c. Claudette Riley, sister of decedent
    d. Valerie Kimball, sister of decedent

25. Mariette Wright, deceased, was an able bodied seaman and crew member of the EL FARO who died when the vessel sank on October 1, 2015, in Hurricane Joaquin.

26. Petitioner Sea Star Line, LLC d/b/.a Tote Marine Puerto Rico (hereafter "Sea Star") is a foreign limited liability company organized under the laws of Delaware. Sea Star was the owner of the EL FARO.

27. Petitioner Tote Services, Inc. (hereafter "Tote Services") is a foreign corporation organized under the laws of Delaware.

28. Claimants make a claim pursuant to the Jones Act, 46 U.S.C. § 30104, the doctrine of unseaworthiness under the General Maritime Law of the United States, the Death on the High Seas Act, 46 U.S.C. § 30301 et seq. and any other applicable wrongful death or survival act.

29. Tote Services and Sea Star owned, operated, managed, controlled, was the owner "pro hac vice" or chartered the vessel EL FARO.

30. Tote Services and Sea Star employed the seamen who manned the EL FARO.

31. The EL FARO, U.S. Coast Guard official number 561732, was a U.S. flagged container / Ro-Ro ship which was bringing cargo between Jacksonville, Florida and San Juan, Puerto Rico. The ship was built in 1975 and was 736.8 feet long and had a beam of 92.0 feet.

32. On Monday, September 28, 2015 and September 29, 2015 the National Hurricane Center ("NHC") continued to issue advisories concerning Tropical Storm Joaquin, which showed that the EL FARO would cross or come into contact with the storm.

33. The EL FARO departed Jacksonville, Florida on September 29, 2015 at 8 p.m. bound for Puerto Rico. She had 391 containers on her deck and 294

trucks, cars and trailers on her Ro-Ro decks. Trucks and trailers are very hard to secure and pose a known threat to break loose from their lashings during heavy weather.

34. Before departing Tote Services and Sea Star did not have their "Designated Person" (ISM Code. Art. 4) or any management personnel discuss the anticipated storm and assess the risk to the vessel and her crew.

35. In the face of the storm warnings the petitioners allowed the EL FARO to depart from the safety of its port and head toward Puerto Rico with Tropical Storm Joaquin in its path.

36. Once it sailed no one from the Tote Services or Sea Star counseled, advised ordered or directed the EL FARO to 1) slow down to assess the weather or 2) return to port or seek refuge in Florida.

37. By 11:00 p.m. on September 30, 2015, the storm had been upgraded to a Category 3 hurricane with winds exceeding 115 m.p.h.

38. On October 1, 2015, the EL FARO's Captain, Michael Davidson, made an emergency call to Tote Services or Seas Star advising that the ship had a breach in its hull, was taking on water, was listing 15 degrees, had lost power and the main propulsion. Davidson reported the "situation was manageable". That was the last communication from the EL FARO.

39. On Thursday, October 1, 2015 at 7:17 a.m. the U.S. Coast Guard received EPIRB distress alerts from the EL FARO when its position was about 20 miles from the eye of the hurricane.

40. No one in upper management of Tote Services (or the designated person) provided Captain Davidson with advice, support, instruction, guidance, weather routing data or any information intended to lessen the danages presented by Hurricane Joaquin.

41. The vessel and crew were deemed lost at sea after unsuccessful search and rescue efforts.

42. The EL FARO has had prior incidents when it reportedly lost power and propulsion during a voyage (April 12, 2011 incident reported to U.S. Coast Guard).

43. Just prior to leaving port the EL FARO was undergoing significant maintenance, repair and alternation to its boilers. In fact further work was needed. Tote Services and Sea Star had contracted with a separate repair crew to provide some or all of such services and such crew also went down with the ship.

