UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 15–cv–01297–HES–MCR

AT LAW AND IN ADMIRALTY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In the Matter of the Complaint | ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF: |
| of | |
| | JARVON WHIGHAM, Individually, and as survivor and son of JACKIE ROBERT JONES, JR., deceased |
| Sea Star Line, LLC, d/b/a TOTE Maritime Puerto Rico, as Owners, and TOTE Services, Inc., as Owner *pro hac vice* of the S.S. EL FARO for Exoneration from or Limitation of Liability | Claimant/Counter Claimant |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ANSWER TO COMPLAINT

The Claimant JARVON WHIGHAM (hereinafter referred to as WHIGHAM or CLAIMANT)

individually and as son of JACKIE ROBERT JONES, JR., deceased, hereby answers Petitioner's

Complaint for Exoneration from or Limitation of Liability [D.E. 1]. Upon information and belief,

the personal representative of the estate of JACKIE ROBERT JONES, JR. has made a claim in

this action but apparently has not represented the interests of the son of the decedent, JARVON

WHIGHAM. JARVON WHIGHAM responds to the paragraphs of the Complaint for Exoneration

from or Limitation of Liability [D.E. 1] as follows:

1. Admitted that the limitation of liability claim arises under the Court's Admiralty
   Jurisdiction.  Otherwise, the allegations of paragraph 1 are denied.

2. Admitted only that venue for the limitation of liability claim is proper in this district.
   Otherwise, the allegations of paragraph 2 are denied.

3.  Without knowledge and therefore denied.

4.  Without knowledge and therefore denied.

5.  Denied.

6.  Admitted that the vessel was a roll on/roll off vessel and that it was registered under the
    laws of the United States.  Without knowledge and therefore denied as to gross tonnage.

7.  Admitted.

8.  Denied.

9.  Denied as phrased.

10. Denied.

11. Denied.

12. Denied.

13. Without knowledge and therefore denied.

14. Without knowledge and therefore denied.

15. Admitted.

16. Denied.

17. Denied.

18. Denied.

    (a) Denied.

    (b) Denied.

    (c) Denied.

    (d) Denied.

    (e) Denied.


## AFFIRMATIVE DEFENSES

1.  The vessel was **unseaworthy as a matter of law** at and before the commencement of the

voyage.  Accordingly, any limitation of liability or exoneration from liability under 46 U.S.C. Sec. 30505 to Sec. 30511 or otherwise is not available to the owners and/or operators of the subject vessel and is void ab initio and the limitation action should be dismissed.  The subject vessel, the *El Faro*, was unseaworthy, that is not fit for the purpose for which it was intended, to sail from Jacksonville, Florida to San Juan, Puerto Rico, as a matter of law because it was not capable of completing the voyage, as of and before the commencement of the voyage, as evidenced by the fact that it lost power during the voyage.

2.   The vessel was **unseaworthy because of its defects and deficiencies** at or before the commencement of the subject voyage, making the vessel not fit for the purpose for which it was intended, that is completing the subject voyage in a safe manner, and was not tight, staunch, strong, or properly and competently manned, equipped, or supplied.  The elements of unseaworthiness include but are not limited to, the fact that the vessel's main propulsion system which failed prior to completing the subject voyage and therefore by definition the vessel was unseaworthy at or before the commencement of the subject voyage; the vessel was overloaded making the vessel overweight and unstable; the vessel had undergone repairs before the subject voyage which were below industry standards;  The "Gumby" life-saving suits were not stored in easily accessible locations and in fact were stored under lock and key so as to make accessibility for people in emergencies, including the decedent herein, problematic;  the davits used to hang and gain access to and launch the lifeboats were in need of repair and did not allow easy access and launching of the lifeboats; the hatch cover would not close tight thus allowing water into the main hold of the vessel in heavy seas; the vessel was not manned with a master who was competent and reasonably prudent; and the owners and/or operators of the vessel requested, demanded, directed, and/or allowed the *El Faro* vessel to leave port not only in the unseaworthy condition described herein but also in the face of an oncoming tropical storm which was expected to become a hurricane and

which was on a potential collision path with the *El Faro* in most, if not all routes of travel to the

*El Faro's* destination, San Juan, Puerto Rico.

3.   The owners and/or operators of the subject vessel, the limitation Plaintiffs herein, **failed to**

**exercise reasonable care and due diligence in maintaining the subject vessel as seaworthy** at

all times material hereto including before and at the commencement of the subject voyage.

Accordingly, any limitation of liability or exoneration from liability under 46 U.S.C. Sec. 30505

to Sec. 30511 or otherwise is not available to the owners and/or operators of the subject vessel and

is void ab initio and the limitation action should be dismissed.

4.   The owners and/or operators of the subject vessel, the limitation Plaintiffs herein, **had**

**privity and knowledge of the unseaworthy conditions or had the means of knowing of the**

**unseaworthy conditions** of the subject vessel prior to the subject voyage, but did not adopt

appropriate means to correct the unseaworthy condition of the subject vessel prior to the subject

voyage.

5.   The limitation **Plaintiffs herein cannot establish their lack of privity or knowledge.**

Accordingly, limitation of liability under 46 U.S.C. Sec. 30505 to Sec. 30511 or otherwise is not

available. Further, the vessel's master or owner's superintendent or managing agent had privity or

knowledge of the acts of unseaworthiness or negligence which caused the injuries and damages

which are the subject of this action. Under 46 U.S.C. Sec. 30506 (e), that privity or knowledge is

imputed to the owners, the Plaintiffs herein.   Accordingly, the limitation action should be

dismissed and the claimants should be allowed to try liability and damage issues in state court.

*See Suzuki of Orange Park, Inc. v. Shuber*t, 86 F. 3d 1060, 1997 AMC 457 (11th Cir. 1996) and

*Fecht v. Makowski*, 406 F. 2d 721, 1969 AMC 144 (5th Cir. 1969). The Savings to Suitors clause,

first signed into law by President George Washington in 1789 and now found at 28 USC Sec. 1333

(1) (2012) "embodies a presumption in favor of jury trials and common law remedies in the forum

of the claimants' choice. [Citations]." *Beiswenger Enterprises Corp. v. Carletta*, 86 F. 3d 1032, 1037 (11th Cir. 1996).

6.   The Limitation Plaintiffs and/or operators of the *EL FARO* are not entitled to either exoneration from or limitation of liability pursuant to applicable law and statutes including but not limited to 46 U.S.C. § 30505 to 30511 for any and all loss, death, injuries, and/or damages caused by the subject incident because of the **personal contracts doctrine**.   The Limitation Plaintiffs and/or operators of the subject vessel entered into contracts for the employ of the seaman and entered into or were third-party beneficiaries of the collective bargaining agreement for its seamen which contracts upon information and belief expressly or impliedly warrant the seaworthiness of the vessel. (The Limitation Plaintiffs have a copy of these contracts; The Claimant/Limitation Defendant does not have a copy of these contracts).   The vessel however was unseaworthy and that unseaworthiness caused the injuries and damages to the decedent and his family and survivor.

7.   The Limitation Plaintiffs and/or operators of the *EL FARO* are not entitled to either exoneration from or limitation of liability pursuant to applicable law and statutes including but not limited to 46 U.S.C. § 30505 to 30511 for any and all loss, death, injuries, and/or damages caused by the subject incident because the **owners and/or operators requested, demanded, directed, and/or allowed the *El Faro* vessel to leave port and to navigate the vessel** not only in the unseaworthy condition described herein but also into the face of an oncoming tropical storm which was expected to become a hurricane and which was on a path which was within the route of the ship to its destination.

8.   The Limitation Plaintiffs and/or operators of the *EL FARO* are not entitled to either exoneration from or limitation of liability pursuant to applicable law and statutes including but not limited to 46 U.S.C. § 30505 to 30511 for any and all loss, death, injuries, and/or damages caused by the subject incident because the owners and/or operators of the *EL FARO* had **direct privity or**

**knowledge of their masters' negligence** in his operation of the subject vessel directly into the path of Hurricane Joaquin prior to and at all times material hereto.

9.   The subject incident, loss, death, injuries, and/or damages referred to in the *EL FARO* Limitation Plaintiffs' Complaint were **caused by the direct negligence of the Limitation Plaintiffs** herein as owners and/or operators of the subject vessel.

10.  The subject incident, loss, death, injuries, and/or damages referred to in the *EL FARO* Limitation Plaintiffs' Complaint were **caused by the violations of applicable International, Federal, and state safety and operating statutes and regulations** by the Limitation Plaintiffs and/or operators of the *El Faro* herein.

