UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

IN ADMIRALTY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of The Complaint                          :
                                                        :
                                                        :
                                                        :
        of                                              :
                                                        :   Case No. 3:15-cv-1297-HES-MCR
Sea Star Line, LLC, d/b/a TOTE Maritime                 :
Puerto Rico, as Owners; and TOTE Services,              :
Inc., as Owner *pro hac vice* of the S.S. EL            :
FARO for Exoneration from or Limitation of              :
Liability                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LIMITATION PLAINTIFFS' OPPOSITION TO CLAIMANTS'
MOTION FOR SUMMARY JUDGMENT ON SHIPOWNERS' COMPLAINT
FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

Plaintiffs, TOTE Maritime Puerto Rico, LLC. f/k/a Sea Star Line, LLC, and TOTE Services, Inc., ("Petitioners"), under Rule 56 of the Federal Rules of Civil Procedure, respectfully submit this response in opposition to Claimants' Tina Riehm, as Personal Representative of the Estate of Jeremie H. Riehm, deceased, and Tracey Hatch, as Personal Representative of the Estate of Carey Hatch, deceased ("Claimants"), Motion for Summary Judgment (ECF No. 64), and state:

**I.       Statement of Material Facts**

Claimants' Motion for Summary Judgment (ECF No. 64) was filed on December 14, 2015. This was 67 days before potential claimants are required to file their claims in the limitation proceeding on February 19, 2016, 127 days before the case management conference scheduled for April 19, 2016, and before discovery may begin. Even at this early stage of this basically factual proceeding, the existence of many questions of material fact is obvious. These questions cannot be decided until this Court decides them at trial.

The Motion for Summary Judgment attempts to avoid the many questions of material fact by relying on a "but for" standard of causation rather than a proximate cause standard. The Motion argues in essence that but for *El Faro* sailing from Jacksonville, Florida she would not have been lost. The Motion also argues that but for the course *El Faro's* master decided to take to avoid the most dangerous part of Hurricane Joaquin, *El Faro* would not have been lost.

Use of the proper proximate cause standard will require the Court to ask the very questions of material fact posed by Claimants: (1) Was the decision to sail from Jacksonville when *El Faro* sailed reasonable; (2) was the track (route) decided by the master reasonable; and (3) whether *El Faro* would have been lost in Hurricane Joaquin had the predicted track of Joaquin not changed to intercept *El Faro*?

Captain Richard DiNapoli, an expert in vessel navigation, explains that the decision to sail from Jacksonville on the evening of September 29, 2015, was reasonable, and the vessel was fit for her intended purpose when she departed. (Ex. "A," Capt. DiNapoli Aff. at ¶¶9, 15). The opinion of expert meteorologist, Austin Dooley, Ph.D., explains that the forecast for then Tropical Storm Joaquin when *El Faro* sailed would have kept the storm far away from *El Faro*. (Ex. "B," Dooley Decl.; *see also* Ex. "A," Capt. DiNapoli Aff. at ¶9). Dr. Dooley states the course chosen by *El Faro's* master would have kept the vessel a safe distance from the most dangerous predicted area of Joaquin during the voyage. (Ex. "B," Dooley Decl. at ¶¶11-13; *see also* Ex. "A," Capt. DiNapoli Aff. ¶¶11, 14). If those predictions are disputed, the disputes are of course questions of material fact. The National Hurricane Center only issued its report of Hurricane Joaquin a few days ago on January 12, 2016. (*See* Joaquin NHC Report, Jan. 12, 2016, http://www.nhc.noaa.gov/data/tcr/AL112015_Joaquin.pdf.). This report needs further study by Dr. Dooley. This report, in and of itself, may raise additional questions of material fact. Certainly, neither *El*

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

*Faro's* master nor her owners should have known more about Joaquin than the National Hurricane Center.

At this stage of the proceedings, before discovery has commenced, the cause of *El Faro's* loss is unknown and the subject of ongoing National Transportation Safety Board and U.S. Coast Guard investigations. There are multiple potential causes that could have potentially contributed to the loss. This fact alone warrants denial of Claimants' Motion. Arguments to the contrary, would emphasize the existence of a question of material fact.

