UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

IN ADMIRALTY

| | |
|---|---|
| In the Matter of The Complaint<br><br>of<br><br>Sea Star Line, LLC, d/b/a TOTE Maritime Puerto Rico, as Owners; and TOTE Services, Inc., as Owner *pro hac vice* of the S.S. EL FARO for Exoneration from or Limitation of Liability | Case No. 3:15-cv-1297-HES-MCR |

**PETITIONERS' RESPONSE IN OPPOSITION TO "CLAIMANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF UNSEAWORTHINESS"**

Petitioners, Tote Maritime Puerto Rico, LLC f/k/a Sea Star Line, LLC, and TOTE Services, Inc., (collectively referred herein as "Petitioners"), by and through undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure and Local Rules, file their Response in Opposition to "Claimants' Motion for Partial Summary Judgment on the Issue of Unseaworthiness" ("Motion for Partial Summary Judgment")[1], and in support, state as follows:

## Introduction

The sinking of a vessel does not ipso facto render that vessel and its appurtenances unseaworthy. The undisputed facts in this case show that, at the start of the S.S. EL FARO's subject voyage, the vessel was reasonably fit in all respects for its intended purpose. As discussed below, the standard of seaworthiness is not one of perfection, and it does not require a

[1] "Claimants" refer to TINISHA RENEE THOMAS, individually, as personal representative for THE ESTATE OF ANTHONY SHAWN THOMAS and on behalf of all heirs (including SHAWN QUARTERMAN, ANTOINETTE THOMAS, SHAWNETRIA THOMAS, SILAS THOMAS and A.T. (MINOR CHILD)); MILDRED SOLAR-CORTES, individually and personal representative for THE ESTATE OF GERMAN SOLAR-CORTES, and on behalf of all heirs (including GERALD SOLAR); TERRI HARGROVE, individually and as personal representative for THE ESTATE OF JOE HARGROVE; and PATRICK JOHN SMITH (collectively "Claimants"). (Doc. 323 at p. 1, fn. 1.)

vessel to be able to weather every conceivable storm or withstand every imaginable peril of the sea.

Hurricane Joaquin was the strongest October hurricane known to have affected the Bahamas since 1866. It was also the strongest Atlantic hurricane of non-tropical origin. Its formation, center and unexpected turn to the southeastern and central Bahamas made it an uncommon and unexpected phenomena at sea. Any breakdown or malfunction by the S.S. EL FARO or its appurtenances on October 1, 2015 must be analyzed within the context of Hurricane Joaquin, a peril of the sea, and not under normal use standards as Claimants would like this Court to do. The tragic sinking of the S.S. EL FARO must also be analyzed within the context of Hurricane Joaquin.

Until the parties complete discovery, Petitioners submit that this Court is unable to undertake the fact-specific analysis regarding the seaworthiness of the S.S. EL FARO. Accordingly, Claimants Motion for Partial Summary Judgment is improper, premature and must be denied.

**Statement of Undisputed Material Facts[2]**

1. Petitioners allege that, prior to the voyage the S.S. EL FARO commenced on September 29, 2015, they exercised due diligence to make the S.S. EL FARO seaworthy in all respects and to equip and supply the S.S. EL FARO with suitable engines, machinery, apparel, appliances, personnel, and other appropriate and necessary equipment, all in good order and condition and suitable for their intended operations. (*Verified Complaint* Doc. 1 at ¶¶ 7-8.)

2. As of September 29, 2015, the American Bureau of Shipping ("ABS") and the United States Coast Guard ("USCG") certified the adequacy of the S.S. EL FARO's structure,

[2] In their Motion for Partial Summary Judgment, Claimants do not include a numbered statement of undisputed material facts. Instead, they have a "Facts" section commingled with alleged record facts and argument. In an abundance of caution, Petitioners deny any and all of Claimants' alleged undisputed material facts.

machinery, safety outfit, etc. (*Affidavit of Captain Richard Dinapoli* Doc. 158-1 at ¶ 9.) Based upon the USCG-issued Certificate of Inspection, ABS' confirmation of Classification status and the ABS Safety Management Certificate, the S.S. EL FARO was in all ways fit for its intended purpose. *Id*. at ¶¶ 6 and 9.

3. Before the S.S. EL FARO left port on the evening of September 29, 2015, then Tropical Storm Joaquin was forecast to head on a more northerly track. (*Declaration of Austin L. Dooley, Ph.D.* Doc. 158-2 at ¶¶ 9-11.)