44. Tote Services and Sea Star breached their duties owed to the crew through their acts and omission which were negligent, willful, wanton and reckless violations of applicable law, regulations and proper standards of care as set forth above and by:

  a. Failing to have and comply with Safety Management Systems, which required safety procedures and criteria to comply with the ISM Code and U.S. law;

  b. Failing to have a properly trained, educated and knowledgeable Designated Person ("DP") as required by the ISM Code;

c. Failure of the DP to discharge his/her duty to promote a safe working environment for those working on ships;

d. Failure of upper level management to discharge their duty to promote a safe working environment for those working on ships;

e. By ignoring and/or failing to act responsibly with knowledge of warning, alerts and bulletins of the NHC news and other available media;

f. By allowing the EL FARO to proceed to sea with a captain who lacked adequate knowledge as to weather, forecasting, meteorology, hurricane tracking, hurricane avoidance and operations in heavy weather risk assessment;

g. By failing to provide the EL FARO with proper shore side support staff with respect to hurricane tracking, avoidance, weather routing and assessment;

h. By ignoring NHC warnings of a progressively increasing dangerous situation as Tropical Storm Joaquin increased to a hurricane (cat 3-4).

i. By specifically failing to supervise, monitor and correct and override Captain Davidson's decision not to slow down or avoid the hurricane by returning to a safe port such as Florida.

j. By failing to properly review with Captain Davidson the risks of the storm before he departed Jacksonville, Florida and his options;

    k.    By failing to properly evaluate, discuss and review the ship's state of stability on departure from Jacksonville and heavy weather situations, which may arise;

    l.    Failure to use reasonable care to provide and maintain a safe place to work, fit with proper and adequate machinery, crew and equipment;

    m.    Failure to use reasonable care to inspect the ship, its equipment and cargo;

    n.    Failure to use reasonable care to maintain EL FARO and its equipment in a seaworthy condition;

    o.    By allowing EL FARO to take a dangerous and hazardous course and route towards a hurricane, in close proximity to a hurricane and into a hurricane;

    p.    By failing to have the proper and safest lifeboat available to the crew of the ship and by failing to train the crew for heavy weather launching of its boats and use of lifesaving gear; and

    q.    By intentionally placing the lives of the crewmembers and vessel at extreme risk for the purpose of financial growth.

45.    Tote Services and Sea Star had a non-delegable duty to provide a seaworthy vessel: tight, staunch, strong and properly or competently manned, equipped and supplied and fit and proper for the service in which she was engaged, industry adequate policies and procedures.  Tote Services and Sea Star owed the decedent a duty of reasonable care for her safety, including the duty to maintain the vessel in a reasonably safe and seaworthy condition and to

      operate the vessel safely in accordance with applicable laws, regulations, and proper standards of maritime practice.  That by reason of the foregoing paragraph in this claim Tote Services and Sea Star breach their duties and their acts and omissions rendered the EL FARO unseaworthy.

46. By reason of the above, and as a direct and proximate result of the above fault, design, neglect, willful, wanton and reckless acts and omissions of the plaintiffs and unseaworthiness of the EL FARO, Mariette Wright suffered severe injuries, pre-death conscious pain and suffering and ultimately died when the EL FARO sank in the Hurricane Joaquin.

## DAMAGES

47. Claimants demand damages allowed under the Jones Act, 46 U.S.C. § 301104, the General Maritime Law of the United States, the Death on the High Seas Act, 46 U.S.C. § 30301 (et seq) including but not limited to compensatory damages, pecuniary damages, loss of support, loss of past and future earnings, loss of fringe benefits, loss of services, loss of nurture, guidance, care and instruction, loss of enjoyment of life, funeral expenses, loss of inheritance, pre-death physical and mental pain and suffering and all other damages allowable by the law, including punitive damages.  Claimants also demand a trial by jury for all issues so triable.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished to all counsel of record via the EM/ECF system this 17th day of December 2015.

/s/ Jacob J. Munch, Esquire
JACOB J. MUNCH, ESQUIRE
MUNCH AND MUNCH, P.A.
600 S. Magnolia Avenue – Suite 325
Tampa, Florida 33606
Phone:  (813) 254-1557
Fax:     (813) 254-5172
Florida Bar Number 376523
Attorney for Estate of Mariette Wright
sealaw@tampabay.rr.com