11.  The Limitation Plaintiffs and/or operators of the *EL FARO* are **not entitled to either exoneration from or limitation of liability** pursuant to applicable law and statutes including but not limited to 46 U.S.C. § 30501 for **"wages"** due to this claimant which in a wrongful death case **includes the claims for loss of support for the remaining work life expectancy of the decedent had the decedent lived to a normal work life expectancy and includes loss of inheritance.**

12.  The **amount of security sought in the *EL FARO* Limitation Plaintiffs' Complaint is inadequate** because that amount does not accurately represent the value of the subject vessel and its **pending freight**. The Court therefore should strike the Complaint or should order petitioners to submit their interests in the subject vessel and other property for re-evaluation and thereafter direct that petitioners file security in an increased amount to cover the claims herein.

13.  The **amount of security calculated or sought in the *EL FARO* Limitation Plaintiffs' Complaint is inadequate** because the **Protection & Indemnity policy proceeds and the hull insurance proceeds** should be included in the limitation fund.

14.  The **amount of security sought in the *EL FARO* Limitation Plaintiffs' Complaint is inadequate** because the vessel's **pending freight** should be included in the limitation fund, i.e., the compensation paid to the owner for the carriage or cargo or other service performed by the

vessel. Further, the **pending freight of the other vessels in the flotilla**, i.e., in the transportation and/or contractual enterprise should also be included in the limitation fund.

15.   The **amount of security sought in the *EL FARO* Limitation Plaintiffs' Complaint is inadequate** because the subject vessel El Faro and the other vessels in the flotilla were **seagoing**. Accordingly, the respondents are entitled to the **increase in the limitation fund to $420 per gross ton** pursuant to 46 U.S.C. Sec. 30506 (b).

16. The limitation fund is inadequate because of the **flotilla doctrine**.  The Complaint should be dismissed because Petitioners have failed to deposit adequate security for and have failed to identify all of the vessels in the **common enterprise for transportation**, that is, the additional vessels within the flotilla or fleet which were under a common operational control, supervision, and enterprise.

17. The Limitation Plaintiffs of the *EL FARO* are jointly and severally liable for the negligence of **third parties who are not entitled to and cannot claim exoneration and/or limitation of liability.**

18. The Claimant hereby reserves her right to file and pursue all of her claims against the Petitioners and Cross Defendant, pursuant to the **Savings to Suitors Clause**, 28 U.S.C. Sec. 1333.

## COUNTERCLAIMS AGAINST THE LIMITATION PLAINTIFFS

19.   The Claimant JARVON WHIGHAM (hereinafter referred to as WHIGHAM or CLAIMANT) individually and as son of JACKIE ROBERT JONES, JR., deceased hereby files this Counterclaim against Petitioners/Counter Defendants SEA STAR LINE, LLC and TOTE SERVICES, INC., and says:

## THE PARTIES, JURISDICTION, AND OTHER PRELIMINARY ALLEGATIONS

20. These claims are being filed in this action pursuant to and in full compliance with the

7

Court's Order Approving Ad Interim Stipulation, Directing Issuance of Notice and Restraining Prosecution of Claims dated November 4, 2015.  If this limitation action is dismissed or otherwise resolved or if the Court grants leave to the Claimant to pursue these claims in state court, the Claimant hereby reserves the right and would respectfully petition and move this Court for leave to file and pursue all any and all claims against the Petitioners in state court and the Claimant preserves and maintains her right to pursue any and all claims against the Petitioners, pursuant to the Savings to Suitors Clause, 28 U.S.C. Sec. 1333.

21. These claims are being filed timely within the period of monition allowed by the Court in its Order Approving Ad Interim Stipulation, Directing Issuance of Notice and Restraining Prosecution of Claims dated November 4, 2015.

22. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

23. Federal subject matter jurisdiction arises under and is by virtue of the General Maritime Law such that the Court has admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333 and these claims are being asserted herein in compliance with the Court's Order Approving Ad Interim Stipulation, Directing Issuance of Notice and Restraining Prosecution of Claims dated November 4, 2015.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

25. The Claimant JARVON WHIGHAM individually and as son of JACKIE ROBERT JONES, JR., is sui juris and is and at all times material hereto was a resident of Duval County, Florida.  JARVON WHIGHAM is the son of JACKIE ROBERT JONES, JR., deceased and was a dependent in whole or in part of the decedent for support and services at the time of his death. The Claimant is a survivor and son of JACKIE ROBERT JONES, JR., a deceased seaman who died while serving aboard the *EL FARO*.

26. Upon information and belief, the personal representative of the estate of JACKIE ROBERT

JONES, JR. has made a claim in this action but apparently has not represented the interests of the son of the decedent, JARVON WHIGHAM.

27. JACKIE ROBERT JONES, JR., deceased, at all times material hereto was a Jones Act seaman serving on the *El Faro* vessel as a seaman while in the employ of the Limitation Plaintiffs herein. JACKIE ROBERT JONES, JR. served on the *El Faro* vessel on the subject voyage where the vessel lost power and was navigated into a collision course with Hurricane Joaquin. This resulted in the sinking of that vessel in 15,000 feet of water off of The Bahamas in the midst of the hurricane and the death of JACKIE ROBERT JONES, JR..

28. The survivors of the decedent include the following:

> (a) JARVON WHIGHAM, son of JACKIE ROBERT JONES, JR. and a dependent in whole or in part of the decedent for support and services at the time of his death.

29. The Limitation Plaintiff, SEA STAR LINE, LLC is a foreign limited liability company which at all times material hereto had its principal address and base of operations in Jacksonville, Florida, and at all times material hereto was and is doing business in Duval County, Florida. The members of this LLC are as follows: TOTE, Inc., 32001 32nd Avenue South, Suite 200, Federal Way, WA 98001; Taino Star Investment, Inc., 550 Road 5 Luchetti Industrial Park, Marginal Oeste, Bayamon 00961 PR; Karen Gaskill, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256; Alyse Lisk, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256; Eduardo Pagan, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256; William Taylor, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256; Jim Wagstaff, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256, Benjamin Taylor, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256; Steven Giese, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256, Michael Nicholson, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256; Anthony Chiarello, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256 and Timothy Nolan, 10550 Deerwood Park Blvd., Suite 509, Jacksonville, FL 32256. The Limitation

Plaintiffs/Counter Defendants at all times material hereto owned and operated the vessel *El Faro* and employed the Jones Act Seaman, JACKIE ROBERT JONES, JR..

30. The Limitation Plaintiff, TOTE SERVICES, INC., is a foreign corporation which at all times material hereto had its principal address and base of operations in Jacksonville, Florida and at all times material hereto was and is doing business in Duval County, Florida. This Limitation Plaintiffs/Counter Defendants at all times material hereto owned and operated the vessel *El Faro* and employed the Jones Act Seaman, JACKIE ROBERT JONES, JR..

31. The Limitation Plaintiffs/Counter Defendants, SEA STAR LINE, LLC and TOTE SERVICES, INC., at all times material hereto, personally, or through an agent, in the County and in the District in which this Counterclaim and Cross claim is filed:

    a.  Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b.  Had an office or agency in this state and/or county;  and/or

    c.  Engaged in substantial activity within this state; and/or

    d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

32. The Counter Defendants are subject to the jurisdiction of the Court of this state and of this United States District Court.

33. The subject vessel the *EL FARO* was a cargo vessel constructed in 1975. The *EL FARO* was 736.8 feet and weighed approximately 31,515 gross tons without cargo.  At all times material hereto, the *EL FARO* was transporting cargo between ports of the United States, specifically Jacksonville, Florida and San Juan, Puerto Rico.

34. All conditions precedent for filing and maintaining an action have been fulfilled, do not apply, or have been waived.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

35. The *El Faro* was an old ship which was unseaworthy in many respects before this voyage. Yet, the Limitation Plaintiffs and/or operators of the vessel herein who were responsible for causing and knew about this unseaworthiness allowed, requested, directed, or ordered that the vessel leave the Port of Jacksonville in the unseaworthy condition and in the face of a tropical storm which was expected to become a hurricane. The vessel when it left the Port of Jacksonville headed on a route which made it on a collision course with Hurricane Joaquin. The vessel lost power hours before its expected collision with Hurricane Joaquin. When that happened, the vessel lost all remaining ability to either outrun or to weather any significant storm much less a hurricane, making the *El Faro* a floating coffin with 33 lives onboard.

36. The *El Faro* was unseaworthy at or before the commencement of the subject voyage from the Port of Jacksonville, Florida. The negligence of the Limitation Plaintiffs/Counter Defendants herein took place on land and upon information and belief in Jacksonville, Florida, as more fully described herein.