## II.        Memorandum of Law & Analysis

### A.        Claimants' Motion for Summary Judgment should be denied because it is premature.

As aptly noted by the Supreme Court, "[s]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986). Indeed, a court should not consider a motion for summary judgment until there has been "adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also McCallum v. City of Athens,* 976 F.2d 649, 650 n.1 (11th Cir. 1992) (noting that a party may move for summary judgment only after exchanging "appropriate" discovery); *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (determining that "summary judgment may only be decided upon an adequate record").

Rule 56(d) of the Federal Rules of Civil Procedure provides that if the court accepts that the nonmovant "cannot present facts essential to justify its opposition, the court may:

    (1)    defer considering the motion or deny it;

    (2)    allow time to obtain affidavits or declarations or to take discovery; or

(3)     issue any other appropriate order."

Fed. R. Civ. P. 56(d); *see also Duldulao v. Sunshine Restaurant Merger Sub, LLC*, Case No. 8:11-cv-1412-T-33MAP, 2011 WL 6055954, at *2 (M.D. Fla. Dec. 6, 2011) (denying motion for summary judgment as premature because the nonmovant "has not had a meaningful opportunity to develop the facts through discovery"); *Blumel v. Mylander*, 919 F. Supp. 423, 428-29 (M.D. Fla. 1996) (denying motion for summary judgment filed "when discovery just began" and holding that "[o]nce it is convinced that discovery is inadequate, the district court should deny summary judgment.").[1]

Claimants cannot credibly argue no genuine issues of material fact exist. As demonstrated below, there are numerous material disputed facts that warrant the summary denial of Claimants' Motion. (*See* Ex. "A," Capt. DiNapoli Aff. and Ex. "B," Dooley Decl.). Nonetheless, discovery under the rules has not even commenced. The prescribed Rule 26(f) conference which must be held before the initiation of discovery has not taken place. The affiants Claimants rely upon have yet to be deposed and subject to cross-examination. Moreover, the February 19, 2016, deadline for all potential claimants to file claims has not even expired. Further, the Motion should be denied or deferred because it is indisputably premature and can be raised again at the completion of adequate discovery in line with the dictates of the Supreme Court.

---

[1]     When certain amendments to the Federal Rules of Civil Procedure took effect on December 1, 2010, Rule 56(f) was renumbered as Rule 56(d). Case law construing former Rule 56(f) applies with equal force to the current iteration of the rule. *Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 WL 1429646, at *5 n.1 (M.D. Fla. Apr. 14, 2011).

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

**B.      Summary judgment is not appropriate in this factual matter.**

Summary judgment is a drastic remedy and should be used infrequently. *See generally Brunswick Corp. v. Vineberg,* 370 F.2d 605, 612 (5th Cir. 1967).[2] In deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but to determine whether there are any such issues to be tried. *See Anderson,* 477 U.S. at 251. In making this determination, the court views the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Summary judgment may only be granted if there is insufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-52.

The question of liability in a limitation action is a question of fact for the factfinder. *See Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990). Besides the liability issues, whether the shipowner had privity or knowledge of the causative agent is a critical question. *See* 46 U.S.C. § 30505. The privity or knowledge of the owner turns on the facts of each particular case, and whether a shipowner was without privity or knowledge is a question of fact. *Coryell v. Phipps,* 317 U.S. 406, 411 (1943). Given this standard, courts recognize the difficulty in deciding limitation cases by summary judgment. *See Leak v. Phoenix Sailing Yacht Servs., Inc.*, 8:13-CV-3240-T-33TGW, 2014 WL 4373468, at *3 (M.D. Fla. 2014); *In re Williams Marine Const. & Servs., Inc.*, 350 F. Supp. 2d 975, 981 (M.D. Fla. 2004); *see also Valley Towing Serv., Inc. v. S/S Am. Wheat, Freighters, Inc.*, 618 F.2d 341, 346 (5th Cir. 1980) (stressing that in maritime actions questions of fault are factual issues).

---

[2]      In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

As analyzed below, summary judgment is not proper because multiple questions of fact exist as to whether there was any fault, and whether any such fault was within Petitioners' privity or knowledge.