4. The S.S. EL FARO's planned voyage would take the vessel south, away from the tropical storm. (Doc. 158-1.) Had the forecast issued by the National Hurricane Center's ("NHC") Advisory Number 8 held, the S.S. EL FARO would have sailed well outside Joaquin's high wind speed zone on a passage to San Juan. (Doc. 158-2.)

5. NHC Advisory Number 11 maintained Joaquin's pronounced recurve to the north-northwest on the morning of October 1, 2015. (Doc. 158-1 at ¶ 11.)

6. On October 1, 2015, the Captain of the S.S. EL FARO reported that the vessel "was experiencing a list and had lost propulsion." (Doc.1 at ¶ 9.)[3] It was shortly thereafter that the S.S. EL FARO was enveloped in Hurricane Joaquin and transmitted its emergency messages to the USCG. (Doc. 1 at ¶ 9.)[4]

---

[3] In their "Facts" section, Claimants state that the S.S. EL FARO "lost all power." (Doc. 323 at p. 2.) Petitioners dispute and deny this representation as the Captain reported a loss of propulsion only and not a loss of all power.

[4] In their Motion for Partial Summary Judgment, Claimants state that "[i]t is undisputed that the vessel lost propulsion due to an engineering problem and became disabled (i.e., dead in the water)." (Doc. 323 at p. 4.) Claimants fail to provide the Court with the entire question and answer colloquy from this media conference which puts the statements into context. This colloquy occurred days after the S.S. EL FARO went missing and immediately after the United States Coast Guard concluded that the vessel had sunk. The question and answer colloquy was as follows:

REPORTER: Did the captain explain to you or to someone why they lost the propulsion? Did he have -- in his communication, did he explain what happened?

SPEAKER 2: No, ma'am, he did not. The captain did not explain in his communication why he had lost propulsion. He merely indicated that he had had a navigational incident, that, as I said before, the ship had about a 15 degree list, and he couldn't tell if all that was from the wind conditions or how much of it was from the environmental conditions, versus the free communication that had caused water to enter into the No. 3 hold. So he did not say why

## Memorandum of Law

### A. Summary Judgment is not appropriate for the type of fact-specific analysis required in this case and without discovery into causation

Summary judgment is a drastic remedy and should be used infrequently. *See generally Brunswick Corp. v. Vineberg,* 370 F.2d 605, 612 (5th Cir. 1967).[5] In deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but to determine whether there are any such issues to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 n.5 (1986). In making this determination, the court views the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment may only be granted if there is insufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-52.

The specific issue of unseaworthiness is one of fact and is submitted to the jury (or factfinder). *Luckenbach v. McCahan Sugar Co.*, 248 U.S. 139, 145, 39 S.Ct. 53, 63 L.Ed. 170 (1942); *PPG Indus., Inc. v. Ashland Oil Co.-Thomas Petroleum Transit Div.*, 592 F.2d 138, 146 (3d Cir. 1978)("Seaworthiness is a relative term which looks to such matters as the type of vessel, character of the voyage, reasonably expectable weather, and navigational conditions."); *Gibbs v. Kiesel*, 382 F.2d 917, 919 (5th Cir. 1967)("Seaworthiness is a relative concept, depending in each instance on the particular circumstances.")[6].

---

the vessel became disabled in terms of the engineering problem for the propulsion system.

[5] In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[6] These Claimants are seeking recovery for wrongful death damages and not cargo damage, which is governed by different rules of law, both statutory and judicial, and contractual undertakings that are quite distinct from those relating to the death claims, including a different burden shifting framework to adjudicate liability for cargo claims. For example, the carrier may be exonerated from liability for cargo loss as a result of a peril of the sea, error in the navigation or management of the vessel and the exercise of due diligence to make the vessel seaworthy. *See*, 46 U.S.C. §30706(a) and (b). The pending Motion for Partial Summary Judgment does not address any of these distinctions and, therefore, any affiliation to the cargo claims should not be considered at this time.

In this case, there remain a number of issues to be tried, including why the S.S. EL FARO lost propulsion, was listing 15 degrees and sank in the manner it did. At this stage in the litigation, there is more than sufficient evidence for a factfinder to return a verdict for Petitioners based upon the encountered perils of the seas, i.e., the unexpected path and formation of Hurricane Joaquin. Thus, granting a partial summary judgment in favor of Claimants on the issue of unseaworthiness is simply not warranted.