37. **LIST OF UNSEAWORTHY ASPECTS OF THE SHIP**. The *El Faro* started this voyage on September 29, 2015 at or about 9:32 p.m. from the Port of Jacksonville, Florida. The *El Faro* was unseaworthy at that time in many respects including but not limited to the following. At the time of the subject voyage, the *EL FARO* was scheduled for repair and/or replacement of its propulsion system. This repair and/or replacement was overdue. Before the subject voyage, the *EL FARO* underwent repairs of its boilers and engines. Those repairs, however, fell below industry standards. Further, the *EL FARO* had known issues with its steel frame including but not limited to electrolysis and corrosion. *EL FARO's* electrical systems including but not limited to the machinery and/or boilers required repair and/or replacement prior to the subject voyage. The vessel was overloaded making the vessel overweight and unstable. (The *EL FARO* was loaded with approximately 391 containers on its top deck, and 294 automobiles below deck). The "Gumby"

life-saving suits were locked in a single room onboard and not stored in easily accessible positions in each cabin which made distribution of the life- saving "Gumby" suits difficult.  The davits used to hang and to launch the lifeboats were in need of repair and did not allow easy access and launching of those boats.  The hatch cover on the main deck of the ship would not close tight thus allowing water into the main hold in heavy seas.  The vessel was not manned with a master who was competent and reasonably prudent.  The Limitation Plaintiffs and/or operators requested, demanded, directed, and/or allowed the *El Faro* vessel to leave port not only in the unseaworthy condition described herein but also in the face of an oncoming tropical storm which was expected to become a hurricane and which was on a path which was within the route of the ship to its destination. The vessel owners and operators failed to have proper equipment, procedures, and manning in place to comply with industry standards, the ISM Code, SOLAS, and the other rules and regulations described herein.

38. **THE TIMELINE; ALLOWING THE VESSEL TO DEPART FOR A COLLISION COURSE WITH A HURRICANE**.  When the *EL FARO* set sail for San Juan, Puerto Rico from the Port of Jacksonville, Florida on September 29, 2015, the National Hurricane Center had issued its 5:00 p.m. advisory which advised that Tropical Storm Joaquin was located at 26°N 71°W and was moving West/Southwest at a speed of 5 mph and had maximum sustained winds of 65mph with higher gusts. Further, the National Hurricane Center advised that Tropical Storm Joaquin's West/Southwest movement was expected to continue "for the next couple of days" and could become a hurricane within 48 hours. Furthermore, the National Hurricane Center's September 29, 2015, 5 p.m. advisory issued a hurricane watch for central Bahamas – in the direct planned path of the *EL FARO*.

39. Before departing the Port of Jacksonville, the Master of the *EL FARO* contacted the *EL FARO* Limitation Plaintiffs to inform each that he was aware of the developing Tropical Storm Joaquin.

40.   The *EL FARO* Limitation Plaintiffs allowed, requested, directed, and/or ordered that the Master proceed with the voyage as planned to San Juan, Puerto Rico, which led directly into the area of the hurricane watch for central Bahamas and the expected path of then Tropical Storm Joaquin.

41. On September 29, 2015, at 11:00 p.m. the National Hurricane Center advised that it expected Joaquin to become a hurricane overnight. Further, the National Hurricane Center's 11:00 p.m. advisory identified that Tropical Storm Joaquin was located at 25.8°N 71.7°W and was moving West/Southwest at 5 mph and had increased maximum sustained winds of 70 mph with higher gusts.

42. At the time of the September 29, 2015, 11:00 p.m. advisory the *EL FARO* was located within 100 miles of the port of Jacksonville. Despite knowledge of Tropical Storm Joaquin's planned path and expected hurricane development within hours, the *EL FARO* Limitation Plaintiffs did not order the Master to return the *EL FARO* to the Port of Jacksonville, or change *EL FARO's* course.

43. On September 30, 2015, at 5:00 a.m. the National Hurricane Center issued a hurricane watch for Northwestern Bahamas and hurricane warning for Central Bahamas – both areas were in the direct planned path of the *EL FARO*. Further, the National Hurricane Center issued its advisory which identified that Tropical Storm Joaquin was located at 25.4°N 72.5°W and was moving West/Southwest at 6 mph and had maximum sustained winds of 70 mph. Tropical Storm Joaquin was expected to turn west. The National Hurricane Center also advised that the center of Tropical Storm Joaquin was expected to move near or over portions of the central Bahamas during the evening hours of September 30, 2015.

44. At the time of the September 30, 2015, 5:00 a.m. advisory the *EL FARO* was located within approximately 250 miles of the port of Jacksonville. Despite knowledge of Tropical Storm Joaquin's planned path and expected hurricane development within hours, the *EL FARO*

Limitation Plaintiffs did not order the Master to return the *EL FARO* to the port of Jacksonville, redirect *EL FARO's* route to a nearby Florida port, or change *EL FARO's* course.

45. On September 30, 2015, at 8:00 a.m. the National Hurricane center reiterated that it had issued hurricane warning for central Bahamas and hurricane watch for northwestern Bahamas. The National Hurricane Center issued its advisory which identified that Tropical Storm Joaquin had developed into a hurricane. Further, the National Hurricane Center advised that Hurricane Joaquin was located at 24.9°N 72.2°W and was moving Southwest at 6 mph and had maximum sustained winds of 75 mph with increased gusts. The National Hurricane Center also advised that Hurricane Joaquin was expected to continue to move west-southwest or west through September 30, 2015.

46. At the time of the September 30, 2015, 8:00 a.m. advisory the *EL FARO* was located within approximately 400 miles of the port of Jacksonville. Despite knowledge of Hurricane Joaquin's planned path, the *EL FARO* Limitation Plaintiffs did not order the Master to return the *EL FARO* to the Port of Jacksonville, redirect *EL FARO's* route to a nearby Florida port, or change *EL FARO's* course.

47. On or about September 30, 2015, at approximately 10:00 a.m. the Master sent an email to the *EL FARO* Limitation Plaintiffs which acknowledged the presence of Hurricane Joaquin in the path of the *EL FARO*. The Master also advised the *EL FARO* Limitation Plaintiffs that he had a plan to outrun Hurricane Joaquin. the Master advised that he would take a path closer to the Bahamas than the previous planned route, but he believed he would be able to outrun Hurricane Joaquin.

48. Instead of ordering the Master to slow the *EL FARO's* speed, return the *EL FARO* to the Port of Jacksonville, redirect *EL FARO's* route to a nearby Florida port, or change *EL FARO's* course the *EL FARO* Limitation Plaintiffs permitted, encouraged, and/or affirmed the Master to continue *EL FARO's* path directly into the path of Hurricane Joaquin.

49. Through September 30, 2015, the National Hurricane Center repeatedly advised of Hurricane Joaquin's continued strengthening and expected path South/Southwest.

50. On September 30, 2015, at approximately 1:15 p.m. the Master contacted the *EL FARO* Limitation Plaintiffs and advised that he had a plan to continue his path which would place the *EL FARO* approximately 65 miles from the center of Hurricane Joaquin.

51. Instead of ordering the Master to slow the *EL FARO's* speed, return the *EL FARO* to the Port of Jacksonville, redirect *EL FARO's* route to a nearby Florida port, or change *EL FARO's* course the *EL FARO* Limitation Plaintiffs permitted, encouraged, and/or affirmed the Master to continue *EL FARO's* path directly into the path of Hurricane Joaquin.

52. From the time *EL FARO* left the port of Jacksonville through September 30, 2015, the *EL FARO* Limitation Plaintiffs had many opportunities and the means to order the Master to redirect his route and seek refuge at the Port of Miami, Port Everglades, Port of Jacksonville, or the Port of Palm Beach.

53. On September 30, 2015, instead of taking a route closer to the State of Florida in order to avoid Hurricane Joaquin, the Master sailed the *EL FARO* at 20 knots (near top speed) towards the eastern part of the Bahamas directly towards Hurricane Joaquin.

54. The vessel could have taken the safer route closer to the State of Florida, or slowed the speed of the *EL FARO*, but the *EL FARO* Limitation Plaintiffs permitted, encouraged, and/or affirmed the Master's plan to continue *EL FARO's* path directly into the path of Hurricane Joaquin in order to avoid late delivery *EL FARO's* cargo and to save money and fuel.

55. On October 1, 2015, at approximately 2:00 a.m. the National Hurricane Center issued an advisory which identified that seas in the area of Hurricane Joaquin were expected to be in excess of 30 feet. Further, the National Hurricane Center advised that Hurricane Joaquin's maximum sustained winds were 75 mph with gusts up to 120 mph.

56. On October 1, 2015, at approximately 2:00 a.m. the *EL FARO* continued its path into the area of Hurricane Joaquin at approximately 17 knots.

57. On October 1, 2015, at approximately 2:00 a.m. the *EL FARO* was located approximately 50 miles from the eye of Hurricane Joaquin and was experiencing weather conditions which included winds in excess of 75-80 mph. The 75-80 mph winds which the *EL FARO* was experiencing at that time created sea swells and waves in excess of 50 feet in height.

58. At approximately 7:00 a.m. on October 1, 2015, the Master contacted the *EL FARO* Limitation Plaintiffs emergency call center and advised that there was a marine emergency. Further, the Master advised that the hull and hold number 3 were breached with water. The Master advised that the *EL FARO* was listing 15 degrees. The Master also advised that *EL FARO's* main propulsion unit had stopped working.