**C.      Claimants have not carried their initial burden on summary judgment—Claimants have no admissible evidence showing Petitioners are liable.**

As a threshold issue, Claimants' Motion is fundamentally flawed. Claimants rely on inadmissible evidence to support their allegations, and in so doing, have failed to carry their burden. The Motion should be denied on this basis alone. Claimants' "expert" John Soutar's Affidavit (ECF No. 64-1) is inadmissible because Soutar is not qualified as an expert to testify on the matters stated therein. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 (1993) (noting that the court must determine whether an expert has "a reliable basis in the knowledge and the experience of [the relevant] discipline"). Mr. Soutar states he is an actuary and that he owns a trawler, but provides no further information from which the Court can conclude he is qualified to testify as an expert on meteorology or operations and navigation of roll on – roll off and container vessels of 31,515 gross tons such as *El Faro*. (ECF No. 64-1 at ¶¶3, 5); *see U.S. v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004) (maintaining that Rule 702's reliability requirement would be subsumed by the qualification prong if admissibility could be established merely by the *ipse dixit* of the expert).

Claimants other "expert," John Becker's Affidavit (ECF No. 64-2) is inadmissible for similar reasons. Although Becker is a master, there is nothing in his Affidavit that establishes how or why he is competent to render opinions on the cause of *El Faro's* loss and the duties and standard of care of shipowners. Accordingly, both Affidavits should be stricken.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

**D.     The governing limitation standard imposes the burden of proving fault on Claimants.**

The Limitation of Liability Act ("Limitation Act")[3] allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge. 46 U.S.C. §§ 30505, 30511(a). Courts employ a two-step analysis to determine whether the vessel owner may limit its liability. *See Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1230 (11th Cir. 1990); *Carr v. PMS Fishing Corp.*, 191 F.3d 1 (1st Cir. 1999). First, the court must determine whether there is fault on the shipowner's part which gives rise to liability of the shipowner for the claims of the claimant. *Id.* If fault is found, the court must then determine whether the shipowner had privity or knowledge of the causative agent. *Id.* The claimant bears the burden of proof on the issue that the owner was at fault. *Id.* If the claimant succeeds, the burden then shifts to the shipowner to show its lack of privity or knowledge. *Id.*

Privity or knowledge generally refers to the shipowner's personal participation in, or actual knowledge of, the specific improper acts that caused or contributed to the accident. *See Coryell,* 317 U.S. at 411. Only privity or knowledge of those conditions which proximately caused the accident will preclude limitation. *See, e.g., In re MO Barge Lines, Inc.*, 360 F.3d 885, 890-91 (8th Cir. 2004), *Carr*, 191 F.3d at 6; *Suzuki of Orange Park, Inc. v. Shubert,* 86 F.3d 1060, 1064 (11th Cir. 1996). An evaluation of what the petitioner knew is a fault-based inquiry. *Carr*, 191 F.3d at 4.

---

[3]     In 2005, Congress recodified portions of title 46, U.S. Code and section 30505 was previously numbered as § 183(a) of the Appendix to title 46. *In re Omega Protein, Inc.*, 548 F.3d 361, 371 (5th Cir. 2008). Congress' intent was to codify existing law rather than creating new law; therefore, pre-amendment cases applying former § 183(a) are treated as having full force of law. *Id.*

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

**E.      Genuine fact issues exist regarding each of the acts of negligence which Claimants allege.**

Claimants posit two points which they allege constitute negligence: (1) the pre-departure approval of the plan for *El Faro*'s voyage from Jacksonville to Puerto Rico, and (2) the asserted failure to revise that plan during the voyage. Neither provides a sound foundation for summary judgement.

Claimants also utilize a "but for" standard throughout their Motion, alleging that but for the act of the *El Faro* sailing, it would not have been lost. Under the general maritime law, however, "a party's negligence is actionable only if it is a 'legal cause' of the plaintiff's injuries." *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992) (citing *Chavez v. Noble Drilling Corp.,* 567 F.2d 287, 289 (5th Cir. 1978)). The standard requires more than "but for" causation—the negligence must be a substantial factor in the injury. *See id.* (citing *Thomas v. Express Boat Co.,* 759 F.2d 444, 448 (5th Cir. 1985)).