Furthermore and as aptly noted by the Supreme Court,"[s]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). Indeed, a court should not consider a motion for summary judgment until there has been "adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also McCallum v. City of Athens*, 976 F.2d 649, 650 n.1 (11th Cir. 1992) (noting that a party may move for summary judgment only after exchanging "appropriate" discovery); *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (determining that "summary judgment may only be decided upon an adequate record").

Rule 56(d) of the Federal Rules of Civil Procedure provides that if the court accepts that the nonmovant cannot present facts essential to justify its opposition, the court may:

> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d); *see also Duldulao v. Sunshine Restaurant Merger Sub, LLC*, Case No. 8:11-cv-1412-T-33MAP, 2011 WL 6055954, at *2 (M.D. Fla. Dec. 6, 2011) (denying motion for summary judgment as premature because the nonmovant "has not had a meaningful opportunity to develop the facts through discovery"); *Blumel v. Mylander*, 919 F. Supp. 423, 428-29 (M.D.

Fla. 1996) (denying motion for summary judgment filed "when discovery just began" and holding that "[o]nce it is convinced that discovery is inadequate, the district court should deny summary judgment.").[7]

Despite very comprehensive and onerous investigations conducted to date by the USCG and the National Transportation Safety Board ("NTSB"), the exact cause (or causes) of the S.S. EL FARO's sinking has not been identified. It is clear that discovery into this pivotal issue will be needed by the parties in this action. However, completion of this discovery has not yet begun and will likely take substantial time to complete, especially in view of the current prohibition on discovery by the NTSB. *See*, Doc. 309-1.

For all these reasons and as further analyzed below, partial summary judgment on the issue of unseaworthiness is not proper.

**B. The record evidence shows that Petitioners furnished a vessel and appurtenances reasonably fit for their intended use**

Claimants' argument that the S.S. EL FARO was unseaworthy simply because the vessel lost propulsion and sank during Hurricane Joaquin is fundamentally flawed. The principles of seaworthiness, principles that have been articulated by the Supreme Court and followed by the Eleventh Circuit, do not require a standard of perfection and much less an accident-free vessel:

> The warranty of seaworthiness is, as the appellant contends, an absolute duty, but **it does not obligate the owner to furnish an accident-free vessel**. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941, 948-49 (1960). **The question is one of reasonable fitness for the intended use of the vessel and her appliances**. *Id.*, 362 U.S. at 550, 80 S.Ct. at 933, 4 L.Ed.2d at 948-49; *Little v. Green*, 428 F.2d 1061, 1065 (5th Cir. 1970), cert. denied, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970).

*Johnson v. Bryant*, 671 F.2d 1276, 1279 (11th Cir. 1982)(emphasis added).

[7] When certain amendments to the Federal Rules of Civil Procedure took effect on December 1, 2010, Rule 56(f) was renumbered as Rule 56(d). Case law construing former Rule 56(f) applies with equal force to the current iteration of the rule. *Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 WL 1429646, at *5 n.1 (M.D. Fla. Apr. 14, 2011).

**The standard does not require a ship to "weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service."** *Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 815 (2d Cir. 1970)(citing *Mitchell*)(emphasis added); *see also Boudoin v. Lykes Bros. S. S. Co.*, 348 U.S. 336, 339 (1955) *amended sub nom. Boudoin v. Lykes Bros. Steamship Co., Inc.*, 350 U.S. 811 (1955)("**The warranty of seaworthiness does not mean that the ship can weather all storms.** It merely means that 'the vessel is reasonably fit to carry the cargo'.")(citations omitted)(emphasis added).

As noted above, as of September 29, 2015, the USCG and ABS, the vessel's regulating authority and classification society, certified the adequacy of the S.S. EL FARO in all respects, including its machinery. There is no record evidence to suggest that the S.S. EL FARO was not reasonably suitable for her intended voyage from Jacksonville to Puerto Rico. The tragic reality that the S.S. EL FARO was unable to weather Hurricane Joaquin does not ipso facto mean that the S.S. EL FARO was unseaworthy as a matter of law. If granted, the Claimants requested relief would impose upon vessel owners a duty that is simply not required under the warranty of seaworthiness.