59. On October 1, 2015, at 7:17 a.m. the United States Coast Guard received several distress calls from the *EL FARO*. The *EL FARO's* distress calls were its last known communications.

60. At the time of the distress calls the *EL FARO* was located approximately 20 miles from the eye of Hurricane Joaquin.

61. Before the voyage started on September 29, 2015, the *EL FARO* Limitation Plaintiffs had direct knowledge of *EL FARO's* unseaworthy conditions described herein and knew or should have known of the strengthening Tropical Storm Joaquin traveling in a collision course with the *EL FARO*.

62. Further, during the subject voyage the *EL FARO* Limitation Plaintiffs directed, ordered, encouraged, requested, and/or allowed the Master to continue *EL FARO's* path directly into the path of Hurricane Joaquin despite having direct knowledge of EL FARO's unseaworthy condition.

63. **<u>VIOLATIONS OF INDUSTRY STANDARDS AND RULES AND REGULATIONS</u>**. These actions and the conduct of the Limitation Plaintiffs/Counter Defendants violated applicable industry standards and applicable international rules and regulations on the safe operation of

vessels. Those industry standards and international rules and regulations include but are not limited to the following: (a) The *EL FARO* Limitation Plaintiffs were required to establish a safety management system certified by the American Bureau of Shipping regarding the operation, management, control, and manning of the *EL FARO* and other vessels in the *EL FARO* Owners' flotilla in accordance with Chapter IX – The Safety of Life at Sea Convention 1974 ("SOLAS") and as implemented by 46 U.S.C. § 3201, and 33 C.F.R. Part 96 "Rules for the Safe Operation of Vessels and Safety Management Systems."; and (b) The International Safety Management Code ("ISM Code"). The purpose of the ISM Code is to ensure compliance with a set of uniform marine safety guidelines. The ISM Code requires company management to respond to the needs of those on board ships to achieve and maintain high standards of safety and environmental protection. As stated in the ISM Code, "the cornerstone of good safety management is commitment from the top." *See* ISM Code Preamble, part 6.   The violation of these applicable industry standards and applicable international rules and regulations caused the unseaworthiness of the el Faro, the sinking of the ship, and the death of all 33 crewmembers onboard including the decedent named herein.

64. **JACKIE ROBERT JONES, JR.**.  At the time of his death, JACKIE ROBERT JONES, JR. was 38 years old.  JACKIE ROBERT JONES, JR. left behind his son Jarvon Whigham.

65. **THE CREW SAW THEIR HORRIFIC END COMING FOR HOURS**.  From at least 2:00 a.m. on October 1, 2015 to the time the *EL FARO* sank to the bottom of the Atlantic Ocean 6 to 8 hours later, the crewmembers experienced hurricane strength winds and 40 to 50 foot swells. Their powerless 40 year old ship was tossed violently. The crewmembers knew their fate as evidenced by one crewmember's email or text message to her mother which states: "Not sure if you've been following the weather at all but there is a hurricane out here, and we are heading straight into it." The *EL FARO* crewmembers knew that they would not make it out of Hurricane Joaquin alive. Once the *EL FARO* began taking on water, listed 15 degrees, and lost its main

propulsion system, each and every crewmember, including the decedent named herein, knew that they were trapped inside of a steel coffin in the middle of the ocean.

66. **THE EL FARO BECAME A STEEL COFFIN**.  Sometime after 7:17 a.m. on October 1, 2015, Hurricane Joaquin's massive 50+ foot waves engulfed the *EL FARO* and dragged the ship and all 33 souls onboard down 15,000 feet to the bottom of the dark Atlantic Ocean. All 33 crewmembers including the decedent JACKIE ROBERT JONES, JR. suffered a horrific death due to drowning trapped in their steel coffin which they saw coming for hours.


## COUNT I
## WRONGFUL DEATH UNDER THE JONES ACT

67.  The Claimant Jarvon Whigham individually and as son and survivor of JACKIE ROBERT JONES, JR., deceased, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 66, above.

68. This is an action for wrongful death under the Jones Act, 46 U.S.C. §§ 30104 *et seq.* against the Limitation Plaintiffs/Counter Defendants named herein.

69. At all times material hereto, JACKIE ROBERT JONES, JR. was a Jones Act seaman who worked onboard the El Faro ship in navigable waters.

70. At all times material hereto, the Limitation Plaintiffs/Counter Defendants employed the decedent, JACKIE ROBERT JONES, JR., to work as a full time crewmember and to live onboard the *El Faro* ship during the voyage.

71. At all times material hereto, the Limitation Plaintiffs/Counter Defendants owned and operated the *El Faro* and were and were responsible for providing a seaworthy and safe vessel.

72.  The *EL FARO* Limitation Plaintiffs owed a duty to its crewmembers, including decedent JACKIE ROBERT JONES, JR., to provide a safe place to work, to maintain the *EL FARO* in a reasonably safe and seaworthy condition, and to operate the *EL FARO* in a reasonably safe manner. The *EL FARO* Limitation Plaintiffs breached those duties and were negligent by:

a.  Failing to provide and maintain a safe place to work and a safe vessel for its crew members, including the decedent JACKIE ROBERT JONES, JR.;

b.  Failing maintain the *EL FARO* in a reasonably safe manner and condition and in a seaworthy condition and fit for the purpose for which it was intended, i.e., to sail safely and without interruptions of service and without problems from Jacksonville, Florida to San Juan, Puerto Rico and back again. This included but was not limited to failing to maintain the boilers and propulsion system in good and seaworthy condition, failing to maintain the davits for the life boats in good and seaworthy condition, failing to maintain the hatch covers to prevent water intrusion in heavy seas and in good and seaworthy condition, failing to maintain proper lifesaving equipment in areas and locations easily accessible to all crewmembers in case of emergency including the "Gumby" suits, failing to load in a safe manner and to prevent overloading of the cargo;

c.  Failing to prevent the vessel from leaving port, and directing or requesting the vessel to leave port, at a time when the vessel would be on or near a collision course with a significant tropical storm or hurricane, namely Hurricane Joaquin;

d.  Failing to navigate the vessel away from a collision course with a significant tropical storm or hurricane, namely Hurricane Joaquin;

e.  Failing to navigate and take the vessel into alternative ports in Florida or the Bahamas to avoid the storm after the vessel departed Port of Jacksonville;

f.  Failing to inspect the subject vessel, its equipment, and its cargo prior to the subject voyage;

g.  Directing, ordering, requesting, encouraging, and/or allowing the *EL FARO* to embark on the subject voyage on September 29, 2015 even though the *EL FARO*

Owners knew that the *EL FARO* was overloaded and overweight and would likely encounter inclement and/or severe weather on the subject voyage;

h.  Directing, ordering, requesting, encouraging, and/or allowing the *EL FARO* to embark on the subject voyage on September 29, 2015 even though the *EL FARO* Owners knew that the *EL FARO* was unseaworthy;

i.  Directing, ordering, requesting, encouraging, and/or allowing the *EL FARO* to embark on the subject voyage on September 29, 2015 even though the *EL FARO* Owners knew that Tropical Storm Joaquin was moving towards the *EL FARO's* planned path for the subject voyage and despite the issuance of a Hurricane Watch for Central Bahamas by the National Hurricane Center prior to the *EL FARO* embarking on the subject voyage, and despite the National Hurricane Center's statement that Tropical Storm Joaquin was expected to strengthen into a hurricane within 48 hours – prior to the subject voyage on September 29, 2015;

j.  Failing to order the Master to return the *EL FARO* to the Port of Jacksonville, to a different port in Florida such as Port Canaveral, the Port of the Palm Beaches, Port Everglades, or the Port of Miami, to a port in The Bahamas, or to a port elsewhere, or to an alternate route or navigation;

k.  Failing to discharge the decedent JACKIE ROBERT JONES, JR. or other crewmembers from the *EL FARO* before the *EL FARO* embarked on the subject voyage;

l.  Failing to warn the decedent JACKIE ROBERT JONES, JR., or other crewmembers about the unseaworthy condition of the *EL FARO* before embarking on the subject voyage;

m.  Failing to warn the decedent JACKIE ROBERT JONES, JR. or other crewmembers about the presence of Tropical Storm Joaquin in or near the planned path of the *EL FARO* – prior to embarking on the subject voyage;

n.  Exposing the *EL FARO* to weather and sea conditions that the *EL FARO* was unfit and unable to handle;

o.  Failing to adequately monitor the *EL FARO* during the subject voyage;

p.  Failing to adequately monitor the tropical storm Joaquin before and during the subject voyage;

q.  Failing to adequately monitor the Master prior to and during the subject voyage;

r.  Failing to promulgate and/or enforce policies and procedures to prevent the *EL FARO* from leaving the Port of Jacksonville with a known Tropical Storm in or near the planned path of travel of the EL FARO;