**1.      The decision to sail by the *El Faro's* master was reasonable, and any controverting by Claimants results in a question of fact.**

Before the vessel left port on the evening of September 29, 2015, then Tropical Storm Joaquin was forecast to head on a more northerly track. (Ex. "B," Dooley Decl. at ¶¶9, 10, 11). The planned voyage would take the vessel south, away from the tropical storm.[4] (Ex. "A," Capt. DiNapoli Aff.). *Clearly, Claimants' unfounded contention that a voyage into (or even near) the storm was planned is simply without merit*. The decision to sail from Jacksonville to Puerto Rico

---

[4]      As noted in Dr. Dooley's Affidavit, if the forecast had held, *El Faro* would have been "well outside the hurricane force winds of Joaquin" on the morning of October 1, 2015. (Ex. "B," Dooley Decl. at ¶¶11, 12, 13).

on September 29, 2015, was reasonable and the vessel was fit for its intended purpose.[5] (*Id.* at ¶9).

These facts distinguish the present matter from that of *Texas & Gulf S.S. Co. v. Parker*, 263 F. 864 (1920), referenced by Claimants. In *Parker*, a "small freight-carrying steamship" was dispatched into the Gulf of Mexico knowing a hurricane would enter the Gulf before the conclusion of the voyage. *Id.* at 865. The vessel in that case was—at the start of the voyage—incapable of outrunning the hurricane or handling the storm if it got caught. *Id.* at 867-68. After departure, the master had no reports available upon which to base estimates of probable course. *Id.* at 867. Essentially, the master attempted to outrun a hurricane in a vessel that was not capable of handling the conditions, with no indication about the hurricane's predicted course. This was negligence in light of the vessel's "limited size and resistance." *Id.* at 867-68.

In contrast, the *El Faro* was a roll on-roll off and container vessel of 31,515 gross tons. It departed Jacksonville when then Tropical Storm Joaquin was forecast to move in a direction so as to take it away from the vessel's proposed course. (Ex. "B," Dooley Decl.). Even after the storm intensified into a hurricane and changed its predicted path, the report from the master indicated the vessel would pass 65 miles from the storm's center. (Ex. "A," Capt. DiNapoli Aff. at ¶10). This is simply not a case where the master of a vessel attempted to outrun a hurricane.

Similarly, Claimants reliance on *DiMillo v. Sheepscot Pilots, Inc.*, 870 F.2d 746 (1st Cir. 1989), is misplaced. In *DiMillo*, the tug boat captain deliberately took barges into bad weather and dangerous sea conditions. *Id.* at 749 (noting that the master "cavalierly decided to brave forecasted conditions, thereby imperiling the flotilla"). Unlike the *El Faro's* master, the captain

---

[5]      To the extent Claimants suggest the vessel was unseaworthy (Mot. for Summ. J. at pp. 20-21, ECF No. 64), they fail to present any evidence. The evidence on the record is to the contrary. (Ex. "A," Capt. DiNapoli Aff. at ¶9).

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

in *DiMillo* "acted in response not to a sudden emergency but a predicted one, placing his convoy in readily foreseeable jeopardy, heedless of recognizable risks." *Id.* The court found that "[h]is recklessness was so alien to prudent seamanship that it exceeded the boundaries of proper discretion by a wide margin." *Id.* The same cannot be said here. Although the cause of the incident is not known, given the current understanding of events, the loss of propulsion during the voyage could have suddenly confronted the vessel with an unanticipated emergency, not of its own making and which was wholly unforeseeable and unpredictable. (Ex. "A," Capt. DiNapoli Aff. at ¶15).

In sum, the actions of *El Faro's* crew were reasonable. The captain and the crew had an adequate and reasonable plan. (Ex. "A," Capt. DiNapoli Aff.). Under such tragic and unforeseen circumstances which confronted the vessel, exoneration from liability[6] is appropriate and warranted. *Petition of Karina T. Corp.*, 1966 A.M.C. 1543 (D.N.J. 1962), *aff.'d*, 354 F.2d 239 (3d Cir. 1966).