Additionally, the Claimants assert that granting their Motion for Partial Summary Judgment will streamline this proceeding because "Petitioners simply will have to prove that they lacked 'privity or knowledge' of the unseaworthy condition that led to the casualty." (Doc. 323 at p. 5.) They completely ignore the fact that reasonably fit equipment can breakdown or malfunction in heavy weather, such as Hurricane Joaquin, and this does not render the vessel or its appurtenances unseaworthy. *See, Oliveras v. Am. Exp. Isbrandtsen Lines, Inc.*, 431 F.2d 814, 815 (2d Cir. 1970)("[I]n extraordinary or unforeseeable circumstances a ship's equipment or

fittings may break or malfunction without necessarily rendering the vessel or the appurtenances unreasonably 'fit for their intended use.'"). As seen herein, the undisputed facts do not warrant a finding of unseaworthiness as a matter of law. To the contrary, Claimants must meet their burden of proof. They must show that the S.S. EL FARO and its appurtenances at the start of the subject voyage were defective or not reasonably suitable for their intended purposes, notwithstanding the USCG and ABS certificates attesting to the S.S. EL FARO's reasonably fit condition.

Claimants acknowledge that granting the relief they seek and having the Court summarily dispose of this issue and required analysis will "relieve Claimants … of carrying their initial burden of proving liability." (Doc. 323 at p. 6.) This in no way warrants the granting of partial summary judgment on the issue of unseaworthiness. For these reasons and the reasons below, Petitioners submit that Claimants Motion for Partial Summary Judgment must be denied.

**C. An inference of unseaworthiness only applies where a vessel's equipment breaks down or malfunctions under normal use and not when encountering perils of the sea**

Claimants appear to be relying on the inference of unseaworthiness which only applies "if a ship's equipment **breaks down under normal use**." *Villers Seafood Co., Inc. v. Vest*, 813 F.2d 339, 342 (1987)(emphasis added). However, this rebuttable inference will only arise "[w]here a vessel is lost at sea for unknown causes and there is no 'peril of the sea' or any evidence of a 'latent defect' or any other 'act of God[.]" *Acker v. Ratteree*, 1990 A.M.C. 410 (S.D. Fla. 1989); *see also The Steamship Barcelona*, 1968 A.M.C. 331 (S.D.Fla.1968)("Where a vessel is lost at sea for unknown causes and there is no 'peril of the sea' or any evidence of a 'latent defect' or any other 'act of God,' an inference arises that the vessel was unseaworthy.").

Although the exact cause or causes for the S.S. EL FARO's ultimate sinking remain unknown, the current record before this Court makes clear that a peril of the sea was involved.

This alone negates the application of any inference of unseaworthiness. This alone also warrants denial of the Claimants Motion for Partial Summary Judgment.

Claimants further ignore that before any such inference against the vessel owner can be applied, courts must look at the type of vessel involved in the casualty, the specific nature of the subject voyage, any "reasonably expected weather, and navigational conditions." *PPG Indus., Inc. v. Ashland Oil Co.-Thomas Petroleum Transit Div.*, 592 F.2d 138, 146 (3d Cir. 1978)("Seaworthiness is a relative term which looks to such matters as the type of vessel, character of the voyage, reasonably expectable weather, and navigational conditions."); *Gibbs v. Kiesel*, 382 F.2d 917, 919 (5th Cir. 1967)("Seaworthiness is a relative concept, depending in each instance on the particular circumstances.").

The undisputed facts before this Court include a voyage that did not contemplate passing through any hurricane force winds. To the contrary, at the start of the voyage, then Tropical Storm Joaquin was forecast to head on a more northerly track, and NHC Advisory 8's forecast "was for tropical storm force winds to reach the central Bahamas Islands by the morning of October 1." (Doc. 158-1 at ¶ 8.)[8] The undisputed facts also show that NHC Advisory 11 upgraded Tropical Storm Joaquin to a hurricane with maximum sustained winds of 80 mph, making it a Category 1 Hurricane. (Doc. 158-1 at ¶ 11.) The S.S. EL FARO was still en route to pass south of Hurricane Joaquin and well outside of the hurricane force winds estimated at 35 miles outward from its center. *Id*. at p. 3. Despite a voyage plan designed to avoid hurricane force winds, at this juncture, the only fact that is not disputed by the parties is that Hurricane Joaquin enveloped the S.S. EL FARO shortly after its last communications to Petitioners and the USCG.