s.  Failing to promulgate and/or enforce policies and procedures to ensure that the *EL FARO* was operated in a reasonably safe manner;

t.  Failing to provide adequate training, instruction, and/or supervision of the ship's master;

u.  Failing to comply with the requirements of Florida statutes with respect to reckless and/or careless operation of a vessel;

v.  Failing to comply with SOLAS and with the ISM Code;

w.  Failing to implement a Safety Management System compliant with the International Safety Management Code, Article 1.2.3;

x.  Failing to implement and maintain a safety management system which includes the functional requirements established by International Safety Management Code, Article 1.4;

y.  Failing to designate a person ashore to ensure the safe operation of the *EL FARO* and to provide a link between the *EL FARO* Limitation Plaintiffs and those on board, as mandated by International Safety Management Code, Article 4;

z.  Failing to designate a person ashore who had direct access to the highest level of management of the *EL FARO* Limitation Plaintiffs, as mandated by International Safety Management Code, Article 4;

aa. Failing to establish procedures for the preparation of plans and instructions, including checklists as appropriate, for key shipboard operations concerning the safety of the *EL FARO*, as required by International Safety Management Code, Article 7;

bb. Failing to establish procedures to identify, describe and respond to potential emergency shipboard situations, as required by International Safety Management Code, Article 8.1;

cc. Failing to implement a safety management system which provided for measures which would ensure that the *EL FARO* Limitation Plaintiffs' organization would respond at any time to hazards, accidents and emergency situations involving the *EL FARO*, as required by International Safety Management Code, Article 8.3;

dd. Failing to establish procedures to ensure that the *EL FARO* and its equipment was maintained in conformity with the provisions of relevant rules and regulations, as required by International Safety Management Code, Article 10;

ee. Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence; and

ff. Failing to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendants in the proof of negligence or proof of the absence of negligence.

73. The dangerous conditions which were not reasonably safe were created by the *EL FARO* Limitation Plaintiffs, were known to the *EL FARO* Limitation Plaintiffs, had existed for a sufficient length of time so that the *EL FARO* Limitation Plaintiffs should have known of them, and/or were continuous and repetitive problems thus giving notice to the *EL FARO* Limitation Plaintiffs.

74. The negligent and unseaworthy condition of the *EL FARO* occurred with sufficient regularity so as to be foreseeable by the *EL FARO* Limitation Plaintiffs, and should have been foreseeable by the *EL FARO* Limitation Plaintiffs.

75. The negligence of the Limitation Plaintiffs/Counter Defendants caused the *El Faro* to sink, caused all 33 seamen onboard including the decedent herein to suffer bodily injury and resulting pain, suffering, mental anguish, emotional distress, and death.

76.  The negligence of the *EL FARO* Limitation Plaintiffs occurred on land.  Accordingly, the Death on the High Seas Act, 46 U.S.C. §§ 30301–30308 does not apply and the General Maritime Law cause of action for wrongful death is supplemented by state wrongful death law and remedies, that is, the "Florida Wrongful Death Act" Fla. Stat. §§ 768.16–768.26.

77. The survivor named herein has suffered and will continue to suffer in the future losses which are compensable under the Florida Wrongful Death Act, Fla. Stat. §768.21.   Those losses include but are not limited to (a) loss of support and services of JACKIE ROBERT JONES, JR., deceased, who did provide that support and those services; (b) loss of the decedent's companionship and protection and mental pain and suffering; (c) loss of parental companionship, instruction, and guidance; (d) pain and suffering from the date of the injury; and (e) loss of the prospective net accumulations which might reasonably have been expected but for the wrongful death.

78. In the alternative, the Death on the High Seas Act, 46 U.S.C. §§ 30301–30308 (DOHSA) does apply and provides a recovery for this wrongful death under the maritime law.

79. The survivor named herein has suffered and will continue to suffer in the future losses

23

which are compensable under DOHSA.  Those losses include but are not limited to (a) loss of services of the decedent; (b) loss of financial support and contributions including earnings, fringe benefits, raises, bonuses, and all other compensation which the decedent would have made during his normal work life expectancy; (c) loss of nurture, care, guidance, and instruction which the decedent would have provided to his son Jarvon Whigham; and (d) loss of inheritance.

80. In any event, the Jones Act, 46 U.S.C. §§ 30104 *et seq.* and the general maritime law, provide and allow recovery for the pre-death pain and suffering of the decedent. Pre-death pain and suffering damages commence or apply from the point of time at which the crew of the *El Faro* including the decedent herein appreciated their peril and/or their fate.  That time began certainly at the time at which the *EL FARO's* main propulsion system failed, in any event several horrifying hours before the sinking of the *El Faro* and the drowning of all of its crew in the dark waters of the Atlantic in the middle of a hurricane.

81.   The actions of the *EL FARO* Limitation Plaintiffs in ordering and allowing the *EL FARO* to embark on the subject voyage knowing that the *EL FARO* was likely to venture directly into, or near Tropical Storm Joaquin which was expected to become a major hurricane within 48 hours of the *EL FARO's* departure from the port of Jacksonville; ordering and allowing the *EL FARO* to embark on the subject voyage despite knowledge of its unseaworthy condition; ordering and allowing the *EL FARO* to embark on the subject voyage despite knowledge that it was overloaded and overweight; failing to order and/or demand that the Master reroute the *EL FARO* to a Florida coastal port and seek refuge, slow the *EL FARO's* speed, return the *EL FARO* to the Port of Jacksonville, or change *EL FARO's* course so as to avoid Hurricane Joaquin exhibited and constitutes "wanton, willful, and/or outrageous conduct" and conduct which is owing to gross negligence and willful, wanton, and reckless indifference for the life and safety of all 33 seamen onboard *El Faro* including the decedent herein, which constitutes a basis for punitive damages against the *EL FARO* Limitation Plaintiffs.

WHEREFORE, the Counter Claimant hereby demands judgment against the Counter Defendants for (1) any and all damages allowable under the General Maritime Law and the Jones Act 46 U.S.C. §§ 30104, et. seq. as supplemented by state law including but not limited to the damages allowable under the Florida Wrongful Act, Fla. Stat. Sec. 768.21 including but not limited to the following:(a) loss of support and services of JACKIE ROBERT JONES, JR., deceased, who did provide that support and those services; (b) loss of the decedent's companionship and protection and mental pain and suffering; (c) loss of parental companionship, instruction, and guidance; (d) pain and suffering from the date of the injury; and (e) loss of the prospective net accumulations which might reasonably have been expected but for the wrongful death; (2) all damages recoverable under DOHSA if DOHSA applies including but not limited to the following: (a) loss of services of the decedent; (b) loss of financial support and contributions including earnings, fringe benefits, raises, bonuses, and all other compensation which the decedent would have made during his normal work life expectancy; (c) loss of nurture, care, guidance, and instruction which the decedent would have provided to his son Jarvon Whigham; (d) loss of inheritance; and (3) all damages allowable for the survival action damages including pre-death pain and suffering of the decedent; (4) punitive damages for causing the death of this seaman, (5) prejudgment interest under the maritime law which runs from the date of the incident through the date of judgment; (6) costs; and (7) any other damages recoverable under the general maritime law.

## COUNT II
## UNSEAWORTHINESS OF THE EL FARO
## AGAINST THE LIMITATION PLAINTIFFS

82. The Claimant/Cross Claimant Plaintiff, JARVON WHIGHAM, as son and survivor of JACKIE ROBERT JONES, JR., deceased, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 66, above.

83.  This is an action for the unseaworthiness of the vessel El Faro.  This action is against the Limitation Plaintiffs/Counter Defendants, SEA STAR LINE, LLC, d/b/a TOTE MARITIME PUERTO RICO  and TOTE SERVICES, INC.

84. The Counter Defendants at all times material hereto were the owners, owners *pro hac vice*, and/or operators of the vessel *El Faro*. The decedent JACKIE ROBERT JONES, JR. was a seaman onboard the *El Faro* on the subject voyage from September 29, 2015, through October 1, 2015.

85.   At all times material hereto, the *EL FARO* Limitation Plaintiffs had a non-delegable duty to provide a seaworthy vessel which was tight, staunch, strong, and properly or competently manned, equipped, and supplied, and fit and proper for the service in which she was engaged, including providing and enforcing adequate policies and procedures.

86. The *EL FARO* was unseaworthy, that is not fit for the purpose for which it was intended, to sail safely and soundly from Jacksonville, Florida to San Juan, Puerto Rico and back again. The unseaworthiness of the *EL FARO* is established as a matter of law. The *EL FARO* departed from the Port of Jacksonville on September 29, 2015. The final destination of the *EL FARO* was scheduled to be San Juan, Puerto Rico. The *EL FARO* never completed the subject voyage because it sank in the Atlantic Ocean. Therefore, the unseaworthiness of the *EL FARO* is established as a matter of law because it was not capable of completing the subject voyage.