### 2. Petitioners lack any privity or knowledge; an allegation to the contrary results in a question of fact.

Responding to the changing forecasts is a red herring. It presently seems that losing propulsion meant the vessel could no longer maneuver along its proposed route—it could no longer change course or otherwise take advantage of information provided by the changing forecast. Most importantly though, the vessel lost its ability to maintain headway and keep from becoming beam-to (sideways) in the seas. (Ex. "A," Capt. DiNapoli Aff. at ¶15). Thus, the foundation of Claimants' argument fails to provide the support needed for a summary disposition

---

[6]     "Joaquin is the strongest October hurricane known to have affected the Bahamas since 1866 and the strongest Atlantic hurricane of non-tropical origin in the satellite era." Joaquin National Hurricane Center Report, January 12, 2016, http://www.nhc.noaa.gov/data/tcr/AL112015_Joaquin.pdf.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

at this preliminary stage. *See generally Petition of Karina T. Corp.*, 1966 A.M.C. at 1544 (noting that "[i]n any given instance, a situation of a full-blown hurricane would significantly increase the probability of non-negligence and seaworthiness. Conversely, petitioner would be confronted with a most onerous burden should a ship be lost during a period of relative calm, with no other explanation.").

Moreover, an owner's privity or knowledge is not a function of the actions of the captain at sea. *See Waterman S. S. Corp. v. Gay Cottons*, 414 F.2d 724, 730 & n.16, 734-35 (9th Cir. 1969) ("we have found no case which has attributed the negligence of the master to the corporate owner"); *Tittle v. Aldacosta,* 544 F.2d 752, 756 (5th Cir. 1977) ("the errors in navigation or other negligence by the master or crew are not attributable to [the owner] on respondeat superior for limitation purposes"). The unauthenticated and completely out of context statements of Petitioners' employees at a news conference submitted by Claimants (ECF No. 64-3) does not change this calculus. *See* Fed. R. Evid. 901. After the voyage has begun, errors in navigation or other fault by the master or crew are not attributable to the vessel owner for limitation purposes. *See In re Omega Protein, Inc.*, 548 F.3d at 372 (stating that "mere 'mistakes of navigation' by an otherwise competent crew do not bar limitation of liability."); *see generally In re Anderson*, 2013 A.M.C. 1369 (W.D. Wash. 2012) (noting that conditions which arise post-departure, *e.g.*, changing weather, do not affect limitation absent circumstances not raised here). It is well established that under the Limitation Act, a shipowner is entitled to the protections of the Act when it relies upon the navigational competence of a skilled master and lacks actual knowledge of the cause of the accident. *See Petition of Kristie Leigh Enters., Inc.*, 72 F.3d 479, 482 (5th Cir. 1996) (holding that errors in navigation or other fault by the master or crew are not attributable to the shipowner for limitation); *see also Matheny v. Tennessee Valley Auth.*, 557 F.3d 311, 316

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

(6th Cir. 2009) (holding that "it is well-settled that under the Limitation of Liability Act, 'an owner may rely on the navigational expertise of a competent ship's master'"); *see generally In re Am. Milling Co., Ltd.* 409 F.3d 1005, 1019 (8th Cir. 2005) ("[S]pontaneous or momentary errors by competent pilots cannot be imputed to owners."). In circumstances where the owner lacks actual contemporaneous knowledge of a navigational error and the vessel is being piloted by a competent master, Petitioners are unaware of any decision interpreting the Limitation Act to require a separate inquiry into whether the owner potentially could have exerted "control" over the ship and denying limitation on that basis. *See Continental Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1377 n.15 (5th Cir. 1983) (recognizing that "no court has previously denied a corporate shipowner limitation of liability for a master's navigational errors at sea when the owner has exercised reasonable care in selecting the master"); *U.S. v. Sandra & Dennis Fishing Corp.*, 372 F.2d 189, 191 (1st Cir. 1967) (holding that the impropriety of the captain's conduct in navigating the vessel did not prevent limitation—"[i]t is against this very liability that the right to limit exists"). As such, navigational errors do not justify denying limitation and specific direction to a competent master is not required.