The National Hurricane Center has said that:

[8] Petitioners incorporate the Affidavit of Captain Richard Dinapoli as part of its response herein.

> Joaquin [was] the strongest October hurricane known to have affected the Bahamas since 1866 and the strongest Atlantic hurricane of non-tropical origin in the satellite era … Joaquin's formation is notable in that the cyclone did not have tropical origins, which is rare for a major hurricane … a mid- to upper-level trough over the eastern United States deepened on 1 and 2 October, causing Joaquin to slow down and make a clockwise hairpin turn over the southeastern and central Bahamas. Joaquin continued to strengthen, reaching a relative peak in intensity as a 120-kt category 4 hurricane …   Joaquin did not have a clear eye typical of category 4 hurricanes.

(Doc. 158-2 at ¶ 14.)[9]; *see also* National Hurricane Center Tropical Cyclone Report, Hurricane Joaquin (AL112015) at http://www.nhc.noaa.gov/data/tcr/AL112015_Joaquin.pdf, last accessed on April 15, 2016[10]; *Sabine Towing Co. v. Brennan*, 72 F.2d 490, 493 (5th Cir. 1934)("it is the generally accepted rule that a storm relied upon to explain the loss of a boat in rebuttal of the claim of unseaworthiness must be shown to have been of extraordinary intensity.")(citations omitted).

Under these extraordinary circumstances, the S.S. EL FARO lost propulsion and sank. Once discovery is complete, the Court will be able to make an informed analysis of whether the S.S. EL FARO and its appurtenances were reasonably fit for their intended use and/or whether this peril of the sea rendered them unreasonably fit for their intended use. *Oliveras* at p. 815. The Court will also be able to make an informed analysis and find that liability does not attach where any operational factor may have resulted in an unseaworthy condition. *See e.g. Freimanis v. Sea-Land Service, Inc.*, 654 F.2d 1155, 1163 n.7 (5th Cir. 1981) ("operational negligence upon a vessel resulting in 'instantaneous unseaworthiness' will not give rise to liability on the part of the owner. If the unseaworthy condition is created simultaneously with the injury, liability does

---

[9] Petitioners incorporate the Declaration of Austin L. Dooley, Ph.D. as part of its response herein.
[10] Federal Rule of Evidence 201 (Judicial Notice of Adjudicative Facts) allows this Court to take judicial notice of the National Hurricane Center's Tropical Cyclone Report on Hurricane Joaquin.  FED.R.EVID.201 ( "… (b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

not attach to the owner." The crewmember's testimony was "compatible with a jury's determination that he was either injured simultaneously with the vessel's striking the bridge or so shortly thereafter as to preclude the rescission of the standing order and that therefore Sea-Land was not negligent.")(citing *Usner v. Luckenbach*, 400 U.S. 494 (1971) and *Robinson v. Showa Kainum K. K.*, 451 F.2d 688 (5th Cir. 1971)).

Clearly, Claimants Motion for Partial Summary Judgment is not supported by the record evidence. Petitioners submit that Claimants Motion for Partial Summary Judgment is also premature and inappropriate at this time. Partial Summary Judgment on the issue of unseaworthiness must therefore be denied.

**D. Unseaworthiness in the abstract does not afford a cause of action. Claimants must meet their burden of proving fault and causation, and they have not done so.**

In their Motion for Partial Summary Judgment, Claimants Hargrove, Smith, Solar-Cortes and Thomas seek a finding of unseaworthiness. (Doc. 323 at pp. 3-5.) They further seek a determination that they, Claimants, have "carr[ied] their initial burden of proving liability". *Id*. at p. 6. However, Claimants seek these drastic, case-dispositive findings without supplying any evidence or argument addressing causation.

The Limitation of Liability Act[11] allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge. 46 U.S.C. §§ 30505, 30511(a). Courts employ a two-step analysis to determine whether the vessel owner may limit its liability. *See Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1230 (11th Cir. 1990); *Carr v. PMS Fishing Corp.*, 191 F.3d 1 (1st Cir. 1999). Under this first prong, the Court must determine whether there is fault on the shipowner's part which gives rise to liability of the shipowner for the claims of the