87. The *El Faro* was unseaworthy at that time in many respects including but not limited to the following. At the time of the subject voyage, the *EL FARO* was scheduled for repair and/or replacement of its propulsion system. This repair and/or replacement was overdue. Before the subject voyage, the *EL FARO* underwent repairs of its boilers and engines. Those repairs however fell below industry standards. Further, the *EL FARO* had known issues with its steel frame including but not limited to electrolysis and corrosion. *EL FARO's* electrical systems including but not limited to the machinery and/or boilers required repair and/or replacement prior to the

26

subject voyage. The vessel was overloaded making the vessel overweight and unstable. (The *EL FARO* was loaded with approximately 391 containers on its top deck, and 294 automobiles below deck). The "Gumby" life-saving suits were locked in a single room onboard and not stored in easily accessible positions in each cabin which made distribution of the life- saving "Gumby" suits difficult. The davits used to hang and to launch the lifeboats were in need of repair and did not allow easy access and launching of those boats. The hatch cover on the main deck of the ship would not close tight thus allowing water into the main hold the ship would not close tight thus allowing water into the main hold in heavy seas. The vessel was not manned with a master who was competent and reasonably prudent. The owners and operators requested, demanded, directed, and/or allowed the *El Faro* vessel to leave port not only in the unseaworthy condition described herein but also in the face of an oncoming tropical storm which was expected to become a hurricane and which was on a path which was within the route of the ship to its destination. The vessel owners and operators failed to have proper equipment, procedures, and manning in place to comply with industry standards, the ISM Code, SOLAS, and the other rules, regulations, and industry standards described herein.

88. The unseaworthy conditions of the *EL FARO* caused the *El Faro* to sink in the midst of a violent hurricane which in turn caused all 33 hands onboard the ship, including the decedent herein, to drown and die.

89. The unseaworthiness of *El Faro* also caused the decedent herein to suffer bodily injury and resulting pain, suffering, mental anguish, emotional distress, and death.

90. The unseaworthiness of *El Faro* occurred at or before the commencement of the voyage which commenced in state territorial waters. Accordingly, the Death on the High Seas Act, 46 U.S.C. §§ 30301–30308 does not apply and the General Maritime Law cause of action for wrongful death is supplemented by state wrongful death law and remedies, that is, the "Florida Wrongful Death Act" Fla. Stat. §§ 768.16–768.26.

91. The survivor named herein has suffered and will continue to suffer in the future losses which are compensable under the Florida Wrongful Death Act, Fla. Stat. §768.21.   Those losses include but are not limited to (a) loss of support and services of JACKIE ROBERT JONES, JR., deceased, who did provide that support and those services; (b) loss of the decedent's companionship and protection and mental pain and suffering; (c) loss of parental companionship, instruction, and guidance; (d) pain and suffering from the date of the injury; and (e) loss of the prospective net accumulations which might reasonably have been expected but for the wrongful death.

92. In the alternative, the Death on the High Seas Act, 46 U.S.C. §§ 30301–30308 (DOHSA) does apply and provides a recovery for this wrongful death under the maritime law.

93. The survivor named herein has suffered and will continue to suffer in the future losses which are compensable under DOHSA.  Those losses include but are not limited to (a) loss of services of the decedent; (b) loss of financial support and contributions including earnings, fringe benefits, raises, bonuses, and all other compensation which the decedent would have made during his normal work life expectancy; (c) loss of nurture, care, guidance, and instruction which the decedent would have provided to his son Jarvon Whigham; and (d) loss of inheritance.

94. In any event, unseaworthiness and the general maritime law, provide and allow recovery for the pre-death pain and suffering of the decedent. Pre-death pain and suffering damages commence or apply from the point of time at which the crew of the *El Faro* including the decedent herein appreciated their peril and/or their fate.  That time began certainly at the time at which the *EL FARO's* main propulsion system failed, in any event several horrifying hours before the sinking of the *El Faro* and the drowning of all of its crew in the dark waters of the Atlantic in the middle of a hurricane.

95.   The actions of the *EL FARO* davits in ordering and allowing the *EL FARO* to embark on the subject voyage knowing that the *EL FARO* was likely to venture directly into, or near Tropical

Storm Joaquin which was expected to become a major hurricane within 48 hours of the *EL FARO's* departure from the port of Jacksonville; ordering and allowing the *EL FARO* to embark on the subject voyage despite knowledge of its unseaworthy condition; ordering and allowing the *EL FARO* to embark on the subject voyage despite knowledge that it was overloaded and overweight; failing to order and/or demand that the Master reroute the *EL FARO* to a Florida coastal port and seek refuge, slow the *EL FARO's* speed, return the *EL FARO* to the Port of Jacksonville, or change *EL FARO's* course so as to avoid Hurricane Joaquin exhibited and constitutes "wanton, willful, and/or outrageous conduct" and conduct which is owing to gross negligence and willful, wanton, and reckless indifference for the life and safety of all 33 seamen onboard *El Faro* including the decedent herein, which constitutes a basis for punitive damages against the *EL FARO* davits.

WHEREFORE, the Counter Claimant hereby demands judgment against the Counter Defendants for (1) any and all damages allowable under the General Maritime Law as supplemented by state law including but not limited to the damages allowable under the Florida Wrongful Act, Fla. Stat. Sec. 768.21 including but not limited to the following:(a) loss of support and services of JACKIE ROBERT JONES, JR., deceased, who did provide that support and those services; (b) loss of the decedent's companionship and protection and mental pain and suffering; (c) loss of parental companionship, instruction, and guidance; (d) pain and suffering from the date of the injury; and (e) loss of the prospective net accumulations which might reasonably have been expected but for the wrongful death; (2) all damages recoverable under DOHSA if DOHSA applies including but not limited to the following: (a) loss of services of the decedent; (b) loss of financial support and contributions including earnings, fringe benefits, raises, bonuses, and all other compensation which the decedent would have made during his normal work life expectancy; (c) loss of nurture, care, guidance, and instruction which the decedent would have provided to his son Jarvon Whigham; (d) loss of inheritance; (3) all damages allowable for the survival action damages including pre-death pain and suffering of the decedent; (4) punitive damages for causing the death

of this seaman; (5) prejudgment interest under the maritime law which runs from the date of the incident through the date of judgment; (6) costs; and (7) any other damages recoverable under the general maritime law.

## JURY DEMAND

The Claimant demands a trial by jury for all issues so triable.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 7th day of January, 2016.  I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing

By:  _s/ John H. Hickey_____
**JOHN H. HICKEY, ESQ.**
FBN: 305081
**BRETT SAGER, ESQ.**
FBN: 91636
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Suite 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
hickey@hickeylawfirm.com
bsager@hickeylawfirm.com
*Attorneys for the Claimant/Counter-*
*Claimant, Jarvon Whigham*
*individually and as survivor and son*
*of JACKIE ROBERT JONES, JR.,*
*deceased.*

## SERVICE LIST

**Matthew Edward Auger, Esq.**
**mauger@sswbgg.com**
**Suisman Shapiro Wool Brennan**
**Gray & Grrenberg, O.P.C.**
**Suite 200**
**2 Union Plaza – P.O. Box 1591**
**New London, CT  06320**
**Tel:  (860) 442-4416**
**Fax:  (860) 442-0495**
*Attorneys for Third Party Plaintiff Donna Griffin*

**Thomas Albert Boyd, Jr., Esq.**
**tboyd@boydsutter.com**
**tim@boydmaritimelaw.com**
**Boyd & Sutter, PA**
**6817 Southpoint Parkway, Suite 1801**
**Jacksonville, FL 32216**
**Tel:  (904) 470-0110**
**Fax: (904) 470-0116**
*Attorneys for Claimant Ace American Insurance Company*

**Lindsey C. Brock, III, Esq.**
**lindsey@rumrelllaw.com**
**Rumrell, McLeod & Brock – Jacksonville**
**9995 Gate Parkway, Suite 400**
**Jacksonville, FL  32246**
**Tel:  (904) 996-1100**
**Fax: (904) 996-1120**
*Attorneys for Those Certain Underwriters (Syndicate 1955, Syndicate 2987,*
*Syndicate 1183 and Syndicate 0457) Subscribing to Policy #B0180 PC1422840*
*As Subrogee of Del Valle Brands, Inc. and f/u/b/o Del Valle*

**Dennis Michael Campbell, Esq.**
**dcampbell@campbelllawfirm.net**
**Campbell Law Firm, PLLC**
**95 Merrick Way, Suite 514**
**Coral Gables, FL  33134**
**Tel:  (305) 444-6040**
**Fax:  (305) 444-6041**
*Attorneys for Claimant Gargiulo, Inc.*