Although a master's navigational errors at sea are not attributable to the owner, Claimants have nonetheless failed to present admissible evidence establishing *prima facie* that the injury was proximately caused by any breach of Petitioners' respective legal duties regarding the weather conditions, let alone privity or knowledge of this purported causative agent. This, of course, assumes Petitioners' owed a duty to monitor weather forecast in the first instance which Petitioners dispute. Claimants have not even produced any expert testimony that identifies any of Petitioners' actions and/or omissions which were a breach of any duty owed and which violated a standard of care. *See Briggs v. Washington Metro. Area Transit Auth.,* 481 F.3d 839, 845 (D.C.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Cir. 2007) (holding that "a plaintiff must put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson"); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 50 (2d Cir. 2004) ("Absent admissible expert testimony on the issue of causation, [a plaintiff is] unable to sustain her burden to prove causation."); *Holesapple v. Barrett*, 5 Fed. Appx. 177, 180 (4th Cir. 2001) (holding that passenger's testimony was insufficient to establish a standard of care against which to measure conduct of owner of power boat in which passenger was injured for purposes of negligence action in admiralty); *see also Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*, 185 F. Supp. 2d 1103, 1114 (C.D. Cal. 2001) ("Experts may testify regarding industry standards where the average lay person has little or no knowledge regarding those industry standards."); *Wiggins v. Belk, Inc.*, 4:11-CV-88, 2012 WL 135595, at *6 (S.D. Ga. 2012) (accord). Regardless, during the voyage to Puerto Rico, the *El Faro's* master was observing the weather conditions and was adjusting the vessel's track to avoid Joaquin. (Ex. "A," Capt. DiNapoli Aff. at ¶¶ 10, 14).

Claimants' latter theory is that modern communications establish a ready foundation for privity or knowledge. But in *Gay Cottons*, 414 F.2d 724, the court rejected a call by the claimant in that case to rely on more modern means of communication as a foundation to find privity or knowledge. There the court explained,

> Although modern communication and transportation facilities make all acts performed in any foreign port within the potential control of the shipowner, we believe that an extension of the requirement of privity or knowledge to cover all such acts should only come from Congress.

*Gay Cottons*, 414 F.2d at 734-735.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

In sum, there is no evidence to justify imputing knowledge to Petitioners about the specific conditions that led to the unfortunate sinking of *El Faro*. At this stage, before discovery has commenced, the cause of *El Faro's* loss is unknown and the subject of ongoing NTSB and USCG investigations. There are, however, multiple potential causes that could have caused or contributed to the loss, including but not limited to (for example and given the current understanding of events) the loss of propulsion. (Ex. "A," Capt. DiNapoli Aff. at ¶15). This fact alone warrants denial of Claimants' Motion. Arguments to the contrary, would emphasize the existence of a question of material fact.

**E.     The single claimant rule is inapplicable.**

Claimants raise the application of the Single Claimant Rule as a basis for summary disposition, but they omit key aspects of the Rule and have not provided the appropriate stipulations required to invoke the Rule. As explained below, in order to invoke the Rule, *all* claimants must reach an accord regarding the priority of claims, agree not to seek enforcement of a judgment before the issues of limitation are resolved, and agree to resolve all issues of limitation in this Court.

The Supreme Court established two situations in which the factors justifying a limitation proceeding are absent. *See, e.g., Langnes v. Green*, 282 U.S. 531 (1931); *see also In Re Muer*, 146 F.3d 410, 417 (6th Cir. 1998). The first situation is where the value of the limitation fund exceeds the total value of the claims; and the second is where only one claim is asserted against the owner. *In Re Muer*, 146 F.3d at 417 (citing *Odeco Oil and Gas Co. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996) and *Lake Tankers Corp. v. Henn*, 354 U.S. 147 (1957)). This is commonly known as the "Single Claimant Rule."

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

To take advantage of the Rule, Claimants must present and file sufficient stipulations for the protection of the shipowner. *See In Re Muer*, 146 F.3d at 418; *see also Beiswenger Enters., Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996); *Universal Towing Co. v. Barrale*, 595 F.2d 414, 420 (8th Cir. 1979).

Here, there has been no such stipulation. The two claimants who bring this Motion have not agreed, nor have any of the other claimants and potential claimants. Thus, there is no foundation for application of the "Single Claimant Rule."