[11] In 2005, Congress recodified portions of title 46, U.S. Code and section 30505 was previously numbered as § 183(a) of the Appendix to title 46. *In re Omega Protein, Inc.*, 548 F.3d 361, 371 (5th Cir. 2008). Congress' intent was to codify existing law rather than creating new law; therefore, pre-amendment cases applying former § 183(a) are treated as having full force of law. *Id.*

claimant. *Id.* If fault is found, the Court must then determine whether the shipowner had privity or knowledge of the causative agent. *Id.* The claimant bears the burden of proof on the issue that the owner was at fault. *Id.* If the claimant succeeds, the burden then shifts to the shipowner to show its lack of privity or knowledge. *Id.*

Privity or knowledge generally refers to the shipowner's personal participation in, or actual knowledge of, the specific improper acts that caused or contributed to the accident. *See Coryell,* 317 U.S. at 411. ***Only privity or knowledge of those conditions which proximately caused the accident will preclude limitation***. *See, e.g., In re MO Barge Lines, Inc.*, 360 F.3d 885, 890-91 (8th Cir. 2004), *Carr*, 191 F.3d at 6; *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1064 (11th Cir. 1996). An evaluation of what the petitioner knew is a fault-based inquiry. *Carr*, 191 F.3d at 4.

As the Eleventh Circuit has aptly explained, in a Shipowner's Limitation case, the Court must "bear in mind that fault in the abstract is not sufficient. To produce liability, the acts of negligence or conditions of unseaworthiness must be a contributory and proximate cause of the accident." *Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.*, 768 F.2d 1558, 1566 (11th Cir. 1985). More explicitly, "[u]nseaworthiness in the abstract does not afford a cause of action. An injury must be 'in consequence' of the unseaworthiness...." *Mahnich v. Southern S. S. Co.*, 321 U.S. 96, 109 (1944) (Roberts, J., dissenting); *see also Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 102 (1928) (there is "no such thing as negligence in the abstract.") (Andrews, J., dissenting).

In their Motion for Partial Summary Judgment, Claimants also completely ignore the proximate cause requirements applicable to an unseaworthiness claim. For instance, in *Wolf v. McCulley Mar. Services, Inc.,* No. 8:10–cv–2725–T–30 (TGW), 2012 WL 4077240 at *5 (M.D.

Fla. September 17, 2012), the Court explained that: "Once an unseaworthy condition has been established, the plaintiff must still demonstrate that the unseaworthy condition was the proximate cause of his injury. Unlike the relaxed Jones Act standard, proximate cause for unseaworthiness means 'the cause which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the results complained of, and without which it would not have occurred.'" *See also, McClow v. Warrior & Gulf Navigation Co.*, 842 F.2d 1250, 1251-53 (11th Cir.1998)(declining to accept plaintiff-appellant's argument that a less stringent causation standard should apply to his unseaworthiness-based injury claim).

Additionally, in *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 162 (5th Cir. 1985), the Fifth Circuit recognized that: "the standard in an unseaworthiness claim is 'proximate cause in the traditional sense.' As the district court instructed the jury without objection by either side, proximate cause means that (1) the unseaworthiness played a substantial part in bringing about or actually causing the injury and that (2) the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." (citations omitted).

The Claimants Motion for Partial Summary Judgment is completely devoid of any type of proximate cause analysis. Without any supportive facts to conduct such an analysis, the Claimants have utterly failed to carry their initial burden of proving liability under a claim for unseaworthiness. Furthermore, the fact that the S.S. EL FARO lost propulsion and sank is simply not sufficient for the drastic ruling Claimants seek. *Hercules Carriers, Inc.*, 768 F.2d at 1566 ("fault in the abstract is not sufficient"). The Claimants attempt to circumvent their burden of proof on causation. Their failure to meet their burden is yet another reason why their Motion for Partial Summary Judgment on the issue of unseaworthiness warrants denial.

**E. There is no liability without fault or negligence under the Death on the High Seas Act**

Claimants allege that "unseaworthiness [] does not depend on fault or negligence" and as a result, they claim that "it is particularly ripe for summary adjudication." (Doc. 323 at p.1.) In making this blanket statement, Claimants ignore that the Death on the High Seas Act ("DOHSA") applies as a matter of law under the facts of this case. (*See,* Doc. 154 at p.3, citing *Balachander v. NCL Ltd.*, 800 F. Supp. 2d 1196, 1201 (S.D. Fla. 2011)(*quoting Ridley v. NCL (Bahamas) Ltd*., 824 F.Supp.2d 1355, Case No. 10-22711-CV, 2010 WL 4237329, at *3 n.7 (S.D. Fla. 2010))); *see also Motts v. M/V Green Wave*, 210 F.3d 565, 567 (5th Cir. 2000)("DOHSA applies where the decedent is injured on the high seas, even if a party's negligence is entirely land-based and begins subsequent to that injury.").