William E. Cassidy, Esq.
wcassidy@marlaw.com
Cassidy & Black, P.A.
7700 N. Kendall Drive, Suite 505
Miami, FL  33156
Tel:  (305) 559-4962
Fax:  (305) 559-2163
*Attorneys for Defendant Bemis Company, Inc., et al*

Donald E. Christopher, Esq.
dchristopher@bakerdonelson.com
Michelle F. Zaltsberg, Esq.
mzaltsberg@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
200 S. Orange Avenue, Suite 2900
Orlando, FL  32801
Tel:  (407) 422-6600
Fax:  (407) 841-0325
*Attorney for Claimant Nissan North America, Inc.*

Timothy J. Conner, Esq.
timothy.conner@hklaw.com
George D. Gabel, Jr., Esq.
george.gable@hklaw.com
Lawrence Joseph Hamilton, II, Esq.
larry.hamilton@hklaw.com
Suzanne M. Judas, Esq.
sjudas@hklaw.com
Jennifer L. Kifer, Esq.
jennifer.kifer@hklaw.com
Michael M. Gropper, Esq.
Micahel.gropper@hklaw.com
Holland & Knight, LLP
50 N. Laura Street, Suite 3900
Jacksonville, FL  32202
Telephone:  (904) 353-2000
Facsimile:  (904) 358-1872
*Attorneys for Plaintiff &Counter Defendant Sea Star Line, LLC*

Michael A. DeIulis, Esq.
michael.deiulis@hklaw.com
HOLLAND & KNIGHT, LLP
10 St. James Avenue
Boston, Massachusetts 02116-3889
*Attorneys for Plaintiff & Counter-Defendant Tote Services, Inc.*
*and Plaintiff Sea Star Line, LLC*

**Catherine Popham Decunto, Esq.**
pdecunto@ds-law.net
**Stephen H. Durant, Esq.**
sdurant@ds-law.net
**Durant & Schoeppel, P.A.**
**6550 St. Augustine Road, Suite 105**
**Jacksonville, FL  32217**
**Tel:  (904) 652-2600**
**Fax:  (904) 652-2610**
*Attorneys for Third Party Plaintiff Donna Griffin*

**Thomas K. Equels, Esq.**
tequels@equelslaw.com
**EQUELS LAW FIRM**
**860 North Orange Avenue, Suite A**
**Orlando, Florida 32801**
*Attorneys for Claimant/Third Party Plaintiff KAREN SCHOENLY, personally and as a*
*survivor and Personal Representative of the Estate of HOWARD SCHOENLY, deceased*

**Vincent J. Foley, Esq.**
vincent.foley@hklaw.com
**Holland & Knight, LLP**
**31 W. 52nd Street**
**New York, NY  10019**
**Telephone:  (212) 513-3357**
**Facsmile:  (212) 385-9010**
*Attorneys for Plaintiff &Counter Defendant Sea Star Line, LLC and Plaintiff & Counter-*
*Defendant Tote Services, Inc.*

**Willie Edward Gary, Esq.**
weg@williegary.com
**Gary, Williams, Parenti, Watson & Gary, PL**
**221 E. Osceola Street**
**P.O. Box  9005**
**Stuart, FL  34994**
**Tel:  (772) 283-8620**
**Fax:  (772) 220-3343**
*Attorneys for Claimant Joanna Johnson*

**Benjamin R. Gideon, Esq.**
bgideon@bermansimmons.com
**Dov Sacks, Esq.**
dsacks@bermansimmons.com
**Berman & Simmons, P.A.**
**P.O. Box  961**
**129 Lisbon Street**
**Lewiston, ME  04243-0961**
**Tel:  (207) 784-3576**
**Fax:  (207) 784-7699**

*Attorneys for Claimants Kenneth W. Randolph; Karl Melkin; Laurie D. Bobillot and Elaine Melkin*

**Lawrence C. Glynn, Esq.**
**lglynn@carusoglynn.com**
**Caruso Glynn, LLC**
**5304 193rd Street**
**Fresh Meadows, NY  11365**
**Tel:  (718) 570-3338**
**Fax:  (718) 767-2474**
*Attorneys for Third Party Plaintiff Ace Insurance Company*

**Marlin Kareem Green, Esq.**
**mgreen@brownsims.com**
**Brown & Sim, PC**
**4000 Ponce de Leon Blvd., Suite 630**
**Coral Gables, FL  33146**
**Tel:  (305) 760-7362**
**Fax:  (305) 274-5517**
*Attorneys for Claimant Maverick C&P, Inc.*

**Michael P. Hamaway, Esq.**
**mhamaway@mbhlawyer.com**
**Mombach, Boyle, Hardin & Simmons, PA**
**100 NE 3rd Ave., Suite 1000**
**Ft. Lauderdale, FL 33301-1177**
**Tel:  (954) 467-2200**
**Fax:  (954) 467-2210**
*Attorneys for Claimants Patrick John Smith; Mildred Solar-Cortes as Personal Representative of the Estate of German Solar-Cortes, deceased and Tinisha Renee Thomas, as Personal Representative of the Estate of Anthony Shawn Thomas, deceased*

**Jerry Dean Hamilton, Esq.**
**jhamilton@hamiltonmillerlaw.com**
**Hamilton, Miller Birthisel, LLP**
**Suite 1200**
**150 SE 2nd Avenue**
**Miami, FL  33131**
**Tel:  (305) 379-3686**
**Fax:  (305) 379-3690**
*Attorneys for Sea Star Line, LLC & Tote Services, Inc.*

**Christopher Charles Hazelip, Esq.**
**chazelip@rtlaw.com**
**Rogers Towers, P.A.**
**Suite 208**
**818 AIA North**
**Ponte Verda Beach, FL  32082**
**Tel:  (904) 398-3911**
**Fax:  (904) 396-0663**
**Attorneys for Counter Claimant Terri C. Davis**

**Linda Marie Hester, Esq.**
**lhester@childslegalgroup.com**
**Childs Reeds, P.A.**
**2nd Floor**
**1551 Atlantic Blvd.**
**Jacksonville, FL  32207**
**Tel:  (904) 396-3007**
**Fax:  (904) 396-3047**
*Attorneys for Claimant Dena Ann Lightfoot*

**John H. Hickey, Esq.**
**hickey@hickeylawfirm.com**
**federalcourtfilings@hickeylawfirm.com**
**HICKEY LAW FIRM, P.A.**
**1401 Brickell Avenue, Suite 510**
**Miami, Florida 33131-3504**
**Tel:  (305) 371-8000**
**Fax:  (305) 371-8542**
*Attorneys for Claimant/Counter Claimant Emily Pusatere, as Personal Representative of the*
*Estate of Richard Pusatere, deceased; Valma A. Champa, as Personal Representative of the*
*Estate of Louis M. Champa, deceased and Claimant/Counter-Claimant, Jarvon Whigham*
*individually and as survivor and son of JACKIE ROBERT JONES, JR., deceased.*

**C. Arthur Rutter III, Esq.**
**brutter@ruttermills.com**
**RUTTER MILLS LLP**
**160 W. Brambleton Ave.**
**Norfolk, VA 23510**
**Tel:  (800) 515-3000**
**Fax: (757) 623-9189**
*Attorneys for Claimant/Counter Claimant Emily Pusatere, as Personal Representative of the*
*Estate of Richard Pusatere, deceased*

**Chester D. Hooper, Esq.**
[chester.hooper@hklaw.com](mailto:chester.hooper@hklaw.com)
**Holland & Knight, LLP**
**Suite 1200**
**10 St. James Avenue**
**Boston, MA  02116-3889**
**Telephone:  (617) 523-2700**
**Facsimile:  (617) 526-6850**
*Attorneys for Plaintiff &Counter Defendant Sea Star Line, LLC*
*and Plaintiff & Counter-Defendant Tote Services, Inc.*

**Cory D. Itkin, Esq**
[citkin@arnolditkin.com](mailto:citkin@arnolditkin.com)
**Jason A. Itkin, Esq.**
[jitkin@arnolditkin.com](mailto:jitkin@arnolditkin.com)
**Arnold & Itkin, LLP**
**Suite 2550**
**1401 McKinney Street**
**Houston, TX  77010**
**Tel:  (713) 222-3800**
**Fax:  (713) 222-3850**
**Attorneys for Claimants Tinisha Renee Thomas; Patrick John Smith; Terri Hargrove;**
**Mildred Cortes**

**Elizabeth P. Kagan, Esq.**
[Liz@kagan-law.com](mailto:Liz@kagan-law.com)
**Kagan Law Firm, PL**
**Suite 303**
**8191 College Parkway**
**Ft. Myers, FL  33919**
**Tel:  (239) 466-1161**
**Fax:  (239) 466-7226**
*Attorneys for Claimant Addreisha Shirlea Jones*

**Allan R. Kelley, Esq.**
[ark@fowler-white.com](mailto:ark@fowler-white.com)
**Fowler White Burnett, P.A.**
**14th Floor**
**1395 Brickell Avenue**
**Miami, FL  33131**
**Tel:  (305) 789-9200**
**Fax:  (305) 789-9201**
*Attorneys for Sea Star Line, LLC & Tote Services, Inc.*