### 1.    Claimants must prove fault and not just presume it exists.

The Supreme Court's mandate to district courts, articulated in *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438 (2001), is to reconcile a claimant's right to his remedy under the savings to suitors clause[7] with a petitioner's right to seek limited liability under the Limitation Act. The approach taken by the courts is to condition an injured party's right to invoke the savings to suitors clause, and sue in a common law court, upon the giving of stipulations that preserve a shipowner's right to limit any resulting liability in a federal admiralty court under the Limitation Act.

Putting the cart before the horse, Claimants use the case of *Lewis v. Lewis & Clark Marine, Inc.,* as the foundation to suggest there is no need for a limitation action because Petitioners cannot prove a lack of privity or knowledge. The protections afforded to the shipowner via the Limitation Act were secured by the stipulations of the claimant in that case, and on that basis, the order precluding actions outside of the limitation action in *Lewis* was dissolved. *Id.* at 451-452. Again, there are no such stipulations in the case at hand.

---

[7]    The Court has deferred ruling on the Claimants' respective motions to remand to state court pending resolution of this limitation action. (*See, e.g.*, *Hatch v. Sea Star Line, LLC, et al.*, No. 15-cv-01317, ECF No. 12 (M.D. Fla. Jan. 7, 2016); *Riehm v. Sea Star Line, LLC et al.*, No. 15-cv-01296, ECF No. 13 (M.D. Fla. Jan. 7, 2016)).

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Claimants also look for support in the case of *Fecht v. Makowski*, 406 F.2d 721 (5th Cir. 1969). In *Fecht*, which involved multiple claims to an inadequate limitation fund, the former Fifth Circuit held claimants must be allowed to litigate the vessel owner's negligence in state court "where it is apparent that limitation cannot be granted." *Id.* at 722. *Fecht* involved an accident in which one passenger was killed and another seriously injured when a pleasure boat struck a submerged object. The boat's owner, who was operating the boat during the accident, filed for limitation in federal district court. The owner conceded limitation was impossible because "when an owner is in control of and operating his pleasure craft he has privity or knowledge with respect to its operation." *Id.* at 722.

The Eleventh Circuit has criticized the *Fecht* decision and held that its "precatory statement is hardly a legal principle," and explained that "[t]he owner's presence is not necessarily fatal to his right to limit if the evidence suggests that his conduct was in all respects prudent." *Petition of M/V Sunshine, II*, 808 F.2d 762, 765 (11th Cir. 1987) (*quoting* Gilmore and Black, The Law of Admiralty, §§ 10-23 & n.93). The "common sense recognition" that an owner controlling the vessel at the time of the accident will have privity or knowledge "is not an ineluctable doctrine to be applied at the pleading stage, on conclusory and disputed allegations, as a substitute for the knowledge necessary to lead a court to rational decision." *Id.*

The Sixth Circuit has similarly criticized *Fecht.* In *In Re Muer,* 146 F.3d 410, the court quoted with approval the above-referenced language of *Sunshine II* and explained that,

> The strength of *Fecht's* authority is also undermined by the fact that the Fifth Circuit based its decision in *Fecht* on the fact that the limitation of the owner's liability would not have been possible under any circumstances because the vessel owner had stipulated prior to trial that the complaint, insofar as it sought a limitation of liability, was withdrawn and that the vessel owner was seeking only exoneration. In that sense, *Fecht's* statements that an owner at the helm cannot limit liability do not carry the authority urged ....

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

*Id.* at 416 n.2 (internal citations omitted).

Claimants also reference *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060 (11th Cir. 1996). There the district court noted, "if it is truly impossible under any set of circumstances for [the petitioner] to establish its lack of privity or knowledge, then the limitation action should be dismissed, and the [claimants] should be allowed to try liability and damages issues in state court." *Id.* at 1064. But the Eleventh Circuit reversed the district court's dismissal of the limitation action explaining the determination was premature,

> We do not believe that the district court's disposition of this case adequately protects [the petitioner's] rights under the Limitation Act. It is true that [the petitioner] necessarily possesses privity and knowledge with respect to all of the acts of Blount [(the petitioner's president)]. If [the petitioner] could be held vicariously liable only through Blount, then no doubt limited liability would be impossible. At this stage of the proceedings, however, we are reluctant to assume that [the petitioner] can be held vicariously liable only through Blount.