Claimants' assertion that any unseaworthy condition results in liability without fault or negligence is simply misguided. Although the concept of unseaworthiness was not expressly included within the ambit of DOHSA, "a claim under the Death on the High Seas Act may be founded on unseaworthiness". *See, Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 395 (1970), citing *Kernan v. American Dredging Co.*, 355 U.S. 426, 430 n. 4, 78 S.Ct. 394, 397, 2 L.Ed.2d 382 (1958). Under DOHSA, a plaintiff must show that the "death of an individual [was] caused by wrongful act, neglect or default…." 46 U.S.C.A. § 30302. Claimants overlook the predominant fact that DOHSA is a negligence statute. For these additional reasons, Claimants Motion for Partial Summary Judgment is due to be denied.

**F. None of the cases upon which Claimants rely upon for their requested relief apply to the facts of this case**

Claimants rely on principles of law that were applied to specific facts in the respective cases they cite in their Motion for Partial Summary Judgment. For instance, Claimants cite to

and rely on *Florida Mar. Transporters, Inc. v. Sanford,* 255 Fed.Appx. 885 (5th Cir. 2007) for the proposition that **"[u]nseaworthiness under the Jones Act exists as a matter of law when equipment breaks down in the ordinary course of business."** (Doc. 323 at p. 3.)(emphasis in original and citing *Greene v. Vantage S.S. Corp.*, 466 F.2d 159, 162 (4th Cir. 1972)). The *Sanford* case, however, was presented *inter alia* with the question of whether the issue of vessel seaworthiness was for the jury. *Sanford* at p. 887. In its analysis, the *Sanford* court highlighted the notion that "[w]hether an issue of unseaworthiness should be submitted to a jury depends on whether fair-minded men, viewing all the facts and the inferences to be drawn from the facts can differ over whether the ship and its gear are reasonably fit for service." *Id*. at 890 (*citing Greene*). In its analysis, the *Sanford* court noted that the seaman presented evidence that the bumper he was trying to retrieve when he was injured "simply 'fell off' while the vessel was in the ordinary course of usage." *Id*. at 890. The vessel owner introduced evidence in the form of testimony from several employees that the bumpers were actually "knocked off when they hit hard on the port push knee." *Id*. Under these conflicting facts, the *Sanford* court found that "reasonable minds could differ over whether the vessel was seaworthy [and] the issue was properly presented to the jury." *Id*. Notably, the *Sanford* court denied the seaman's motion for judgment as a matter of law on the issue of unseaworthiness. *Sanford* at p. 890.

In the instant matter, the record evidence shows that the S.S. EL FARO was seaworthy in all respects at the start of the subject voyage. Claimants disagree and rely upon certain portions of the record to provide a contradictory view[12]. Where material facts are in conflict, just as they were in *Sanford*, "reasonable minds could differ over whether the vessel was seaworthy." Where this is the case, summary judgment is clearly improper.

The case of *Greene v. Vantage S.S. Corp.*, 466 F.2d 159 (4th Cir. 1972) involved the

[12] These portions are taken out of context by the Claimants as noted in footnote 3.

death of a longshoreman who fell to the vessel's deck when a hatch board on which he was working gave way. The longshoreman was injured during regular cargo operations with no extraordinary circumstances affecting cargo operations. *Id*. at 162. *At the trial of the cause*, the decedent's wife established that the hatch boards were in proper order with no visible defects and that the board upon which the decedent was standing slipped off the hatch beams and caused the decedent to fall to the lower 'tween deck. *Id*. Importantly, the vessel owner did not introduce any contradictory evidence. *Id*. at pp. 162-63. The *Greene* court found that "the logical inferences to be drawn from [these facts] could only conclude that the vessel was unseaworthy." *Id*. at p. 162.

Unlike the facts in *Greene*, Petitioners have set forth a number of contradictory facts which negate a finding of unseaworthiness as a matter of law. These facts actually support a finding that the S.S. EL FARO was seaworthy at the start of the voyage. Nevertheless, *Greene* has no application to the facts in this case. Petitioners submit that the *Greene* case also does not have any binding force on the issue of seaworthiness in this limitation of liability action.