**David T. Maloof, Esq.**
**dmaloof@maloofandbrowne.com**
**Thomas M. Eagan, Esq.**
**teagan@maloofandbrowne.com**
**MALOOF BROWNE & EAGAN LLC**
**411 Theodore Fremd Avenue, Suite 190**
**Rye, New York 10580**
**Tel: (914) 921-1200**
**Fax: (914) 921-1023**
*Attorneys for Claimants Great American Insurance Company and RLI Insurance Co.*

**Jason R. Margulies, Esquire**
**crewlawyer@aol.com**
**David Alexander Villareal, Esq.**
**dvillareal@lipcon.com**
**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
**One Biscayne Tower, Suite 1776**
**2 South Biscayne Boulevard**
**Miami, Florida 33131**
*Attorneys for Claimants/Third Party Plaintiffs Anna Krause, as Personal Representative of the Estate of Piotr Krause, deceased; Agnieszka Nita, as Personal Representative of the Estate of Marcin Nita, deceased; Malgorzata Podgorska, as Personal Representative of the Estate of Jan Podgorski, deceased; Bozena Truszkowska, as Personal Representative of the Estate of Andrzej Truszkowski, deceased; and Agnieszka Zdobych, as Personal Representative of the Estate of Rafal Zdobych, deceased, Claudia Aparecida Shultz, as Personal Representative of the estate of Steven Wink Shultz, deceased*

**David Weese Marston, Jr., Esq.**
**dmarston@morganlewis.com**
**Christopher Kimbrough Smith**
**cksmith@morganlewis.com**
**Morgan, Lewis & Bockius, LLP**
**Suite 5300**
**200 S. Biscayne Blvd.**
**Miami, FL  33131-2339**
**Tel:  (305) 415-3443**
*Attorneys for Claimant BMW of North America*

**Daniel W. Matlow, Esq.**
**dmatlow@danmatlow.com**
**Daniel W. Matlow, PA**
**4600 Sheridan Street, Suite 300**
**Hollywood, FL 33021**
**Tel:  (954) 842-2365**
**Fax: (954) 337-3101**
*Attorneys for Third Party Defendant Intec Maritime Offshore Service Corp. and Ship or Land Operations Agency, Inc.*

David L. Mazaroli, Esq.
dlm@mazarolilaw.com
Law Office of David L. Mazaroli
250 Park Avenue – 7th Floor
New York, NY  10177-0799
Tel:  (212) 267-8480
Fax:  (212) 732-7352
*Attorneys for Defendant Bemis Company, Inc., et al*

Jacob J. Munch, Esq.
sealaw@tampabay.rr.com
Munch & Munch, P.A.
Suite 325
600 S. Magnolia Avenue
Tampa, FL  33606
Tel:  (813) 254-1557
Fax:  (813) 254-5172
*Attorneys for Claimant Claudette Riley*

Judson H. Orrick, Esq.
Equels Law Firm
660 East Jefferson Street
Tallahassee, Florida 32301
Tel:  (850) 222-2900
Fax:  (850) 222-2933
*Attorneys for Claimant/Third Party Plaintiff Karen Schoenly, personally and as a survivor and Personal Representative of the Estate of Howard Schoenly, deceased*

Stephen J. Pajcic, III, Esq.
Thomas F. Slater, Esq.
Benjamin E. Richard, Esq.
Michael S. Pajcic, Esq.
PAJCIC & PAJCIC, P.A.
One Independent Drive, Suite 1900
Jacksonville, Florida 32202
Tel:  (904) 358-8881
Fax:  (904) 354-1180
*Attorneys for Claimants Tina Riehm, as Personal Representative of the Estate of Jeremie H. Riehm, deceased and Tracey Hatch, as Personal Representative of the Estate of Carey Hatch, deceased*

Joseph Frank Rich, Esq.
jrich@cozen.com
Cozen O'Connor
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4410
Miami, FL  33131
Tel:  (265) 665-7285
*Attorneys for Defendant Continental Insurance Co. et al*

Lawrence J. Roberts, Esq.
lroberts@lrobertsandassociates.com
Lawrence J. Roberts & Associates, P.A.
249 Catalonia Avenue
Coral Gables, FL  33134
Telephone:  (305) 441-7882
Facsmile:  (305) 441-7883
*Attorneys for Estes Express Lines*

Raymond John Rotella, Esq.
rrotella@kostoandrotella.com
Kosto & Rotella, PA
619 E Washington St
PO Box 113
Orlando, FL 32802-0113
Tel:  (407) 425-3456
Fax: (407) 423-5498
*Attorneys for Claimant EFOODS INC.*

Marc Alan Rubin, Esq.
Spector & Rubin, P.A.
Suite 405
3250 Mary Street
Miami, FL  33133-5232
Tel:  (305) 537-2000
Fax:  (305) 537-2001
*Claimant-Counter Claimant UPS Ground Freight*

Brett Douglas Sager, Esq.
bsager@hickeylawfirm.com
Hickey Law Firm, P.A.
1401 Brickell Avenue, Suite 510
Miami, FL  33131
Tel:  (305) 371-8000
Fax:  (305) 371-3542
*Attorneys for Claimant/Counter Claimant Emily Pusatere, as Personal Representative of the Estate of Richard Pusatere, deceased; Valma A. Champa, as Personal Representative of the Estate of Louis M. Champa, deceased and Claimant/Counter-Claimant, Jarvon Whigham individually and as survivor and son of JACKIE ROBERT JONES, JR., deceased.*

Lloyd Johnson Sarber III, Esq.
lsarber@marksgray.com
Marks Gray, PA
1200 Riverplace Blvd., Suite 800
Jacksonville, FL 32207
Tel: (904) 398-0900
Fax: (904) 399-8440
*Attorneys for Claimants SAIA Motor Freight Line, LLC*

**Brian T. Scarry, Esq.**
**bscarry@admiral-law.com**
**HORR NOVAK & SKIPP P.A.**
**Two Datran Center, Suite 1700**
**9130 S. Dadeland Blvd.**
**Miami, Florida 33156**
**Tel: (305) 670-2525**
**Fax: (305) 670-2526**
*Attorneys for Claimants Great American Insurance Company; RLI Insurance Company and ArcBest Corporation.*

**Matthew D. Shaffer, Esq.**
**mshaffer@smslegal.com**
**Schechter, McElwee, Shaffer & Harris, LLP**
**3rd Floor**
**3200 Travis Street**
**Houston, TX  77006**
**Tel:  (713) 524-3500**
**Fax:  (713) 751-0412**
*Attorneys for Claimants Cheryl Crawford-Glenn & Willa Crawford*

**Allen K. Von Spiegelfeld, Esq.**
**Banker Lopex Gassler (Tampa)**
**501 E. Kennedy Blvd., Suite 1500**
**Tampa, FL  33602-5241**
**Tel:  (813) 221-1500**
**Fax:  (813) 222-3066**
*Attorneys for Defendant Jennifer Mathias, as PR of the Estate of Jeffrey Mathias*

**Robert F. Spohrer, Esq.**
**rspohrer@sdlitigation.com**
**Spohrer & Dodd, PL**
**Suite 2**
**701 W Adams St.**
**Jacksonville, FL 32204**
**Tel:  (904) 309-6500**
**Fax:  (904) 309-6501**
*Attorneys for Claimant Jill Jackson-d'Entremont*

**G.J. Rod Sullivan, Jr., Esq.**
**rs@fml-law.com**
**Sullivan & Company**
**Suite 803**
**8777 San Jose Blvd.**
**Jacksonville, FL  32217**
**Tel:  (904) 355-6000**
**Fax:  (904) 737-0920**
**Attorneys for** *Claimants Cheryl Crawford-Glenn & Willa Crawford*

**Scott A. Wagner, Esq.**
swagner@moore-and-co.net
**Moore & Company**
**Suite 1100**
**355 Alhambra Circle**
**Coral Gables, FL  33134**
**Tel:  (786) 221-0600**
**Fax:  (786) 221-0601**
*Attorneys for Claimant Addreisha Shirlea Jones*

**Robert E. Warren, Esq.**
woodliefandrush@aol.com
**Law Office of Mitchel E. Woodlief**
**225 E. Church Street**
**Jacksonville, FL  32202**
**Tel (904) 353-7511**
*Attorneys for Intervenor Trivonda Porter*

**Joshua A. Woolsey, Esq.**
jwoolsey@rtlaw.com
**Rogers Towers, P.A.**
**Suite 1500**
**1301 Riverplace Blvd.**
**Jacksonville, FL  32207-9000**
**Tel:  (904) 398-3911**
**Fax:  (904) 396-0663**
*Attorneys for Counter Claimant Terri C. Davis*