*Id.* at 1065. Here, there has been no discovery, depositions, or exchange of documents and materials. In *Suzuki*, where the factual record was found insufficient, at least a deposition had been taken. *Suzuki*, 86 F.3d at 1065-66. In short, any reliance on *Suzuki* is misplaced.

Petitioners are entitled to an opportunity to present facts to demonstrate that their "conduct was in all respects prudent," *Sunshine II,* 808 F.2d at 765, and that they had no knowledge or privity of any causative acts.

**F.     Limitation of liability is an important theme of admiralty law.**

Claimants suggest the Limitation Act is anachronistic and question its continued usefulness. (Mot. for Summ. J. at p. 2, ECF No. 64). The Limitation Act was enacted in part to promote U.S. maritime commerce and is a hallmark of federal maritime legislation. The Limitation Act cannot simply be brushed aside because Claimants believe it is bad policy. *American Dredging Co. v.*

17

*Miller*, 510 U.S. 443, 455-56 (1994) (acknowledging maritime law is a form of federal common law, and accordingly, should reflect federal policies and be consonant with the laws of Congress); *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 207 (1994) (noting maritime law looks to Congress for policy guidance). The courts usually recognize the wisdom of entrusting to the legislature rather than to the judiciary fundamental changes in maritime law. *See, e.g., Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 272-73 (1979); *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 285-86 (1952); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 36 (1990).

### III.    Conclusion

For the foregoing reasons, Petitioners respectfully request the Court deny Claimants' Motion for Summary Judgment.

Respectfully Submitted,

*/s/ Jerry D. Hamilton*

| | |
|---|---|
| **JERRY D. HAMILTON**<br>Florida Bar No. 970700<br>jhamilton@hamiltonmillerlaw.com<br>**ROBERT B. BIRTHISEL**<br>Florida Bar Number: 906654<br>rbirthisel@hamiltonmillerlaw.com<br>**WILLIAM F. CLAIR**<br>Florida Bar Number: 693741<br>wclair@hamiltonmillerlaw.com<br>**JULES V. MASSEE**<br>Florida Bar Number: 0041554<br>jmassee@hamiltonmillerlaw.com<br><br>HAMILTON, MILLER & BIRTHISEL, LLP<br>150 Southeast Second Avenue, Suite 1200<br>Miami, Florida 33131<br>Telephone: 305-379-3686<br>Facsimile:  305-379-3690 | **GEORGE D. GABEL, JR.**<br>Florida Bar No. 27220<br>George.gabel@hklaw.com<br>**SUZANNE JUDAS**<br>Florida Bar No. 862037<br>Suzanne.judas@hklaw.com<br>**TIMOTHY J. CONNER**<br>Florida Bar No. 0767580<br>Timothy.conner@hklaw.com<br><br>HOLLAND & KNIGHT, LLP<br>50 North Laura Street, Suite 3900<br>Jacksonville, Florida 32202<br>Telephone: (904) 353-2000<br>Facsimile: (904) 358-1872<br><br>**Of Counsel**<br>**CHESTER D. HOOPER**<br>(BBO #625025)<br>Chester.hopper@hklaw.com |

| *Attorneys for Tote Maritime Puerto Rico, LLC., f/k/a Sea Star, LLC, and Tote Services, Inc.* | **MICHEAL A. DELULIS**<br>(BBO#691495)<br>Micheal.deiulis@hklaw.com<br><br>HOLLAND & KNIGHT, LLP<br>10 St. James Avenue<br>Boston, MA 02116<br>Telephone: (617) 523-2700<br>Facsimile: (617) 526-6850<br>**VINCENT J. FOLEY**<br>New York Bar 2805117<br>Vincent.foley@hklaw.com<br><br>HOLLAND & KNIGHT, LLP<br>31 West 52 Street<br>New York, NY 1019 |
|---|---|

## CERTIFICATE OF SERVICE

I  HEREBY  CERTIFY  that on January 25, 2016, I electronically filed the foregoing with the Clerk of the Courts by using the CM/ECF system.

/s/ Jerry D. Hamilton
Jerry D. Hamilton, Esq.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690