The Eleventh Circuit in *Villers Seafood Co., Inc. v. Vest* 813 F.2d 339 reiterated established law that "there is no presumption that a ship is unseaworthy merely because an accident has occurred on it." 813 F.2d 339, 342. The *Vest* court found the presumption of unseaworthiness applied because the vessel captain established that a safety device had been removed from a ladder and that the ladder gave way while the captain was using it in a normal manner. *Id*. at pp. 340-41. In finding that the subject ladder was unseaworthy, the *Vest* court pointed out that "this is not a case in which the cause of the accident is totally unknown." *Id*. at 342. The injury occurred when the ladder the captain was climbing, without the safety device, moved under normal use. *Id*.

Unlike the *Vest* case, the cause (or causes) of the S.S. EL FARO's sinking remains unknown. As the National Hurricane Center has stated well after the fact, there was nothing normal about Hurricane Joaquin. Thus, the *Vest* case has no application to the facts here.

Finally, the court in *Gibbs v. Kiesel*, 382 F.2d 917, 919 (5th Cir. 1967) discussed "the application of res ipsa loquitor reasoning to an action for unseaworthiness, noting that the logical inference is often that the gear or appurtenance would not have broken had it not been defective." However, the distinguishing factor in *Gibbs* is the fact that the doors that struck the seaman while the vessel was rolling during shrimping operations "fell during ordinary intended use." *Id*. at p. 919. Also notable was the fact that the vessel owner offered no evidence at trial as to how the accident occurred. *Id*. p. 918.

Unlike *Gibbs*, the S.S. EL FARO's loss of propulsion and subsequent sinking in Hurricane Joaquin does not create a logical inference that the vessel and its appurtenances were defective. Claimants conveniently fail to point out the sound directive by the *Gibbs* court that "[s]eaworthiness is a relative concept, depending in each instance on the particular circumstances." *Id*. at p. 918. Clearly, the factual holding in *Gibbs* has no application or remote similarity with the facts in this case.

**G.     Conclusion**

All of the facts and circumstances in this case are still unknown. Without a complete record, the Court is unable to undertake the fact-specific analysis required in a seaworthiness claim. The analysis does not end simply because the USCG and the NTSB have confirmed that the S.S. EL FARO sank. As noted herein, the regulatory agency (USCG) and classification society (ABS) attested to the S.S. EL FARO's reasonable fitness for its intended purpose. Under the current record, there is no unseaworthiness as a matter of law. Petitioners request that

Claimants' Motion for Partial Summary Judgment be denied.

Dated: May 2, 2016

Respectfully Submitted,

/s/ Jerry D. Hamilton

**JERRY D. HAMILTON**
Florida Bar No. 970700
jhamilton@hamiltonmillerlaw.com
**ROBERT B. BIRTHISEL**
Florida Bar Number: 906654
rbirthisel@hamiltonmillerlaw.com
**WILLIAM F. CLAIR**
Florida Bar Number: 693741
wclair@hamiltonmillerlaw.com
**JULES V. MASSEE**
Florida Bar Number: 0041554
jmassee@hamiltonmillerlaw.com
**KARINA M. CERDA-COLLAZO**
Florida Bar No. 0626775
kcerda@hamiltonmillerlaw.com

**HAMILTON, MILLER & BIRTHISEL, LLP**
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: 305-379-3686
Facsimile: 305-379-3690
***Attorneys for Tote Maritime Puerto Rico, LLC, f/k/a Sea Star Line, LLC, and Tote Services, Inc.***

**GEORGE D. GABEL, JR.**
Florida Bar No. 27220
George.gabel@hklaw.com
**HOLLAND & KNIGHT, LLP**
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872
***Attorneys for Tote Maritime Puerto Rico, LLC, f/k/a Sea Star Line, LLC, and Tote Services, Inc.***

**ALLAN R. KELLEY**
Fla. Bar No. 309893
akelley@fowler-white.com
**FOWLER WHITE BURNETT, P.A.**
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
***Attorneys for Tote Maritime Puerto Rico, LLC, f/k/a Sea Star Line, LLC, and Tote Services, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and that a copy of the foregoing has been furnished to all counsel of record via the CM/ECF system on this 2nd day of May, 2016.

/s/ Jerry D. Hamilton
Jerry D. Hamilton, Esq.